Joseph M. Sanderson
212 378 7615
josanderson@steptoe.com

1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com



August 25, 2025

**VIA ECF**

Hon. Victor Marrero, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 1610
New York, NY 10007

    Re:    *P180, Inc. v. Singh, et al.*, No. 25 Civ. 4432 (VM)
           **Response to Defendant Hunsicker's Letter Seeking Pre-Motion Conference**

Dear Judge Marrero:

    Plaintiff P180, Inc. opposes Hunsicker's stay request.[1] Hunsicker is out on bail and has no trial date, and her request for an open-ended stay of civil litigation until her criminal case concludes would prejudice P180, both because of the risk memories will fade and because assets to satisfy a judgment will likely dissipate (she and the other defendants face massive liability from other sources). It would also harm the public interest in holding wrongdoers civilly liable to allow an indefinite stay. The parties can discuss appropriate ways to manage the parallel proceedings as they arise; a complete stay is unnecessary. As for her bankruptcy stay arguments, they parallel Singh and Goldenberg's and are wrong for the same reasons set out in our response to their request for a conference.

### Hunsicker's Criminal Case Does Not Warrant Entirely Staying This Action

    Stays pending prosecution are not "routine[]." They are entirely discretionary and require courts to "weigh competing interests." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012). The Second Circuit, affirming denial of a stay after an indictment, has held that a stay is an "extraordinary remedy," that the burden is always on the party seeking a stay, and that "the Constitution rarely, if ever, *requires* such a stay." *Id.* at 98. While some cases have suggested non-exclusive factors that may be considered, the Second Circuit has clarified that in each case a court must exercise "studied judgment" based on "the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.* at 99; *see Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 694557, at *2 (S.D.N.Y. Feb. 22, 2021) (Marrero, J.) (citing *Louis Vuitton* and discussing factors).

    This Court has cautioned against "open-ended" stays pending criminal proceedings. *Wohl*, 2021 WL 694557, at *3. In that case, the defendants had also been indicted for largely the same wrongdoing. *Id.* Nevertheless, this Court denied a stay, noting that "proceeding expeditiously in lawsuits is a matter of importance given the evidentiary concerns stemming from delay." *Wohl*, 2021 WL 694557, at *3. "[A] stay could result in witnesses becoming unavailable or suffering from fading memories." *Id.* Precisely the same concerns exist here. And, where a lawsuit "seek[s] monetary damages," the risk of dissipation in the meantime means "a

---

[1] P180 opposes an indefinite stay of the time to respond, but would consent to a September 15, 2025, response deadline for Hunsicker, who has requested such an extension.

Hon. Victor Marrero, U.S.D.J., August 25, 2025
Page 2

delay could jeopardize [plaintiff's] ability to recover." *Id.* If anything, the concern is *greater* here, given that this is a fraud case seeking tens of millions of dollars. *Cf. United States v. Kwok*, 2024 WL 1250985, at *4 (S.D.N.Y. Mar. 22, 2024) (risk of asset dissipation weighed against stay). And the Court's interest is not served by a case sitting undisposed indefinitely. *Wohl*, 2021 WL 694557 at *4. Neither is the public's; "swift and effective" civil remedies serve the public interest, *id.*; *see also Gilead Scis., Inc. v. Khaim*, 2024 WL 5318631, at *5 (E.D.N.Y. Dec. 17, 2024), and it would be bizarre if wrongdoers could delay their victims' recompense simply because their wrongdoing was so severe as to lead to criminal charges.

Hunsicker's vague statements do not come close to showing a need for extraordinary relief outweighing those interests or that tailored relief as issues arise will be insufficient. Like in *Wohl*, it is "entirely speculative at this stage for Defendant[] to argue that [she] will be forced to choose between self-incrimination and adverse inferences" when "no discovery requests presenting any such dilemma" have been served. 2021 WL 694557 at *4. Even once document requests are served, discovery of pre-existing documents is unlikely to raise Fifth Amendment concerns. *Id.* As this Court noted in *Wohl*, it has "ample tools to address" any issues that arise once discovery begins. *Id.* "[L]ess drastic means" than a stay can address any concerns. *Id.*

None of the cases Hunsicker cites suggest otherwise. *Pullman v. Collins* stayed some discovery two claims pending the *plaintiff's* misdemeanor trial four months away, expressly reasoning that "the stay Defendants seek is limited in time" and the civil plaintiff-criminal defendant cited no prejudice. 2025 WL 1004731, at *3 (S.D.N.Y. Apr. 3, 2025). But the stay Hunsicker seeks is indefinite. *Weidinger v. Djokic* also involved a "limited in time" stay pending the remaining year of a deferred prosecution agreement, 2023 WL 4106274, at *4 (S.D.N.Y. June 21, 2023). And *Sec. & Exch. Comm'n v. Farnsworth*, involved a *prosecution* motion to stay to avoid the defendant using a civil enforcement proceeding to bypass limits on criminal discovery. 2023 WL 8457246, at *2 (S.D.N.Y. Nov. 6, 2023).

