**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

P180, INC.,

                                Plaintiff,

        - against -

JASWINDER PAL SINGH, CHRISTINE
HUNSICKER, GEORGE GOLDENBERG, SCOTT
CALLON, CHIRAG JAIN AND DOES 1–50,

                        Defendants.

-------------------------------------------------------------------------X

Case No.: 7:25-cv-00532-PMH

**<u>ORAL ARGUMENT</u>**
**<u>REQUESTED</u>**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS JASWINDER PAL SINGH AND GEORGE GOLDENBERG'S
## <u>MOTION TO STAY</u>

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
Richard W. Boone Jr.
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: kieran.lang@wilsonelser.com

*Attorneys for Defendants*
*Jaswinder Pal Singh and George Goldenberg*

317851404v.4

CONFIDENTIAL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND .............................................................................................3

    I.    Allegations of the Complaint ...............................................4

    II.    The CaaStle Bankruptcy and Automatic Stay .........................6

    III.    The Federal Criminal Indictment of Christine Hunsicker .......8

ARGUMENT ...............................................................................................9

    I.    The Automatic Bankruptcy Stay Should Be Extended to the Claims Against Singh and Goldenberg............................................12

    II.    The Court Should Grant a Discretionary Stay in Light of the Indictment............15

CONCLUSION.............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ......................................................................7, 11, 14

*In re Aleris Int'l, Inc.*,
456 B.R. 35 (Bankr. D. Del. 2011) ...............................................................7

*In re Allied Digital Techs. Corp.*,
306 B.R. 505 (Bankr. D. Del. 2004) .............................................................12

*Arden Way Assocs. v. Boesky*,
660 F. Supp. 1494 (S.D.N.Y. 1987)..............................................................10

*Borman v. Raymark Ind., Inc.*,
946 F.2d 1031 (3d Cir. 1991)........................................................................7

*Durr Mech. Constr., Inc. v. I.K. Constr. Inc. (In re Durr Mech. Constr., Inc.)*,
604 B.R. 131 (Bankr. S.D.N.Y. 2019) ..........................................................11

*Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*,
Nos. 22-11617 (JPM), 22-01176 (JPM), 2023 Bankr. LEXIS 19 (Bankr. S.D.N.Y.
Jan. 5, 2023)...................................................................................................11

*In re Ionosphere Clubs, Inc.*,
922 F .2d 984, 989 (2d Cir. 1990).................................................................11

*Kappel v. Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996)..............................................................10

*Kashi v. Gratsos*,
790 F.2d 1050 (2d Cir. 1986)........................................................................9

*Kudo v. Simels*,
91 Civ. 3167 (JFK), 1992 U.S. Dist. LEXIS 4590 (S.D.N.Y. Apr. 8, 1992).....................10, 16

*In re Lomas Fin. Corp.*,
117 B.R. 64 (S.D.N.Y. 1990).........................................................................11

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012)............................................................................17

*McArthur Co. v. Johns-Manville Corp.*,
837 F. 2d 89 (2d Cir. 1988), *cert. den.* 488 U.S. 868 (1988)..................................12

ii

*Merola v. Cuomo*,
    No. 1:19-cv-899, 2019 U.S. Dist. LEXIS 170747 (N.D.N.Y. Oct. 2, 2019) .........................10

*In re Metal Center, Inc.*,
    31 B.R. 458 (Bankr. D. Conn. 1983) ...................................................................................11

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*,
    474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986)...........................................................6

*NanoMech, Inc. v. Carroll (In re NanoMech, Inc.)*,
    Nos. 19-10851 (JTD), 19-50361 (JTD), 2019 Bankr. LEXIS 3205 (Bankr. D. Del.
    Oct. 9, 2019) .........................................................................................................7, 11, 12

*Narumanchi v. Saint Vincents Catholic Med. Ctrs. of N.Y. (In re Saint Vincents Catholic
    Med. Ctrs. of N.Y.)*,
    2012 U.S. Dist. LEXIS 139584 (S.D.N.Y. Sep. 27, 2012)........................................................6

*Penn Terra Ltd. v. Department of Envtl. Resources*,
    733 F.2d 267 (3d Cir. 1984)......................................................................................................6

*In re Petrusch*,
    667 F.2d 297 (2d Cir. 1981).....................................................................................................10

*Robert Plan Corp. v. Liberty Mut. Ins. Co.*,
    No. 09-CV-1930 (JS), 2010 U.S. Dist. LEXIS 27200 (E.D.N.Y. Mar. 23, 2010) .................11

*SEC Comm'n v. Carroll*,
    2020 U.S. Dist. LEXIS 46929 (S.D.N.Y. Mar. 17, 2020) .......................................................16

*SEC v. Brennan*,
    230 F.3d 65 (2d Cir. 2000).........................................................................................................6

*Sikhs for Just. v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012).....................................................................................10

*Teachers Ins. & Annuity Ass'n of America v. Butler*,
    803 F.2d 61 (2d Cir. 1986)...............................................................................................10, 11

