**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

P180, INC.,

                              Plaintiff,

        —against—

JASWINDER PAL SINGH, CHRISTINE
HUNSICKER, GEORGE GOLDENBERG, SCOTT
CALLON, CHIRAG JAIN AND DOES 1-50,

                              Defendants.

---

Case No. 25-cv-4432-VM-SDA

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS SINGH, GOLDENBERG, AND HUNSICKER'S MOTION TO STAY
THIS ACTION**

## <u>TABLE OF CONTENTS</u>

**Page**

BACKGROUND ................................................................................................................ 4

ARGUMENT ................................................................................................................... 8

I.     THIS COURT HAS PREVIOUSLY MADE CLEAR THAT AN INDICTMENT
DOES NOT ENTITLE DEFENDANTS TO A STAY ........................................... 8

II.    THE EQUITIES WEIGH AGAINST A STAY ..................................................... 10

III.   BECAUSE P180 IS PURSUING ITS OWN DIRECT CLAIMS AGAINST NON-
DEBTORS FOR PARTICULARIZED LOSSES IT SUFFERED, NONE OF THE
CLAIMS ARE AUTOMATICALLY STAYED UNDER 11 U.S.C. § 362. ................... 12

IV.   DEFENDANTS LACK STANDING TO "EXTEND" THE STAY, ARE MOVING
IN THE WRONG COURT, AND NO "VERY UNUSUAL CIRCUMSTANCES"
EXIST HERE. ...................................................................................................... 15

CONCLUSION ............................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) .......................................................................................17, 18

*In re Adelphia Commc'ns Corp.*,
  298 B.R. 49 (S.D.N.Y. 2003)..........................................................................................13

*Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*,
  140 B.R. 56 (S.D.N.Y. 1992)..........................................................................................17

*In re Allied Digital Techs., Corp.*,
  306 B.R. 505 (Bankr. D. Del. 2004) ...........................................................................14, 18

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988)..........................................................................................14

*In re Bona*,
  110 B.R. 1012 (Bankr. S.D.N.Y. 1990), *aff'd*, 124 B.R. 11 (S.D.N.Y. 1991) ......................12

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
  116 B.R. 31 (S.D.N.Y. 1990)..........................................................................................17

*In re Crazy Eddie Sec. Litig.*,
  104 B.R. 582 (E.D.N.Y. 1989) ...............................................................................12, 15, 17

*Credit All. Corp. v. Williams*,
  851 F.2d 119 (4th Cir. 1988) ..........................................................................................15

*Cumberland Oil Corp. v. Thropp*,
  791 F.2d 1037 (2d Cir. 1986)..........................................................................................14

*Duval v. Gleason*,
  No. C-90-0242-DLJ, 1990 WL 261364 (N.D. Cal. Oct. 19, 1990) ........................................18

*Ebin v. Kangadis Fam. Mgmt. LLC*,
  45 F. Supp. 3d 395 (S.D.N.Y. 2014)..............................................................................16, 17

*In re First Cent. Fin. Corp.*,
  238 B.R. 9 (Bankr. E.D.N.Y. 1999)............................................................................. *passim*

*Gilead Scis., Inc. v. Khaim*,
  24-cv-04259 (NCM) (SJB), 2024 WL 5318631 (E.D.N.Y. Dec. 17, 2024)..............................9

*Gray v. Hirsch,*
　　230 B.R. 239 (S.D.N.Y. 1999)..........................................................................12, 16, 17

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
　　328 F. Supp. 2d 439 (S.D.N.Y. 2004)....................................................................16, 18

*Harrington v. Purdue Pharma L. P.,*
　　603 U.S. 204 (2024)....................................................................................3, 13, 15, 17

*Hirsch v. Arthur Andersen & Co.,*
　　72 F.3d 1085 (2d Cir. 1995)...................................................................................6, 14

*In re La. World Exposition, Inc.,*
　　832 F.2d 1391 (5th Cir. 1987) ....................................................................................13

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,*
　　No. 13 Civ. 4650(JFK), 2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014)......................18

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
　　676 F.3d 83 (2d Cir. 2012)........................................................................................8, 9

*In re Miller,*
　　262 B.R. 499 (B.A.P. 9th Cir. 2001).............................................................................18

*Nat'l Coal. on Black Civic Participation v. Wohl,*
　　20 Civ. 8668 (VM), 2021 WL 694557 (S.D.N.Y. Feb. 22, 2021)...............................8, 9

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC,*
　　536 B.R. 48 (E.D.N.Y. 2015) ......................................................................................16

*Pullman v. Collins,*
　　No. 24-CV-1383 (KMK), 2025 WL 1004731 (S.D.N.Y., Apr. 3, 2025) ......................10

*In re Reliance Acceptance Grp., Inc.,*
　　235 B.R. 548 (D. Del. 1999)........................................................................................18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
　　490 B.R. 59 (S.D.N.Y. 2013), aff'd sub nom. Picard v. Fairfield Greenwich
　　Ltd., 762 F.3d 199 (2d Cir. 2014) ..............................................................................19

