**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| P180, INC.,<br><br>Plaintiff,<br><br>—against—<br><br>JASWINDER PAL SINGH, CHRISTINE HUNSICKER, GEORGE GOLDENBERG, SCOTT CALLON, CHIRAG JAIN AND DOES 1-50,<br><br>Defendants. | Case No. 25-cv-4432-VM-SDA |

**STIPULATED PRODUCTION PROTOCOL AND ORDER**

Plaintiff P180, Inc. and Defendants Jaswinder Pal Singh, Christine Hunsicker, and George Goldenberg agree to the following "Stipulated Production Protocol" ("Protocol") for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure and subject to the Parties' Stipulated Confidentiality Agreement and Protective Order.

**General Provisions**

1. As used herein, "Requesting Party" means a party to whom documents are produced in response to a discovery request. As used herein, "Producing Party" means a party that produces documents in response to a discovery request. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

2. This Protocol will govern the exchange of documents in this Action and applies to the ESI provisions of Fed. R. Civ. 16, 26, 33, 34, and 37. This Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule,

in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ.45 and, specifically, the provision of Fed. R. Civ. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3. Nothing in this Protocol shall be deemed to prevent the Parties from agreeing to terms different than or inconsistent with the terms of this Protocol, provided the agreement is in writing.

4. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

5. This Protocol is consistent with Fed. R. Civ. 26(b)(1) and limits the scope of discovery to any non-privileged data that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing in this Protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under Fed. R. Civ. 26(b)(1).

**Documents from hard copy sources**

6. The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text (or searchable PDF if production format dictates), along with the below-listed fielded data when available. The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match

text and fielded data with TIFF images (load file may be omitted with a PDF format production). With respect to Hard Copy Documents, data on the load file will include at a minimum:

a. Beginning Document Bates Number

b. Ending Document Bates Number

c. Beginning Family Bates Number (begins with 1st page of parent)

d. Ending Family Bates Number

e. Custodian or Source

f. Confidentiality Designation

g. Page Count

h. Redaction (Y/N)

i. Text File Path, including filename and extension (.txt)

## Electronically Stored Information

**Discovery of ESI shall proceed as follows:**

7. Except as otherwise stated herein, the Parties will produce documents originating as ESI, or kept as such in the ordinary course, in TIFF format with extracted text (or searchable PDF if production format dictates), along with the below-listed metadata fields when available. The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included on the load file to match text and metadata with TIFF images (load file may be omitted with a PDF format production). With respect to ESI, data on the load file will include at a minimum:

a. Beginning Document Bates Number

b. Ending Document Bates Number

c. Beginning Family Bates Number (begins with 1st page of parent)

d. Ending Family Bates Number

e. Custodian or Source

f. Duplicate Custodians

g. Confidentiality Designation

h. Page Count

i. Redaction (Y/N)

j. Document Date (if available)

k. File Name (including extension)

l. File Extension

m. Document Type

n. Email From (if applicable)

o. Email To (if applicable)

p. Email CC (if applicable)

q. Email BCC (if applicable)

r. Email Subject (if applicable)

s. Email Date Received (if applicable)

t. Email Time Received (if applicable)

u. Email Date Sent (if applicable)

v. Email Time Sent (if applicable)

w. Time zone

x. MD5 Hash Values (or alternatively agreed upon Hash Standard)

y. Text File Path, including filename and extension (.txt)

z. Native File Path, including filename and extension

8. The Parties may redact information that is privileged or protected from discovery

as work product or by reason of any other applicable privilege or immunity.

9. The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production format dictates; or in native format for file types that do not convert well to TIFF/PDF, such as Excel files) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

10. The Parties will produce in native format those documents and ESI that do not convert well to TIFF images (in addition to Excel and Power Point, e.g. oversized drawings, picture files, audio and video files). A party receiving a production may request the production in native format of documents that do not convert well to TIFF images and the party producing the documents is expected to comply with reasonable requests for production of such documents in native format.