In short, the interests of justice favor this action proceeding. Once discovery begins, the parties can negotiate ways to accommodate Hunsicker's concerns, and if disputes cannot be resolved amicably, the Court can handle them as they arise.

### The Automatic Stay Does Not Apply and Should Not Be Extended

Hunsicker, unlike Singh and Goldenberg, does not explicitly claim that this case seeks estate property. It is clear that a claim seeking money damages against a non-debtor is not automatically stayed simply because the non-debtor may seek proceeds of a policy paid for by the debtor. *E.g.*, *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1400 (5th Cir. 1987); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). Whether she will get reimbursed for defense costs or liability is between her and the carrier, which is seeking a just-in-case order from the Bankruptcy Court to authorize making payments anyhow.

Hunsicker contends that a stay may be extended to non-debtors, but, as Your Honor has held in a separate case, "courts in this Circuit have regularly refused to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004) (Marrero, J.); *see also In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 584 (E.D.N.Y. 1989); *Duval v. Gleason*, 1990 WL 261364, at *4

(N.D. Cal. Oct. 19, 1990); *see generally Tchrs. Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."). The power is exercised only "very unusual circumstances" (*Ebin v. Kangadis Fam. Mgmt. LLC*, 45 F. Supp. 3d 395, 398 (S.D.N.Y. 2014)), and "only where the stayed actions would have posed a serious threat to the debtors' reorganization efforts" (*Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999)). There are no reorganization efforts here; CaaStle is liquidating. And a judgment here would not "*directly* affect the debtor's assets." *Gucci*, 328 F. Supp. 2d at 442 (emphasis added). The suit seeks a money judgment against Hunsicker and others, not money from CaaStle.

Hunsicker dwells on a separate lawsuit that P180 previously filed against CaaStle in a different court to suggest that CaaStle is somehow the real party in interest here. But that doctrine is exceedingly narrow. Even the case that recognized that exception, *A.H. Robins Co. v. Piccinin*, limited it to "absolute indemnity" rights, and explicitly stated that it would "clearly not extend" to a case where the non-debtor was "where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." 788 F.2d 994, 994, 999 (4th Cir. 1986). That is precisely the case here: Hunsicker is being sued for breaching duties she owed directly to P180. That CaaStle may *also* be liable as a joint tortfeasor for Hunsicker's fraud and theft of P180 funds does not allow Hunsicker to delay facing the consequences of her actions. And if she has any indemnification rights, they are contingent, which is not enough. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). Indeed, it is the definition of chutzpah for Hunsicker to have personally caused CaaStle to commit torts and then seek a stay because CaaStle filed for bankruptcy as a result of her actions.

The only case Hunsicker cites, *In re N. Star Contracting Corp.*, 125 B.R. 368 (S.D.N.Y. 1991), is not to the contrary. It enjoined claims seeking to compel an officer of the company to pay money the company owed on a dubious theory that the officer had lied when he said the company would pay its debts. *Id.* at 369. Finding that the claims were "commenced solely to circumvent the automatic stay" and the state court plaintiff "does not have a bonafide separate cause of action," the Court held that they were really claims seeking estate assets and the officer had an absolute "right of indemnification." *Id.* at 371. This case, by contrast, seeks to hold Hunsicker liable for her own lies and other independently tortious actions, including as a fiduciary of P180. *North Star* also noted the officer's role in managing the reorganization. *Id.* Here, there is no reorganization. Indeed, Your Honor distinguished *North Star* on similar grounds in *Gucci*. 328 F. Supp. 2d at 441. Many other courts have done the same. *E.g.*, *Gray*, 230 B.R. at 243 (noting that *North Star* "carefully distinguished the general rule limiting bankruptcy stays to debtors" and involved "unusual circumstances"); *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992) (direct liability on guarantee quite unlike *North Star*'s "transparent attempts to sue corporate officers" for the company's debts).



While we do not oppose a pre-motion conference, the Court should deny a stay.



Hon. Victor Marrero, U.S.D.J., August 25, 2025
Page 4

                                      Respectfully submitted,

                                      /s/ Joseph M. Sanderson

                                      Joseph M. Sanderson