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995).........................................................................................17

*UnitedHealthcare Ins. Co. v. Regeneron Pharm.*,
    2021 U.S. Dist. LEXIS 247545 (S.D.N.Y. Dec. 28, 2021) ....................................................10

*Volmar Distribs. v. New York Post Co.*,
    152 F.R.D. 36 (S.D.N.Y. 1993) ...............................................................................................16

iii

**Statutes**

11 U.S.C. § 362(a)(1) .................................................................................................6

11 U.S.C. § 362(a)(3) ..........................................................................................6, 7, 12

11 U.S.C. § 362(a)(6) .................................................................................................6

11 U.S.C. § 541(a)(1) ...............................................................................................12

18 U.S.C. § 1964(d) ...................................................................................................4

Bankruptcy Code .................................................................................................1, 6

Bankruptcy Code Chapter 7 ................................................................................1, 6

Bankruptcy Code section 105 ........................................................................2, 7, 14

Bankruptcy Code Section 362 ........................................................................10, 11

Bankruptcy Code section 362(a) .........................................1, 2, 6, 7, 8, 10, 14

RICO ..........................................................................................................................4

RICO (18 U.S.C. § 1964(c)) ......................................................................................4

**Rules**

Federal Rules of Criminal procedure Rule 16(b) .......................................................16

**Other Authorities**

Fifth Amendment .....................................................................................................16

317851404v.4

Defendants Jaswinder Pal Singh ("Singh") and George Goldenberg ("Goldenberg") (collectively, "Defendants"), by and through their attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, respectfully submits this Memorandum of Law in Support of their Motion to Stay ("Motion"), which seeks an order staying all claims asserted by P180, Inc. ("P180" or "Plaintiff") against Singh and Goldenberg pursuant to: (1) the automatic stay imposed by 11 U.S.C. § 362(a) upon the commencement of the Chapter 7 bankruptcy proceeding of non-party debtor CaaStle, Inc. ("CaaStle" or the "Debtor"), which should be extended to the non-debtor Defendants in this case, and (2) the Court's inherent power to control its docket and to prevent prejudice flowing from the parallel criminal indictment recently returned against co-defendant Christine Hunsicker ("Hunsicker"), the former Chief Executive Officer and co-founder of CaaStle.

## PRELIMINARY STATEMENT

This litigation cannot proceed without violating the most fundamental protections of the Bankruptcy Code and needlessly jeopardizing the parallel criminal prosecution now pending against their alleged co-conspirator. Singh and Goldenberg would also be prejudiced if they were unable to obtain the critical documents and testimony from the Debtor and Hunsicker that show both are completely innocent and in no way involved in the scheme alleged by P180.

On June 20, 2025, CaaStle commenced a Chapter 7 proceeding (the "Bankruptcy Proceeding") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Under 11 U.S.C. § 362(a), that filing automatically stayed "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor … to recover a claim against the debtor." Although Singh and Goldenberg are not themselves debtors, the Complaint drafted by P180 alleges that Singh and Goldenberg are liable solely as function of their role in an alleged scheme conceived and executed by Hunsicker and perpetrated through her control of CaaStle. The Debtor's assets and records are, therefore, central to every claim P180

1

asserts against Singh and Goldenberg. Those assets and records, including the directors and officers liability insurance policy under which they are being defended in this action, are likewise central to – and necessary for – Singh's and Goldenberg's defense. Accordingly, on September 18, 2025, the Trustee in the Bankruptcy Proceeding filed a Verified Complaint for Declaratory and Injunctive Relief against Plaintiff P180, Inc., which seeks entry of judgement declaring that this action is barred by the automatic bankruptcy stay and should be enjoined pursuant to section 105 and 362(a) of the Bankruptcy Code.

Additionally, on July 18, 2025, the United States Department of Justice announced that a grand jury sitting in the Southern District of New York had returned an indictment charging Hunsicker with, *inter alia*, wire fraud, bank fraud, securities fraud, and conspiracy to commit the same (the "Indictment"). Accordingly, the requested stay is also compelled by the Court's inherent authority to conserve judicial resources and protect the integrity of overlapping criminal proceedings. The criminal indictment of Ms. Hunsicker is founded upon charges that mirror the fraudulent scheme alleged here. Proceeding with this action would, therefore, compromise the pending criminal case, threaten Hunsicker's Fifth-Amendment rights, and risk inconsistent rulings on identical facts. Proceeding in this action without CaaStle and Hunsicker would also compromise the defense of Singh and Goldenberg, who are not named in the Indictment because they are unequivocally innocent parties. Courts routinely stay civil proceedings under such circumstances. Indeed, the civil action filed against Hunsicker by the Securities and Exchange Commission, which concerns similar allegations, has already been stayed on consent during the pendency of the criminal case against Hunsicker.

Accordingly, Singh and Goldenberg respectfully request that all claims asserted against them be stayed until (1) the Bankruptcy Court modifies or lifts the automatic bankruptcy stay, and (2) the criminal proceedings against Hunsicker conclude.