*SEC v. Farnsworth,*
　　22 Civ. 8226 (KPF), 2023 WL 8457246 (S.D.N.Y. Nov. 6, 2023) ...............................10

*Stih v. Rockaway Farmers Mkt., Inc.,*
　　656 B.R. 308 (E.D.N.Y. 2024) ....................................................................................18

*Taylor v. Sturgill*,
   553 U.S. 880 (2008)...........................................................................................7

*Tchrs. Ins. & Annuity Ass'n of Am. v. Butler*,
   803 F.2d 61 (2d Cir. 1986)..............................................................12, 13, 15, 16

*United States v. Kwok*,
   23 Cr. 118-1 (AT), 2024 WL 1250985 (S.D.N.Y. Mar. 22, 2024)..........................9

*Weidinger v. Djokic*,
   22-CV-8388 (RA), 2023 WL 4106274 (S.D.N.Y. June 21, 2023) ........................10

**Statutes**

8 Del. C. § 145 ..................................................................................................18

11 U.S.C. § 105 .............................................................................................3, 15

11 U.S.C. § 362........................................................................................3, 12, 16

11 U.S.C. § 524 ...............................................................................................13

11 U.S.C. § 541 ...............................................................................................12

**Other Authorities**

Fed. R. Civ. P. 1...............................................................................................10

U.S. Const. amend. V..................................................................................2, 9, 10

## INTRODUCTION

P180—an apparel technology startup founded by apparel industry veteran Brendan Hoffman—seeks compensation for the harm done to it by a fraud orchestrated and led by Defendant Christine Hunsicker with the active participation of the other Defendants. Hunsicker founded CaaStle, P180's minority investor, which was supposed to provide technology for P180 to mobilize. For some time (but no longer), she served as an officer and director of P180 itself. Broadly speaking, Hunsicker falsified CaaStle's financials, technological capabilities, and other metrics and shared them with P180, leading P180 to enter multi-million-dollar acquisitions premised on the value of the CaaStle technology it was licensing. The other Defendants are equally liable. For example, Defendant George Goldenberg served as a P180 director while, at the same time, fraudulently concealing the truth about Defendants' scheming. He learned of Hunsicker's $500 million fraud in December 2024 and, rather than coming clean, decided with Hunsicker, J.P. Singh and Scott Callon to deceive P180 with the explicit intent of rendering P180 financially vulnerable so that they could then acquire P180 or its assets on the cheap. Some Defendants also misused their access to P180's bank accounts through a shared-services accounting department run by Chirag Jain, to loot millions of dollars into Ms. Hunsicker's personal bank account.

After the house of cards came tumbling down—and after the filing of this Action—CaaStle filed for a Chapter 7 liquidation in the U.S. Bankruptcy Court for the District of Delaware, and the United States Attorney's Office for the Southern District of New York criminally charged Hunsicker for her fraud. Now, Defendants contend that P180 must wait indefinitely because of the pendency of those proceedings—as memories fade and witnesses and documents disappear—including to do discovery, to serve the overseas defendants (who have refused to waive service), and to obtain relief. As P180 explained in its initial letter briefing before Judge Marrero, the answer

is clear: P180 should be allowed to pursue its claims, and Defendants should not be permitted to delay justice simply because their wrongdoing affected others as well.

*First*, Hunsicker and, incongruously, Singh and Goldenberg, seek an open-ended stay based on Hunsicker's criminal charges. Civil proceedings are not routinely stayed by one defendant's criminal charges, and there is no good reason to do so here. The Defendants engage in sleight of hand by pointing to a *consensual* stay of the SEC's enforcement proceedings against Hunsicker. That changes nothing. They ignore that it was both by agreement and that: the premise for staying *government enforcement* proceedings is to prevent a criminal defendant from obtaining civil discovery from the government that she is not otherwise permitted to receive. That logic does not apply here.

*Second*, that the wrongdoing here is severe enough to warrant criminal charges provides *more* reason to allow victims civil recompense, not less. If Hunsicker is eventually in a position where she needs to choose between answering a question and pleading the Fifth Amendment and risking an adverse inference, this Court can deal with that when it happens. P180 should not have to wait for trial and appeals in Hunsicker's criminal case to even start to litigate its claims against Hunsicker, no less against the me-too Defendants seeking to take advantage of the criminal charges against their co-conspirator. Indeed, the equities strongly favor P180. The old saw that "justice delayed is justice denied" applies with full force here. This is a claim against fraudsters who literally looted bank accounts of millions of dollars. Every day P180 has to wait for a judgment, discovery, and enforcement is another day that memories fade, documents disappear, witnesses move outside this court's subpoena power, assets are transferred or seized, and the two overseas defendants can continue to evade service.

**Third**, Defendants' bankruptcy-related arguments are baseless. Any suggestion that this case is *automatically* stayed by 11 U.S.C. § 362 because of CaaStle's liquidation is simply wrong. The automatic stay occasioned by filing of bankruptcy proceedings stays suits against the debtor or the debtor's property; it does not stay suits against non-debtors based on those non-debtor's breach of their direct duties to other non-debtors. This suit is not against CaaStle. It is against a conspiracy of individuals who personally committed torts against P180, based on their independent and direct duties to P180. Indeed, the fiduciary claim here is for breaches of duties *P180's directors and officers* directly owed to P180. Nor does it seek CaaStle's property; it seeks money damages from these individuals.