11. The file name for the documents produced in native format will consist of a Bates number. The Parties will provide a corresponding placeholder TIFF image (or PDF if production format dictates) for native files included in a production bearing a sequential BATES number within the family BATES range.

12. The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity in accordance with the Southern District of New York's discovery rules and the Parties' Protective Order.

13. The producing party shall produce a privilege log that complies with all requirements set forth in Fed. R. Civ. P. 26(b)(5)(A)(ii) and Local Rule 26.2 one week after its document production(s). Communications with litigation counsel appearing in this proceeding do not need to be logged after the filing date of a Party's first appearance in this matter. The

Parties may confer on the nature and scope of privilege logs for the Action, including whether categories of information may be excluded from any logging requirements and whether alternatives to Document-by-Document logs can be exchanged. Failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an amended privilege log providing the required privilege log entries for the document(s). Amended privilege logs shall be produced in such a manner or with sufficient information to determine what has been amended.

14. The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and will produce only a single copy of identical ESI. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families. All custodians of a de-duplicated document must be identified in the "Duplicate Custodians" metadata field specified in Paragraph 7. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians.

15. If, before document production, a party believes email-threading analytics software should be used to alleviate burden, it may request that the Parties will meet and confer to reach an agreement regarding the appropriate form of production. If agreed upon to limit the volume of duplicative content produced from email threads, the Parties may utilize email-threading analytics software to exclude duplicative or "non-inclusive" content wholly contained within later-in-time or "inclusive" email threads, provided that the Producing Party treats all emails that have unique substantive content (including attachments) as inclusive emails that will not be excluded from production. On request, the Producing Party shall produce any individual

email in an email chain consolidated by email-threading.

16. Except as otherwise allowed herein, the Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.

17. The Parties shall assign a Bates number to individual pages of TIFF documents (or PDF documents) and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document.

18. The Parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Protocol waives, restricts or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations as required under the Federal Rules of Civil Procedure or the Parties' "claw-back" rights and obligations pursuant to the Parties' Protective Order.

19. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this protocol prohibits a party from seeking relief from this protocol.

20. Nothing in this protocol shall be construed to affect, modify or amend the parties' Parties' Protective Order filed with the Court.

**Production of Databases and Other Structured Data.**

21. Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

22. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form (PDF, Excel, csv).

**Other Data Sources**

23. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI[1] may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**Deficiency Procedure**

24. If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

25. As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process.

[1] This expressly includes any ESI the Government has returned to defendant Christine Hunsicker via discovery in the criminal case captioned, *United States v. Hunsicker*, 25-CR-318 (JPO), all of which remains subject to the terms of the Protective Order entered in that case at ECF No. 16.

26. Upon request, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional proportional production criteria to cure the deficiency.

27. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties may seek court intervention in accordance with Section II of Magistrate Judge Aaron's Individual Practices and, upon a showing of good cause, the Court may require the Producing Party to remedy such deficiencies..

**Clawback Provision**

28. The production of electronically stored information (ESI), whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. The Producing Party who desires to assert a claim of privilege, attorney work-product protection, or other protection from discovery on a document that has been produced (by it or any other party) may inform the other parties of such claim in writing (a "Clawback Request"). The Clawback Request must contain a succinct statement regarding the basis for the claim sufficient to enable the parties to confer regarding the document; but such statement shall not bind the party or, by inclusion or omission, waive any other bases for protection from discovery.

a. After a Clawback Request is received, the Receiving Party shall immediately sequester the document (if not already sequestered) and shall not review or use that document, or any work product containing information taken from that document, for any purpose except as expressly authorized in this paragraph. The Receiving Party shall delete

and remove all physical or electronic copies of the document or information and shall delete the contents or other information about the document from any document or other item into which the contents or other information has been incorporated, except that the Receiving Party may retain one copy of the document for five (5) days to use only as expressly authorized in this paragraph.

b. Within twenty-four (24) hours of receipt of a Clawback Request the Receiving Party shall confirm compliance with paragraph 28(a) in writing.