## BACKGROUND

CaaStle, Inc., a Delaware corporation founded in 2011 and headquartered in New York, is (or at least was, prior to the filing of the Bankruptcy Proceeding) a fashion-technology company that provided a "clothing-as-a-service" platform, offering subscription-rental and reverse-logistics solutions to allow apparel brands to monetize inventory through recurring shipments to consumers. P180, Inc., also a Delaware corporation headquartered in New York, was founded in February 2024 by veteran apparel executive Brendan Hoffman, who wanted to leverage CaaStle's technology to revolutionize the industry.

P180's mission was to acquire or invest in fashion brands and, by using CaaStle's advanced e-commerce and inventory-monetization tools, improve the margins of discounted merchandise. Hoffman, who brought industry relationships and purported operational expertise to the company, owned 75 percent of P180, while CaaStle owned 25 percent of the company. Hunsicker was P180's board chair, while Hoffman and Goldenberg, CaaStle's longtime Chief Operating Officer, served as directors. Singh, who was a co-founder of CaaStle, had left the company several years before P180 was founded and, therefore, never had any affiliation with P180. Singh only returned to CaaStle's Board in December 2024.

During the course of its partnership with CaaStle, P180 made substantial investments into apparel brands Elyse Walker, Altuzarra, and Vince, ultimately taking a controlling share of the latter. Those investments were primarily funded through loans from CaaStle, which P180 was supposed to pay back as it raised capital. Additionally, P180 paid CaaStle a fee for necessary services it provided to P180. The allegedly fraudulent transfers at issue in this action concern

3

payments by P180 either for loans from CaaStle or for those necessary services. Neither Goldenberg nor Singh had any role in directing those payments.

## I.    Allegations of the Complaint

On April 18, 2025, P180 (by and through Hoffman) filed suit against CaaStle "to recover from CaaStle for the substantial harm it caused to P180 through an elaborate fraud that caused P180 to borrow money from CaaStle and to make commitments and investments it otherwise would not have made." (Ex. 1, ¶ 1). On May 27, 2025, P180 also commenced this action against Hunsicker, Singh, Goldenberg, Scott Callon, and Chirag Jain (collectively, the "Defendants"), seeking to hold these individuals liable for that fraud, which P180 alleges was orchestrated by Hunsicker through CaaStle. (Dkt. 1). The remaining Defendants are not really alleged to have done anything more than follow Hunsicker's seemingly legitimate directions.

The Complaint[1] attempts to paint what P180 characterizes as a "tale of lies, betrayal, and cover-up," alleging that Hunsicker orchestrated a years-long conspiracy—dubbed the "Hunsicker Enterprise"—to defraud P180 out of millions of dollars while simultaneously concealing massive financial fraud at CaaStle. (Id., ¶¶ 1, 9). At its core, the Complaint asserts that Hunsicker falsely portrayed CaaStle as a thriving, cash-rich technology platform with hundreds of thousands of subscribers and hundreds of millions in revenue. Allegedly relying on these representations, Hoffman formed P180 in early 2024 to acquire and rehabilitate fashion brands using CaaStle's e-

---

[1] P180's ten causes of action include: Count I: Civil RICO (18 U.S.C. § 1964(c)) and Count II: RICO Conspiracy (18 U.S.C. § 1964(d)), which are based on alleged patterns of wire fraud and bank fraud and are asserted against all defendants; Count III: Conversion, which is asserted against Hunsicker, Goldenberg, Jain, and Singh, and Count IV: Unjust Enrichment, which is asserted solely against Hunsicker, both of which focus on $1.3 million allegedly wired to Hunsicker's personal account; Count V: Breach of Fiduciary Duty, which is asserted against Hunsicker and Goldenberg, and Count VIII: Aiding and Abetting Breach of Fiduciary Duty, which is asserted against all defendants, which focus on Hunsicker and Goldenberg's duties as directors of P180; Count VI: Fraud – Fraudulent Inducement, Fraudulent Concealment, and Constructive Fraud, which is asserted against Hunsicker, Goldenberg, and Singh, Count IX: Civil Conspiracy, which is asserted against all defendants, and Count X: Negligent Misrepresentation, which is asserted against Hunsicker, Goldenberg, and Singh, which concern the alleged conspiracy as a whole.

commerce infrastructure.  Hoffman purportedly "had a 'Money Ball' realization that retailers could reclaim—perhaps multiply—their valuation if they increased their margins on discounted merchandise by using [CaaStle's] technology."  (Ex. 1, ¶ 7).

P180 alleges that, after its formation, Hunsicker siphoned P180's funds to prop up CaaStle, induced P180 to assume ill-advised debts, transferred P180's cash to CaaStle under the guise of intercompany "loans," and attempted to force a merger that would bury CaaStle's liabilities inside P180.  According to P180, these actions were part of a broader, coordinated scheme of fraud and self-dealing, in which Hunsicker allegedly misrepresented CaaStle's financial health, subscriber base, and technological capabilities to P180's leadership and investors, concealing the company's dire financial condition and lack of viable business operations.