Defendants also make much of a request by CaaStle's Chapter 7 bankruptcy trustee to stay this case. That request is largely aimed at a different suit by a CaaStle investor suing Hunsicker for her breaches of fiduciary duties to CaaStle. The Trustee has recognized that P180 is differently situated, and his counsel is engaged with P180 to work towards a consensual resolution, including discussing whether any part of this suit (or none) should be temporarily stayed. P180 notes that those discussions have been slowed due to a health issue with the Trustee's counsel, but expect the discussions to resume shortly. In the interim, P180 has filed an opposition, Sanderson Decl. Ex. A; if the Trustee's motion is not resolved consensually prior to the hearing, P180 fully expects to prevail at the hearing.

**Fourth**, Defendants' arguments for a discretionary stay miss the point. While *bankruptcy* courts have held, at least prior to the Supreme Court's recent *Purdue Pharma* decision restricting non-debtor (third-party) releases, that they have the power under 11 U.S.C. § 105 to issue anti-suit injunctions against litigation against non-debtors under "extraordinary circumstances," sometimes known as "extending" the automatic stay to non-debtors," no such circumstances exist here. This

case satisfies neither "extraordinary circumstance" identified by courts: it neither seeks to hold CaaStle liable through the Defendants nor does it interfere with the restructuring process. The "extraordinary circumstances" the case law identifies are disguised suits against the debtor (such as a claim that a debtor's officer is personally liable for the debtor's debts) and suits that are interfering with a restructuring process. Here, the claims are independent, direct claims against *P180's* officers and directors and those who aided and abetted their fraud; if P180 succeeds, Delaware law would outright *prohibit* indemnification because these are bad-faith, intentional torts. Further, CaaStle is liquidating, not restructuring, so there is no restructuring to protect. Otherwise, all Defendants can say is that they hope to receive some coverage for defense costs from a far-too-small D&O insurance policy that CaaStle previously paid for, but courts have consistently held that D&O insurance does not justify a stay of direct claims against non-debtors. And, in any event, the Trustee has consented to allow the D&O insurance to defend Hunsicker *in this very case.*

Finally, there is no obligation or reason for this Court to take into account the mere pendency of motions in another Court in deciding what to do here. This Court should decide the stay issue on the grounds before it here.

*          *          *

In short, this case should be allowed to proceed in the ordinary course. No exceptional circumstances warrant an open-ended delay of this litigation, and ample circumstances warrant proceeding. Defendants' letter motion requests should be denied.

## BACKGROUND

P180 is an apparel technology company founded by Brendan Hoffman. Doc. 1 ¶ 2. Hoffman met with Hunsicker, founder of unicorn "Clothing as a Service" company CaaStle, and

was impressed with her pitch about the value of CaaStle's technology. *Id.* ¶¶ 3-4. CaaStle and P180 entered into a joint venture whereby P180 licensed CaaStle's software; CaaStle initially received 25% of P180's shares and Hoffman appointed Hunsicker to P180's board. *Id.* ¶ 4. Hunsicker turned out to be a crook: for years, she falsified CaaStle's financials and sales metrics to make it seem that CaaStle was successful when it was in fact hemorrhaging money. *Id.* ¶ 6. Defendants Goldenberg (who also served on P180's board) and Jain personally participated in the forgeries. *Id.* ¶ 9. The rest of Hunsicker's associates learned of the fraud either when CaaStle's auditor resigned in 2023 or based on Hunsicker's admissions in late 2024. *Id.*

Rather than coming clean to P180, in late 2024 and early 2025, Defendants met and each individually agreed to keep the revelations of Hunsicker's fraud quiet and lie to P180 with the explicit goal of rendering P180 financially vulnerable so that CaaStle could then acquire it or its assets on the cheap. *Id.* ¶ 10. Based on Defendants' lies and concealment, P180 undertook multi-million-dollar acquisitions, took out large loans, and entered into numerous transactions on unfavorable terms. *Id.* Defendants' lies and omissions thus cost P180 tens of millions of dollars. Hunsicker and Jain also misused their access to P180's bank accounts under a shared services arrangement to loot funds out of P180, sometimes under the guise of "loans" that P180's board had never approved. *Id.* ¶ 11.