c. If a Receiving Party disputes the claim of privilege, attorney work-product, or other protection made by the Producing Party, it may, within seven (7) days of a Clawback Request, submit the issue to the court for determination by letter brief to the court using the procedures outlined in Section II of Magistrate Judge Aaron's Individual Practices. All Parties will be bound by the Court's determination. Only one letter brief challenging the claim may be filed, regardless of how many Receiving Parties challenge the claim. If more than one Receiving Party disputes the claim of privilege, attorney work-product, or other protection made by the Producing Party, it may join the letter brief submitted on the issue. If it does not join the initial letter brief disputing the claim, it may not thereafter file any separate letter brief in response or reply. If more than one party claims privilege, attorney work-product, or other protection unique from other parties claiming privilege, attorney work-product, or other protection, they may elect to join a single opposition or may file

separate oppositions to the extent they address unique issues. The Receiving Party shall not file the document or information with the court; but if requested the Producing Party must make the document or information available for inspection in camera. If the Receiving Party files a letter brief as contemplated in this subparagraph, it may maintain one copy of the document or information until the issue is resolved.

d. If any Receiving Party who has been served with a Clawback Request fails to submit the issue to the court within seven (7) days as contemplated in paragraph 28(c), that Receiving Party waives and forfeits any argument that such document is not privileged, attorney-work product, or otherwise protected from discovery. This provision does not waive any arguments regarding subsequent Clawback Requests or protection of subsequently produced documents or information. This provision does not prohibit a Receiving Party from challenging the protection, on any basis, of any other documents or information, including on any Privilege Log, or subject to subsequent Clawback Requests, including claims made for the same or substantially similar reasons. This provision does not prevent the Court from ordering production of any document or information, or part of such document or information, (including the document or information not moved upon), if such document or information, or part of such document or information, is later found to be of a category or set of documents not protected from discovery.

e. If the Receiving Party does not file a letter brief pursuant to section 12(c) or if the matter is resolved such that the material is protected from discovery, the Receiving Party shall destroy any remaining copy(ies) of the material and promptly certify such destruction in writing. In such circumstance, the Producing Party shall promptly serve any necessary amended discovery, including an amended privilege log.

29. This ESI Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502(d) and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

30. The clawback provisions of the parties Protective Order control.

**Final Disposition of ESI**

31. Within 30 days of the final disposition of this action, all Discovery Material designated as "Confidential," and all copies thereof, shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed. Counsel for the parties may retain, only as necessary and appropriate, copies contained on automatic backups or pursuant to obligations to preserve documents or client files notwithstanding this paragraph.

SO STIPULATED AND AGREED:

Dated: February 12, 2026

STEPTOE LLP

*/s/ Conor Tucker*
By: Conor Tucker

Joseph Myer Sanderson
1114 Avenue of the Americas
New York, New York 10036
Tel.: 212-378-7615
Fax: 212-506-3950
josanderson@steptoe.com

Thomas Bernard Watson (pro hac vice)
Conor Tucker (pro hac vice)
Kaitlyn Sever (pro hac vice)
633 West Fifth Street
Suite 1900
Los Angeles, CA 90071
213-429-9400
twatson@steptoe.com
ctucker@steptoe.com

*Attorneys for Plaintiffs*

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

*/s/ Richard W. Boone Jr.*
By: Richard W. Boone Jr.
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Richard.boone@wilsonelser.com
kieran.lang@wilsonelser.com

*Attorneys for Defendants Jaswinder Pal Singh and George Goldenberg*

VEDDER PRICE PC

*/s/ Joshua A. Dunn*
By: Joshua A. Dunn
1633 Broadway 31st Floor
New York, New York 10019
Telephone: (212) 407 7791
Email: jdunn@vedder.com

*Attorneys for Defendant Christine Hunsicker*

SO ORDERED:

STEWART D. AARON
United States Magistrate Judge
Dated: February 13. 2026