P180 claims that, relying on these false representations, it entered into a series of transactions—including the acquisition of interests in brands such as Elyse Walker, Altuzarra, and Vince—believing it would benefit from CaaStle's purported technology.  In reality, CaaStle allegedly had only a fraction of the claimed subscribers and negligible revenues, and its technology was not scalable as promised.  Additionally, the Complaint discusses numerous purportedly unauthorized transfers from P180's bank accounts, including several million dollars wired to CaaStle without proper authorization or documentation.  P180 claims these transfers were designed to siphon funds to cover CaaStle's losses and maintain the appearance of solvency.  However, CaaStle claims P180 still owes the company more than $14 million in unpaid loans and fees.[2]

---

[2] P180 further alleges that Hunsicker attempted to force a merger between P180 and CaaStle, with the intent to shift CaaStle's mounting liabilities onto P180 and obscure the ongoing fraud.  However, that merger was never consummated and is, therefore, irrelevant.

317851404v.4

II.     **The CaaStle Bankruptcy and Automatic Stay**

CaaStle filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 20, 2025 (Ex. 2).  The bankruptcy petition states that the company has between $10 million and $50 million in assets, between $10 million and $50 million in liabilities, and between 200 and 999 creditors.  (*Id.*, pp. 3-4).  The list of creditors, which spans 91 pages, does not include P180.  (Ex. 3).  Rather, as noted, P180 is believed to owe CaaStle at least $14 million.

Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as an automatic stay, immediately halting: (1) "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor," § 362(a)(1); (2) "any act to obtain possession of property of the estate … or to exercise control over property of the estate," § 362(a)(3); and (3) "any act to collect, assess, or recover a claim against the debtor," § 362(a)(6).

"The automatic stay provision affords a debtor fundamental protection under the Bankruptcy Code." *Narumanchi v. Saint Vincents Catholic Med. Ctrs. of N.Y. (In re Saint Vincents Catholic Med. Ctrs. of N.Y.)*, 2012 U.S. Dist. LEXIS 139584, at *7-8 (S.D.N.Y. Sep. 27, 2012).[3] "'The general policy behind [the stay] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected.'" *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (quoting *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 271 (3d Cir. 1984)).  In this regard, "[t]he automatic stay is intended 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly

---

[3] *See also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986) (noting that the Automatic Stay is "one of the fundamental debtor protections provided by the bankruptcy laws").

liquidation or rehabilitation of the debtor.'" *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011) (quoting *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)).

"The scope of the automatic stay is very broad." *NanoMech, Inc. v. Carroll (In re NanoMech, Inc.)*, Nos. 19-10851 (JTD), 19-50361 (JTD), 2019 Bankr. LEXIS 3205, at *2 (Bankr. D. Del. Oct. 9, 2019). Accordingly, courts have recognized that it may, in certain circumstances, extend to non-debtor parties, such as directors and officers. *See, e.g., id.* ("[W]here there is 'such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor,' the stay properly extends to non-debtor third-parties." (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986))). This is particularly true where, as here, the action against the non-debtor implicates coverage under the debtor's directors' and officers' liability ("D&O") insurance policy, which is property of the estate. *See, e.g., id.* at *3 ("Where there is a liability insurance policy, that is an important asset of the estate, any action which may diminish the value of that asset is subject to a stay under section 362(a)(3)."). Because Singh was a director of CaaStle and Goldenberg was the Chief Operating Officer and later a director, CaaStle's D&O policy provides a defense and potentially indemnity for the instant claims.

Accordingly, on September 18, 2025 the Trustee in the Bankruptcy Proceeding filed a Verified Complaint for Declaratory and Injunctive Relief against Plaintiff P180, Inc., which seeks entry of judgement declaring that this action is barred by the automatic bankruptcy stay and should be enjoined pursuant to section 105 and 362(a) of the Bankruptcy Code. (Ex. 4). In that action, the Trustee asserts that "[a]he claims brought by P180 threaten the limited resources belonging to Hunsicker and other defendants in that action and the D & O Policies, which the Trustee intends to pursue for the benefit of all creditors." (*Id.* at ¶ 46). The Trustee further alleges that "allowing

the New York Litigation to continue would threaten to defeat or impair this Court's jurisdiction over the Debtor's estate by threatening the ability of the Trustee to adequately fulfill his duty to maximize recovery on behalf of all creditors." *Id.* at ¶ 48. For that reason, the Trustee argues that "Section 362(a) prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced before the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case, or which seek to obtain possession of or exercise control over property of the estate or from the estate." (*Id.* at ¶ 67).

### III.    The Federal Criminal Indictment of Christine Hunsicker

On July 18, 2025, the United States Department of Justice announced that a grand jury sitting in the Southern District of New York returned an indictment charging Hunsicker with, *inter alia*, wire fraud, bank fraud, securities fraud, and conspiracy to commit the same (the "Indictment"). (Ex. 5).