P180 filed this action on May 27, 2025. *Id.* This action consists exclusively of *direct* claims against Defendants for breaching their *individual* duties to *P180* (not CaaStle). Count I alleges Civil RICO liability based on Defendants *personally* committing related acts of bank fraud, wire fraud, and other RICO predicates, harming P180. Doc. 1 ¶¶ 41-59, 61-68. Count II alleges that the Defendants *personally* joined a conspiracy to commit racketeering acts that harmed P180. *Id.* ¶¶ 69-74. Count III alleges that certain Defendants *personally* participated in conversion of funds

from P180's bank accounts. *Id.* ¶¶ 75-83. Count IV alleges that Hunsicker *personally* must make restitution of the $1.3 million she stole from P180. *Id.* ¶¶ 84-88. Count V alleges that Hunsicker and Goldenberg were directors or officers *of P180*, and as such *personally* owed fiduciary duties *to P180*, which they breached in a long list of ways. *Id.* ¶¶ 89-97. Count VI alleges that Hunsicker, Goldenberg, and Singh *personally* lied to P180, either through affirmative false statements or *personal* duties of disclosure that they breached. *Id.* ¶¶ 98-105. Count VII is an aiding-and-abetting claim alleging that each Defendant *personally* knew and *personally* substantially assisted with the fraud. *Id.* ¶¶ 106-111. Likewise, Count VIII alleges that the other defendants *personally* knew and *personally* substantially assisted with Hunsicker and Goldenberg's violations of their fiduciary duties as P180 directors and officers. *Id.* ¶¶ 112-116. Count IX alleges *personal* participation in and overt acts in furtherance of a civil conspiracy. *Id.* ¶¶ 117-122. Count X alleges breaches of *personal* duties of care through negligent misrepresentation. *Id.* ¶¶ 123-132.

CaaStle is not a defendant in this action. Whatever claims P180 has against CaaStle were initially filed in New York state court, stayed, and then submitted as a proof of claim in the bankruptcy. *See* Sanderson Decl. ("Decl.") Ex. B.

CaaStle filed for Chapter 7 liquidation on June 20, 2025. Decl. Ex. C. The Trustee apparently intends to sue Defendants for the harm that they did *to CaaStle*, but, as a matter of bankruptcy law, has no power to assert claims that do not belong to the estate, even if the person who does own these direct claims is *also* a creditor of the bankruptcy estate. *See, e.g.*, *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995). So he cannot bring claims for particularized harm to P180. *See id.*

Meanwhile, on July 18, 2025, Hunsicker was indicted. Decl. Ex. D. According to the bankruptcy docket, she is tapping a rather small, $3 million D&O policy that CaaStle had

purchased for her to pay for her criminal defense. Decl. Ex. E. The Trustee agreed, and the bankruptcy court ordered, that the automatic stay be lifted on the D&O insurance specifically for her to defend against this case. *Id.* The SEC also brought parallel civil enforcement proceedings against Hunsicker. Decl. Ex. F. The government and Hunsicker have agreed to a consensual stay of those proceedings until after the criminal trial, which is common in parallel SEC enforcement proceedings because of the government's concern that a civil enforcement defendant could obtain more discovery from the government during the civil proceeding than would be possible under the criminal rules. Decl. Ex. G.

As Defendants have sought to evade liability to P180 and the Trustee has sought to get the first bite at the apple of Defendants' assets for the claims that the Trustee plans to bring, Hunsicker, Singh, and Goldenberg sought stays in this Court based on both the bankruptcy and Hunsicker's criminal charges. Docs. 27, 30. P180 opposed those requests. Docs. 31, 32. The parties also submitted various supplemental letters. Docs. 35, 36. Meanwhile, Defendant Hunsicker answered the complaint. Doc. 33. Singh and Goldenberg have neither answered nor moved to dismiss.

While the letter motions were pending before the Court, the Trustee filed an adversary proceeding in the bankruptcy court seeking preliminary anti-suit injunctions against various lawsuits against Defendants, including this one. Decl. Exs. H-J. The Trustee's arguments in the bankruptcy court appear to primarily be targeted at a different lawsuit, where a CaaStle creditor alleged fiduciary duty violations in that creditor's capacity as a CaaStle shareholder that the Trustee contends are derivative rather than direct claims. The Trustee's principal discernable argument regarding this lawsuit is that common issues of fact might collaterally estop the Trustee's claims, which, as P180 explained in its opposition, is straightforwardly wrong under *Taylor v. Sturgill*, 553 U.S. 880 (2008), which rejects mere similarity of issues as sufficient for preclusion.

Decl. Ex. A. If the parties are unable to resolve those issues consensually, the bankruptcy court has scheduled a hearing for <u>mid-November,</u> although the Trustee's counsel recently underwent major surgery so a continuance is possible.

## ARGUMENT

As P180 has previously explained in its letters, Docs. 31, 32, a stay is not warranted here. Fundamentally, every day that this case is delayed is another day when memories fade, documents may be lost, witnesses may move, and assets may be fraudulently transferred. That is why stays are generally disfavored, and Defendants present no compelling reason to indefinitely delay this case. P180 has millions of dollars in direct loss as a result of Defendants' scheme and it should be permitted to pursue this action in the ordinary course. Neither the criminal proceedings against Hunsicker nor the bankruptcy proceedings against CaaStle warrant a stay.