The Indictment alleges that Hunsicker "defrauded investors in the clothing technology companies CaaStle Inc. and P180 out of more than $300 million." (Ex. 5, ¶ 1). Specifically:

> From at least in or about February 2019, up to and including in or about March 2025, HUNSICKER deployed a combination of false statements, misleading claims, and fabricated documents to present CaaStle as a high-growth, private company with substantial available cash when, in truth, and as HUNSICKER well knew, it faced significant financial distress. As the scheme unfolded, HUNSICKER exploited the trust of CaaStle investors, fraudulently inducing them to purchase CaaStle and P180 securities while hiding that she used investors' capital to buoy the failing CaaStle business and to further conceal her fraud.

(*Id.*). Notably absent, however, are any allegations that the Board or officers of CaaStle were involved in the fraud. Rather, the Indictment details how Hunsicker sought to conceal her fraud from them as well, fearing she would be exposed. (*See, e.g., id.*, ¶ 13).

The Indictment also notes that the Board removed Hunsicker from the Board as soon as it learned of any impropriety, stating that "[i]n or about December 2024, after learning that

CHRISTINE HUNSICKER, the defendant, had deceived investors, the CaaStle Board of Directors (the 'Board') removed HUNSICKER from the Board and prohibited her from taking any actions on behalf of CaaStle, including soliciting investments." (*Id.*,, ¶ 2; *see also* ¶ 20).

The Indictment also asserts that "[i]n or about 2024" Hunsicker "turned her attention" to P180 because she "planned to use the investments in P180 to infuse CaaStle with much-needed cash before CaaStle investors discovered her fraud." (*Id.*, ¶ 16).  In this regard, the Indictment states:

> CHRISTINE HUNSICKER, the defendant, intended to sell millions of P180 securities (in the form of shares and convertible notes) to existing CaaStle investors and then to funnel that money back to CaaStle disguised as payments by P180 for the use of CaaStle's technology. But just as she had done to raise money for CaaStle, HUNSICKER attempted to raise money for P180 by providing prospective investors with false information regarding CaaStle's commercial success. In addition to repeating affirmative misstatements about CaaStle's revenue, income, and operating profit, HUNSICKER also failed to disclose that her prior representations regarding CaaStle's financial performance—including those made through fake documents—had been false and thus that P180 would not have the strong commercial engine in CaaStle that HUNSICKER claimed.

(*Id.*, ¶ 17).  Thus,  the facts underlying the Complaint filed by P180 in this case are essentially the same as those which form the basis for the Indictment against Hunsicker.  Defending this action would, therefore, require Singh and Goldenberg to engage in discovery that parallels—and risks prejudicing—the criminal case.

To avoid such prejudice, the civil action filed against Hunsicker by the Securities and Exchange Commission has already been stayed by consent of the parties, who acknowledged that "a stay of this matter in its entirety is in furtherance of the interests of justice and will not prejudice any party."  (Ex. 6 at 1).

## ARGUMENT

"[A] court may decide in its discretion to stay civil proceedings … when the interests of justice seem . . . to require such action."  *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986)

(internal quotation marks and citations omitted).  "The authority to grant a stay is rooted in the court's 'inherent discretionary authority … to control its docket in the interests of justice and efficiency.'"  *Kudo v. Simels*, 91 Civ. 3167 (JFK), 1992 U.S. Dist. LEXIS 4590, at *3-4 (S.D.N.Y. Apr. 8, 1992) (quoting *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1496 (S.D.N.Y. 1987)).[4] In exercising this discretion, courts generally consider a number of factors in deciding whether a stay is appropriate, including the interests of the plaintiffs in proceeding expeditiously, the interests of and burden on the defendants, the interests of the courts, the interests of persons not parties to the civil litigation, and the public interest.  *UnitedHealthcare Ins. Co. v. Regeneron Pharm.*, Inc., No. 20 CV 10664 (VB), 2021 U.S. Dist. LEXIS 247545, at *6-7 (S.D.N.Y. Dec. 28, 2021) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).  "When 'it is efficient for a trial court's docket and the fairest course for the parties, a stay is proper, even in cases where the issues in [other pending] proceedings are not necessarily controlling on the action before the court.'"  *Id.* at *7 (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012)).

        In addition to the Court's inherent power to stay the proceedings before it, in the bankruptcy context, Section 362 of the Bankruptcy Code provides that the filing of a petition in bankruptcy automatically stays certain actions directed against the debtor or against the debtor's property. 11 U.S.C. § 362(a).  The automatic stay "provides the debtor with 'a breathing spell from his creditors.'"  *Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986); *In re Petrusch*, 667 F.2d 297, 299 (2d Cir. 1981) (same).  Additionally, "the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the

---

[4] *See also, e.g, Merola v. Cuomo*, No. 1:19-cv-899 (GLS/TWD), 2019 U.S. Dist. LEXIS 170747, at *7 (N.D.N.Y. Oct. 2, 2019) ("The authority to issue a stay is within the sound discretion of the court and derives from the court's inherent authority to manage its docket.").

bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F .2d 984, 989 (2d Cir. 1990).