## I.    THIS COURT HAS PREVIOUSLY MADE CLEAR THAT AN INDICTMENT DOES NOT ENTITLE DEFENDANTS TO A STAY

Hunsicker, Goldenberg, and Singh all seek a stay based on the criminal charges that are only against Hunsicker. This Court's jurisprudence makes it plain that there is no entitlement to a stay. Such stays are entirely discretionary and require courts to "weigh competing interests." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012). The party seeking a stay bears the burden to show such an "extraordinary remedy" is necessary—and "the Constitution rarely, if ever, requires such a stay." *Id.* at 98. In each case a court must exercise "studied judgment" based on "the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.* at 99; *see Nat'l Coal. on Black Civic Participation v. Wohl*, 20 Civ. 8668 (VM), 2021 WL 694557, at *2 (S.D.N.Y. Feb. 22, 2021) (Marrero, J.).

*Wohl* is instructive. In that case, Judge Marrero identified numerous factors that weigh against a stay. Each applies here. Even in a case where the defendants had been indicted for the same wrongdoing, he denied a stay because "proceeding expeditiously in lawsuits is a matter of importance given the evidentiary concerns stemming from delay." *Wohl*, 2021 WL 694557, at *3. "A stay could result in witnesses becoming unavailable or suffering from fading memories." *Id.* So too here; this is a case about fraud and forgeries where witnesses may move overseas (like Jain and Callon), forget information, or documents may disappear. Where a lawsuit "seeks monetary damages," there is a risk of dissipation during the stay, so "delay could jeopardize [plaintiff's] ability to recover." *Id.* In a fraud case, the dissipation risk is particularly high. *Cf. United States v. Kwok*, 23 Cr. 118-1 (AT), 2024 WL 1250985, at *4 (S.D.N.Y. Mar. 22, 2024) (risk of asset dissipation weighed against stay). "Open-ended" stays, which lead to a case sitting unresolved for an indeterminate period of time, are particularly problematic, not least because they undermine the public's interest in "swift and effective" civil remedies. *Wohl*, 2021 WL 694557 at *4; *see also Gilead Scis., Inc. v. Khaim*, 24-cv-04259 (NCM) (SJB), 2024 WL 5318631, at *5 (E.D.N.Y. Dec. 17, 2024).

Hunsicker's principal argument has been that she risks being put to the choice of either waiving her Fifth Amendment rights or risking an adverse inference. Once again, Judge Marrero's opinion in *Wohl* answers precisely this question: it is "entirely speculative at this stage for Defendant to argue that she will be forced to choose between self-incrimination and adverse inferences" when "no discovery requests presenting any such dilemma" have been served. 2021 WL 694557 at *4. If a discovery request triggers Fifth Amendment concerns, then this Court has "ample tools to address" those concerns and balance the interests at that point, so "less drastic means" than a stay exist. *Id.* And, at any rate, under *Louis Vuitton*, Hunsicker has no *right* to

demand that she not be put to the choice between the Fifth Amendment and an adverse inference. It would be within this Court's discretion, if ever this case comes to that point, to require her to make that choice. But that is a problem for another day.

What Hunsicker is asking for, moreover, is for far more than provided for in any case she or Singh and Goldenberg have pointed to: an indefinite, open-ended stay, presumably through trial and appeals, and perhaps post-conviction proceedings. Even if courts sometimes stay cases for a few months, *Pullman v. Collins*, No. 24-CV-1383 (KMK), 2025 WL 1004731 (S.D.N.Y., Apr. 3, 2025); *Weidinger v. Djokic*, 22-CV-8388 (RA), 2023 WL 4106274 (S.D.N.Y. June 21, 2023), that is quite different from a stay that could last for years.

Finally, Hunsicker's most recent letter regarding the SEC enforcement proceedings changes nothing. Hunsicker and the government *agreed* to a stay of the civil enforcement proceeding. Decl. Ex. G. A consensual stay is authority for precisely nothing. At any rate, the *government* sought the stay in the civil enforcement proceeding—not surprising, since the government routinely stays civil enforcement because SEC defendants get civil discovery and criminal defendants do not. *See SEC v. Farnsworth*, 22 Civ. 8226 (KPF), 2023 WL 8457246, at *2 (S.D.N.Y. Nov. 6, 2023). The government has not sought a stay of this proceeding, because it does not care: here, Hunsicker will get some discovery from P180 but she cannot use this proceeding to get communications between the SEC and Department of Justice about her criminal case.

## II.    THE EQUITIES WEIGH AGAINST A STAY.

It bears emphasizing that a stay is far from costless. Stays are generally disfavored, since a court's duty is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. But quite beyond the general public interest in swift justice, this case presents particular concerns where delay risks denying justice altogether.

***First***, this is a fact-intensive fraud case. Every day that passes, witnesses' memories grow hazier, former CaaStle employees laid off during the chaos lose documents or purge their messages, witnesses may move (including moving abroad), and so on. P180 wishes to examine witnesses while the fraud and the precise facilitating roles that the non-Hunsicker defendants played is fresh in their mind.

***Second***, people willing to commit fraud are often willing to commit fraudulent transfers to conceal assets from a judgment. This is a lawsuit seeking recompense for tens of millions of dollars in damages done to a small startup that could ill afford that loss, and if P180 has to wait even longer than usual to obtain a judgment, it may be a hollow victory.