Although Section 362, on its face, applies to a proceeding against the debtor, "under specific circumstances non-debtors may be protected by the automatic stay ... if it contributes to the debtor's efforts to achieve rehabilitation." *Teachers Ins.*, 803 F.2d at 65. This includes circumstances where "a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, [such that] the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983). Additionally, the stay applies to non-debtors where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins*, 788 F.2d at 999.

Applying these criteria, the automatic stay has been found to apply where the non-debtor has a right to indemnification from the debtor for the claims asserted. *See, e.g., Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, Nos. 22-11617 (JPM), 22-01176 (JPM), 2023 Bankr. LEXIS 19, at *11 (Bankr. S.D.N.Y. Jan. 5, 2023) ("A showing that the debtor is obligated to indemnify the non-debtor party is sufficient to demonstrate that enforcement of a judgment against a non-debtor will result in immediate adverse economic consequence to the Debtor's estate.").[5] This includes, in particular, where such indemnification is provided under the debtor's D&O insurance policy, which is property of the estate. *See, e.g., In re NanoMech, Inc.*, 2019

---

[5] *See also Durr Mech. Constr., Inc. v. I.K. Constr. Inc. (In re Durr Mech. Constr., Inc.)*, 604 B.R. 131, 137 (Bankr. S.D.N.Y. 2019); *Robert Plan Corp. v. Liberty Mut. Ins. Co.*, No. 09-CV-1930 (JS), 2010 U.S. Dist. LEXIS 27200, at *12 (E.D.N.Y. Mar. 23, 2010); *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990).

Bankr. LEXIS 3205, at *3 ("Where there is a liability insurance policy, that is an important asset of the estate, any action which may diminish the value of that asset is subject to a stay under section 362(a)(3).").

**I.      The Automatic Bankruptcy Stay Should Be Extended to the Claims Against Singh and Goldenberg**

CaaStle's bankruptcy petition immediately vested in the estate "all legal or equitable interests of the debtor in property" "wherever located and by whomever held." 11 U.S.C. § 541(a)(1).  Courts in this Circuit and in Delaware, where the CaaStle Bankruptcy Proceeding is pending, have held that the proceeds of a D&O insurance policy are property of the debtor's estate to which the automatic stay applies.  *See, e.g., McArthur Co. v. Johns-Manville Corp.*, 837 F. 2d 89 (2d Cir. 1988) (policy proceeds are "property of the estate" when there are claims and suits alleging damages that far exceed the limits of the relevant policy or policies), *cert. den.* 488 U.S. 868 (1988); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004) (when a liability insurance policy provides direct coverage to the debtor as well as directors and officers, the "debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers").  Accordingly, as noted, courts have extended the automatic stay to claims against non-debtor insureds, such as directors and officers, where the claims are covered by insurance policies that are property of the estate, and any recovery would diminish the assets available to satisfy the claims of all creditors.  *See, e.g., In re NanoMech, Inc.*, 2019 Bankr. LEXIS 3205, at *3.

Because Singh was a director of CaaStle and Goldenberg was a director and its Chief Operating Officer, both are insureds entitled to a defense under CaaStle's D&O policy.[6]  CaaStle's

---

[6] CNA issued Policy No. 605206736 (the aforementioned "Policy") to CaaStle for the Policy Period of December 18, 2024 to December 18, 2025.  As is potentially relevant here, the Policy includes a Directors, Officers, and Entity

insurance carrier has, therefore, retained the undersigned to represent Singh and Goldenberg in connection with this matter. However, the carrier has also advised that, due to the automatic stay, it cannot advance any defense costs in connection with this matter unless and until authorized to do so by the bankruptcy court. While relief from the automatic stay was granted for Hunsicker, no such relief has yet been granted for Singh and Goldenberg. (Ex. 7). This alone would justify extending the stay to the claim against Singh and Goldenberg, at least temporarily, until that issue is resolved. Otherwise, Singh and Goldenberg's ability to mount a defense to P180's baseless charges could be compromised. Further, allowing this action to proceed would necessarily deplete the policy proceeds in payment of defense costs, and could exhaust the policy entirely. Accordingly, the automatic stay should be extended until it is specifically modified or lifted by the Bankruptcy Court to permit this action to proceed.

Additionally, although CaaStle is not a defendant in the instant action, P180 filed a separate lawsuit against CaaStle in the New York Supreme Court, New York County, alleging essentially the same claims. That case was stayed, pursuant to the automatic bankruptcy stay, upon the filing of the Bankruptcy Proceeding. This case should similarly be stayed, because it ultimately seeks to adjudicate the same issues, including in particular the propriety of certain payments made to CaaStle by P180. As such, the claims against Singh and Goldenberg are not only factually intertwined with those against the Debtor but also raise identical legal and evidentiary issues. Proceeding against the non-debtor defendants outside of bankruptcy would risk inconsistent judgments and could collaterally estop the Debtor from relitigating critical issues, thereby undermining the protections of the automatic stay and prejudicing the Debtor's estate.