***Third***, two defendants are overseas, one of whom, Jain, may be a fugitive given his departure during the federal investigation. It is slow enough to serve foreign-located defendants under the Hague Service Convention—India, where Jain is located, often involves multi-year waits—without having to pause those efforts during a stay and re-investigate their location once the stay is lifted. Likewise, if the overseas defendants turn out to have an agent who can be served in the United States without resort to the Hague Service Convention, they may not still have one years from now.

***Fourth***, P180 is willing to be practical and work cooperatively to coordinate discovery as much as possible with the other lawsuits against the same defendants, to discuss scheduling to avoid conflicts between the other actions, and to backload as much as the schedule permits any requests that would require Hunsicker to decide whether or not to plead the Fifth. Problem-solving and cooperation is a far better remedy to any concerns here than putting the entire lawsuit on ice for an unknown number of months or years.

III.    **BECAUSE P180 IS PURSUING ITS OWN DIRECT CLAIMS AGAINST NON-DEBTORS FOR PARTICULARIZED LOSSES IT SUFFERED, NONE OF THE CLAIMS ARE AUTOMATICALLY STAYED UNDER 11 U.S.C. § 362.**

Defendants' letters suggest that this action should be *automatically* stayed by CaaStle's bankruptcy filing under 11 U.S.C. § 362. But that provision provides for an automatic stay of lawsuits *against the bankruptcy debtor* or lawsuits that seek to obtain property of the bankruptcy estate, which is defined by 11 U.S.C. § 541. Claims against non-debtors are not automatically stayed. This case—seeking liability for *particularized* harm *to P180* as a result of duties Defendants *personally* owed to P180—is not property of the estate.[1]

Defendants, of course, are not CaaStle's bankruptcy estate. "It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Tchrs. Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("*TIAA*"); *accord In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 583 (E.D.N.Y. 1989) (direct securities fraud claims against debtor's codefendants was not barred by automatic stay). Thus, "courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals." *Gray v. Hirsch*, 230 B.R. 239, 242 (S.D.N.Y. 1999) (allowing investors' direct securities fraud claims against debtor's principal to proceed). Indeed, "[e]ven when an action is pending as of the petition date against a corporate debtor which is a codefendant with its officers and directors"—not the case here, since CaaStle is not a defendant— "the lawsuit is typically stayed only as to the debtor." *In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (similarly allowing direct security fraud claims against directors and officers of debtor to proceed). Here, a stay is even less warranted because P180 is suing *its own former officers and directors* for

---

[1] This court has concurrent jurisdiction, together with the Bankruptcy Court, to determine whether the automatic stay applies. *In re Bona*, 110 B.R. 1012, 1021 (Bankr. S.D.N.Y. 1990), *aff'd*, 124 B.R. 11 (S.D.N.Y. 1991).

abandoning their duties to P180, as well as people who lied or knowingly facilitated the fraud, as well as for personally looting P180's bank accounts.[2] *TIAA* and its progeny reflect an insuperable hurdle to contending that claims against directors and officers are somehow claims against the debtor.

Defendants have also contended that the claim seeks estate property because they hope to have some of their defense costs reimbursed by a directors' and officers' insurance policy. Events have overtaken this argument. The bankruptcy Trustee has consented to lift the stay as to the D&O insurance—and the bankruptcy court has ordered the same. Decl. Ex. E. The D&O insurance is not property of the estate, it is property of the directors.

Even on its merits, though, this argument fails. Courts have routinely rejected the argument that a plaintiff is seeking estate assets simply because the non-debtor that the plaintiff is suing asserts that they have contractual rights to the proceeds of an insurance policy purchased by the debtor. "One having a pending, unadjudicated tort claim against another does not—whether or not the claimant is bankrupt—thereby have a property interest in liability insurance proceeds payable to the defendant." *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987). Even where the policies themselves are estate property, the right to the policy's proceeds—the contractual claim against the insurer—is a separate right owned by the non-debtor and not property of the estate. Courts in this Circuit have consistently applied the same rule, especially where (as here) the bankruptcy estate does not claim a present right to payment under the same policy. *E.g.*, *In re First Cent. Fin. Corp.*, 238 B.R. at 18; *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53

---

[2] This point is, if anything, stronger today, given the Supreme Court's categorical rejection of any power of the bankruptcy court to forcibly settle non-debtors' claims against other non-debtors, in part because 11 U.S.C. § 524(g)(4)(A)(ii)'s authorization for anti-suit injunctions in certain asbestos cases creates a negative implication that no such power exists in ordinary cases. *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 222 (2024).

(S.D.N.Y. 2003). And the Delaware case Defendants themselves cite similarly holds that D&O insurance proceeds are not estate property. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). So too here: if Hunsicker's criminal defense costs do not swiftly exhaust the policy, the hypothetical possibility that Defendants may make coverage claims against the carrier for some of their defense costs or liability does not turn a lawsuit against non-debtors into a lawsuit against estate property.