Liability Coverage Part ("D&O Coverage"), which has a $2,000,000 aggregate limit of liability, including defense costs, and an additional $1,000,000 limit of liability for Side A Coverage.

317851404v.4

Recognizing this, the Trustee in the Bankruptcy Proceeding has filed a Verified Complaint for Declaratory and Injunctive Relief against Plaintiff P180, Inc. which seeks entry of judgement declaring that this action is barred by the automatic bankruptcy stay and should be enjoined pursuant to section 105 and 362(a) of the Bankruptcy Code. In that action, the Trustee specifically argues that "[t]he claims brought by P180 threaten the limited resources belonging to Hunsicker and other defendants in that action and the D & O Policies, which the Trustee intends to pursue for the benefit of all creditors."

Additionally, courts have long recognized that, where claims against non-debtors are so closely related to claims against the debtor that the debtor is the real party in interest, extension of the stay is warranted to preserve the integrity of the bankruptcy process. *See, e.g., A.H. Robins*, 788 F.2d at 999 (4th Cir. 1986) (The automatic stay applies to a non-debtor "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."). Here, allowing this case to proceed would necessarily involve a determination of whether CaaStle can recover amounts owed by P180. Additionally, because Hunsicker's alleged conduct is inseparable from the Debtor's own alleged wrongdoing, allowing this case to proceed could ultimately determine P180's rights as a creditor in bankruptcy, something that is plainly within the purview of the Bankruptcy Court.

For each of the foregoing reasons, the Court should extend the automatic bankruptcy stay to the claims against Singh and Goldenberg until it is specifically modified or lifted by the Bankruptcy Court to permit this action to proceed.

14

**II.    The Court Should Grant a Discretionary Stay in Light of the Indictment**

The claims against Singh and Goldenberg should also be stayed pursuant to the Court's inherent power to control its docket and to prevent prejudice flowing from the parallel criminal indictment recently returned against co-defendant Hunsicker, the former Chief Executive Officer and co-founder of CaaStle.  The Indictment against Hunsicker includes nearly identical allegations that Hunsicker masterminded a long-running scheme to misrepresent the financial condition and commercial scale of CaaStle.  Both the Complaint and the Indictment allege that, beginning no later than 2019 and continuing through at least March 2025, Hunsicker fabricated or inflated key business metrics—principally revenue, subscriber counts, and cash on hand—to induce investors, partners, and lenders to part with millions of dollars.

For example, the Complaint and the Indictment converge on the core allegation that Hunsicker circulated falsified financial statements and "audits."  The Complaint asserts that she "faked financial information and fabricated subscriber data," including misuse of an auditor's logo on a counterfeit audited financial statement, which led the auditor to quit.  (Dkt. 1, ¶9).  The Indictment mirrors this by detailing multiple instances in which Hunsicker transmitted altered income statements and counterfeit audited financial statements that overstated revenue.  (Ex. 5, ¶¶6–8, 10, 12).  Additionally, both the Complaint and the Indictment allege that Hunsicker continued soliciting funds even after her misconduct was exposed internally.  According to the Complaint, by December 2024 CaaStle's board knew of the fraud, yet Hunsicker "continued to make statements she knew to be false" through early 2025. (Dkt. 1, ¶15).  The Indictment likewise states that, after the board removed her authority in December 2024, Hunsicker "flouted that prohibition" and kept raising money for CaaStle and P180.  (Ex. 5, ¶2).

15

As concerns P180, both the Complaint and the Indictment allege that investor money raised for P180 was diverted for the benefit of CaaStle. The Complaint alleges coordinated wire and bank fraud whereby P180 funds were sent to CaaStle and to Hunsicker's personal accounts in transactions totaling several million dollars. (Dkt. 1, ¶¶11, 47–60). The Indictment similarly asserts that Hunsicker "intended to sell millions of P180 securities (in the form of shares and convertible notes) to existing CaaStle investors and then to funnel that money back to CaaStle disguised as payments by P180 for the use of CaaStle's technology." (Ex. 5, ¶17). Both the Complaint and the Indictment also highlight Hunsicker's alleged broader objective of using P180's legitimate operations to mask CaaStle's insolvency.

When criminal and civil cases "involve virtually identical facts, witnesses and issues," courts routinely stay the proceedings to prevent prejudice and preserve judicial economy. *SEC Comm'n v. Carroll*, 2020 U.S. Dist. LEXIS 46929, at *9 (S.D.N.Y. Mar. 17, 2020). As the court in *Carroll* noted:

> Courts have articulated several rationales why a stay … is appropriate in light of overlapping facts in parallel criminal and civil cases. For one, "[although] the Constitution does not mandate a stay in such circumstances, denying a stay might undermine a defendant's Fifth Amendment privilege against self-incrimination." [*Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)] (citations omitted). Moreover, "[r]efusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case." *Id.*

*Id.*; *see also Kudo v. Simels*, 91 Civ. 3167 (JFK), 1992 U.S. Dist. LEXIS 4590, at *3-4 (S.D.N.Y. Apr. 8, 1992) ("It is clear the Court has broad discretion to grant a stay of civil proceedings that parallel criminal investigations when the interests of justice require such action.").