Finally, to the extent that Defendants are arguing that the CaaStle bankruptcy estate, rather than P180, owns any of the claims in this lawsuit, they are simply wrong. "[T]he trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings." *Hirsch*, 72 F.3d at 1093. Defendants have not discernably argued that any of P180's claims for P180's direct injury as a result of Defendants' fraud and breach of their fiduciary duties *as directors and officers as P180* are derivative claims that really belong to CaaStle, because obviously they are not. "[W]hen creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Id.* Thus, in *Hirsch*, fraud claims were the property of the defrauded party, not the estate. *Id.*; *accord Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (fraud claim belonged to creditor, not estate). And the Second Circuit has held that a party injured by a RICO conspiracy has direct standing to sue for the injury it suffered, even if the debtor also suffered separate injuries from the same RICO violations. *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988). Here, the Complaint alleges direct injury to P180 based on violations of P180's own rights: it is suing for damages *P180* suffered from breaches of duties *P180's* directors and officers owed *P180* and aiding and abetting those breaches, conversion

of *P180's* money, and damages *P180* suffered as a result of plaintiffs' fraud. It is pursuing its own claims.

## IV.     DEFENDANTS LACK STANDING TO "EXTEND" THE STAY, ARE MOVING IN THE WRONG COURT, AND NO "VERY UNUSUAL CIRCUMSTANCES" EXIST HERE.

Defendants have also argued that this court should "extend" the stay to them as non-debtors. But they are the wrong parties to request this and in the wrong court. The bankruptcy stay exists to protect *the debtor*, not assorted codefendants. And the power to "extend" the stay (or more accurately, grant a preliminary anti-suit injunction under 11 U.S.C. § 105 to the extent such power survives the Supreme Court's decision in *Purdue Pharma*) is vested in the bankruptcy court, not this court. Defendants cannot invoke a stay to protect an absent debtor from a court that does not have statutory authority to provide it. In any event, even the bankruptcy court generally only exercises this power in very unusual circumstances or to protect the debtor's ability to reorganize. Non-debtors getting sued for breaching their own independent duties to third parties is anything but unusual. CaaStle is liquidating, not reorganizing.

***First***, Defendants lack standing to raise a statutory power enacted solely to benefit a debtor. Those courts that have recognized a power to "extend" a bankruptcy stay to codefendants have been emphatic that the purpose of the automatic stay is to protect the debtor, not to give non-debtors who have refused to subject themselves to the disclosure obligations of a bankruptcy proceeding a leg up in avoiding personal liability. *E.g.*, *Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988); *see also In re Crazy Eddie Sec. Litig.*, 104 B.R. at 583 (noting that Chapter 13 contains an express authorization for non-debtor stays, unlike other Chapters of the Bankruptcy Code, reflecting Congress's policy choice not to extend stays to non-debtors outside of Chapter 13). The Second Circuit's decision in *TIAA* noted, in finding a stay as to non-debtors unavailable, that the stay motion was instigated by "non-bankrupt co-defendants" seeking to

-15-

escape liability. 803 F.2d at 65. When a district court has a case before it, its "only interest is in resolving that claim." *Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48, 52–53 (E.D.N.Y. 2015). "If in doing so, it would prejudice other creditors of the debtor in a way that the Bankruptcy Court would consider unfair, it is for the Bankruptcy Court, upon motion of the debtor, to tell it so." *Id.* So too here: Defendants are not CaaStle's bankruptcy estate. The bankruptcy court can and, absent an agreement between P180 and the Trustee, will determine whether or not to issue a preliminary anti-suit injunction "extending" the stay to non-debtors. That is a dispute between the Trustee and P180 presently being litigated in the bankruptcy court. Defendants cannot invoke a statute not enacted for their benefit here to get a bite at an apple that is not theirs.

**Second**, this is the wrong court. The bankruptcy court, not this Court, is authorized to "effectively weigh the intra and inter-creditor interests that its unique position allows it to take into account." *Pavers*, 536 B.R. at 53. "Such bankruptcy court decisions are thus not very persuasive in instructing what a non-bankruptcy court should do," so district courts "decline to act like a bankruptcy court here." *Id.*

**Third**, even if Defendants could overcome these threshold issues, courts in this Circuit have made clear that a non-debtor stay is a truly exceptional remedy, authorized only when necessary for the debtor's reorganization. "Courts in this Circuit regularly refuse to extend a debtor corporation's § 362(a) stay to its non-debtor officers and principals." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004) (Marrero, J.); *accord Gray*, 230 B.R. at 242 (collecting long list of cases denying stays of direct claims against officers and directors). "A non-debtor can claim the protection of a debtor's stay only in *very unusual circumstances*, where to do otherwise would immediately and necessarily deplete the assets of the debtor's estate." *Ebin*

*v. Kangadis Fam. Mgmt. LLC*, 45 F. Supp. 3d 395, 398 (S.D.N.Y. 2014) (emphasis added). Moreover, "in the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant." *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 34 (S.D.N.Y. 1990); *accord Gray*, 230 B.R. at 244.