The allegations in this action are directed at Hunsicker, who has been indicted for her role in the alleged fraudulent scheme. *See, e.g., Carroll*, 2020 U.S. Dist. LEXIS 46929, at *10 (granting stay, in part, because "this is not an instance where Defendants are under criminal investigation,

16

but have yet to be indicted, such that a stay may unduly delay the civil case while the parties await

the resolution of a possible criminal case").  Hunsicker is plainly a necessary party to this case, as

the claims and relief sought center on her conduct and the actions she directed.  The Complaint

details how Hunsicker was allegedly the central, controlling figure in the so-called "Hunsicker

Enterprise," who orchestrated and participated in a wide-ranging conspiracy involving fraud,

racketeering, and breaches of fiduciary duty.  Hunsicker's leadership role and direct involvement

in the alleged misconduct make her presence essential for a full and fair adjudication of the claims.

Proceeding in her absence would, therefore, prejudice the parties by depriving them of the

opportunity to address the core allegations against the principal actor.[7]

In determining whether to grant a stay, "[t]he district courts of this Circuit, for example,

have often utilized a six-factor balancing test," which includes:

> 1) the extent to which the issues in the criminal case overlap with those presented
> in the civil case; 2) the status of the case, including whether the defendants have
> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; 4) the private
> interests of and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (quoting *Trs. of the*

*Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139

(S.D.N.Y. 1995)).  For the reasons previously discussed, each of these factors weighs in favor of

a stay here.  Additionally, the public interest in effective criminal prosecution and the integrity of

the criminal process often outweighs the interest in immediate civil resolution, justifying a

temporary stay of civil proceedings until the criminal matter is resolved.  For the plaintiff, a stay

also ensures that the civil case will proceed with the benefit of a complete factual record once the

---

[7] As discussed above, the Southern District of New York has already stayed the action filed against Hunsicker by the
Securities and Exchange Commission during the pendency of the criminal matter.

criminal proceedings have concluded, potentially streamlining discovery and narrowing the issues for trial. Accordingly, a stay is warranted here to ensure fairness, efficiency, and the orderly administration of justice.

For each of the foregoing reasons, all claims asserted against Singh and Goldenberg should be stayed until the criminal proceedings against Hunsicker conclude.

## **CONCLUSION**

For the foregoing reasons, Defendants Singh and Goldenberg respectfully requests that the Court issue an order staying this action as against Singh and Goldenberg until: (1) the automatic bankruptcy stay is modified or terminated by the Court in the CaaStle Bankruptcy Proceeding; and/or (2) there is a final resolution of the pending Hunsicker Criminal Proceeding; and granting such other and further relief as the Court deems just and proper.


Dated: New York, New York
        October 24, 2025

                                    */s/ Richard W. Boone Jr.*
                                    Richard W. Boone Jr.
                                    Kieran R. Lang
                                    **WILSON, ELSER, MOSKOWITZ,**
                                    **EDELMAN & DICKER LLP**
                                    150 E. 42nd Street
                                    New York, NY 10017
                                    Tel.  (212) 490-3000
                                    Fax.  (212) 490-3038
                                    richard.boone@wilsonelser.com
                                    kieran.lang@wilsonelser.com

                                    ***Attorneys for Defendants***
                                    ***Jaswinder Pal Singh and George Goldenberg***

**CERTIFICATION**

The foregoing **MEMORANDUM OF LAW** was prepared on a computer, using Microsoft Word, the typeface is Times New Roman, the main body is in 12-point font with 1-inch margins throughout, and the length is 5383 words, as counted by the word processing program, which is within the amount permitted under Local Civil Rule 7.1.

*/s/ Richard W. Boone Jr.*
Richard W. Boone Jr.
Kieran R. Lang
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
150 E. 42nd Street
New York, NY 10017
Tel.  (212) 490-3000
Fax.  (212) 490-3038
richard.boone@wilsonelser.com
kieran.lang@wilsonelser.com

***Attorneys for Defendants***
***Jaswinder Pal Singh and George Goldenberg***

19

317851404v.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served the foregoing document via ECF on the following parties:

Joseph M. Sanderson
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
josanderson@steptoe.com

DATED: This 24th day of October 2025

/s/ Richard W. Boone Jr.
Richard W. Boone Jr.
Kieran R. Lang
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
150 E. 42nd Street
New York, NY 10017
Tel.  (212) 490-3000
Fax.  (212) 490-3038
richard.boon§e@wilsonelser.com
kieran.lang@wilsonelser.com

***Attorneys for Defendants
Jaswinder Pal Singh and George Goldenberg***

20