There is, of course, no reorganization here: CaaStle is liquidating. Thus, under *CAE* and *Gray*, a non-debtor stay is categorically unavailable because there is no reorganization impact. But even aside from that, the "very unusual circumstances" required, *Ebin*, 45 F. Supp. 3d at 398, simply do not exist here. To start, the case that recognized the "unusual circumstances" exception, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), was a decision in the Dalkon Shield mass tort litigation that preliminarily enjoined claims against non-debtors and a prelude to a later decision in the same case recognizing that in "unusual circumstances" a bankruptcy court could forcibly release claims against non-debtors. That is, of course, precisely what *Purdue Pharma* held was wrong, and so *A.H. Robins*'s precedential value is questionable. But even by its own terms, it carved out only a narrow exception for the "unusual situation" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant," such as "absolute indemnity" rights. *Id.* This is an exceptionally narrow rule: "where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty," the stay "would clearly not extent to such nondebtor." *Id.*

That latter situation—where the nondebtor's liability rests upon their own breaches of duties imposed on them by tort law, the RICO statute, or as fiduciaries *of P180*—is precisely this case. So, by *A.H. Robins*'s own terms, there is no grounds to enjoin non-debtor claims. *See also In re Crazy Eddie Sec. Litig.*, 104 B.R. at 584 (fraud claims were based on directors' and officers' breach of their own duties). The claims here do not depend on CaaStle being liable. *Cf. Aetna Cas.*

& *Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992) (distinguishing an independent duty to pay under guarantees from a prior case involving convoluted theory that corporate officers somehow had to cover the company's debts). And, at any rate, there is no absolute right to indemnification from the debtor either. *Gucci*, 328 F. Supp. 2d at 442 (judgment must "directly affect the debtor's assets"); *In re Allied Digital*, 306 B.R. at 512 ("hypothetical" indemnification not enough). Indeed, under Delaware law, a corporation is *forbidden* from indemnifying its directors if they have been finally adjudicated to be liable for intentional torts like those alleged here, so indemnification is necessarily contingent. *See generally* 8 Del. C. § 145.

  ***Finally***, if Defendants are attempting to rely on some sort of freewheeling equitable discretion untethered to the narrow factors identified in *A.H. Robins* and its progeny, they both lack authority for any such position and are wrong. As discussed above, courts have consistently held that the existence of director's and officer's insurance paid for by the debtor does not warrant either an automatic or discretionary stay. *E.g.*, *In re First Cent. Fin. Corp.*, 238 B.R. at 18-19, 21; *Duval v. Gleason*, No. C-90-0242-DLJ, 1990 WL 261364, at *6 (N.D. Cal. Oct. 19, 1990) (theoretical possibility that defendants would fail to pay judgment and plaintiff would eventually levy against insurance policy to satisfy it too speculative). The bankruptcy should facilitate, rather than hinder, discovery, since the Trustee is gathering many of the same documents that bear on liability here to support the estate's separate claims, and a bankruptcy estate is not immune from subpoenas. *In re Miller*, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001); *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 Civ. 4650(JFK), 2014 WL 4783008, at *5 (S.D.N.Y. Sept. 25, 2014); *Stih v. Rockaway Farmers Mkt., Inc.*, 656 B.R. 308, 313 (E.D.N.Y. 2024). And there is no rule that a bankruptcy trustee gets first bite at the apple of a non-debtor's assets if both the estate and a tort plaintiff both have claims against the non-debtor. *E.g.*, *In re Reliance Acceptance Grp.*,

*Inc.*, 235 B.R. 548, 561 (D. Del. 1999) (debtors "have been unable to identify a legal principle that stands for the proposition that the Estate's claims for relief should take precedence over the Shareholders' claims."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 59, 71 (S.D.N.Y. 2013) (Marrero, J.) ("If the Anwar Plaintiffs are not creditor-customers of the BLMIS estate, and therefore not entitled to proceeds from the estate, then their independent and direct claims against a non-debtor party cannot be subjugated for the benefit of the debtor estate."), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014).

## CONCLUSION

For the foregoing reasons, and those stated in P180's letter briefs, P180 respectfully requests that the Court deny the requested stay.

Dated:  October 24, 2025
Bushey, United Kingdom

Respectfully submitted,

STEPTOE LLP

/s/ Joseph M. Sanderson
By:   Joseph Myer Sanderson
        1114 Avenue of the Americas
        New York, New York 10036
        Tel.: 212-378-7615
        Fax: 212-506-3950
        josanderson@steptoe.com

        Thomas Bernard Watson (pro hac vice)
        Conor Tucker (pro hac vice)
        Kaitlyn Sever (pro hac vice)
        633 West Fifth Street
        Suite 1900
        Los Angeles, CA 90071
        213-429-9400
        twatson@steptoe.com
        ctucker@steptoe.com

        *Attorneys for Plaintiffs*

-19-

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this Memorandum of Law complies with the word limits of this Court's Individual Practices. According to the word-processing system used to prepare this memorandum of law, the total word count, excluding the material excluded by rule, is 6,082 words.

/s/ Joseph M. Sanderson
Joseph M. Sanderson
