+-----------------------------------------------------------------------------------------------------------------------

Conor Tucker
212 439 9472
ctucker@steptoe.com

633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
213-439-9400 main
www.steptoe.com

**Steptoe**

June 10, 2026

**<u>VIA ECF</u>**

Hon. Victor Marrero, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 1610
New York, NY 10007

   Re:  *P180, Inc. v. Singh, et al.*, No. 25 Civ. 4432 (VM)

Dear Judge Marrero:

  We represent Plaintiff P180, Inc. ("P180") in the above-referenced action. Pursuant to Your Honor's Individual Rule II.B.1, we respond to Defendant Corlito's pre-motion letter (Dkt. 114). As discussed below, the Amended Complaint ("AC," Dkt. 89) alleges sufficient facts regarding Corlito's involvement, and her proposed motion does not provide a basis for dismissal.

  ***Count I (RICO)***. Relying on out-of-circuit authority, Corlito contends that P180's RICO count against her fails to allege an association-in-fact enterprise because there is no "connecting force" between her role at CaaStle and the fraudulent scheme by several defendants. Dkt. 114. The Second Circuit, however, has "rejected attempts to graft onto the statute formal strictures that would tend to exclude amorphous or disorganized groups of individuals from being treated as RICO 'enterprises'" so that "only three structural features [are required]: (1) a shared purpose; (2) relationships among the associates; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)) (internal quotation omitted). That's satisfied here. P180 alleges a shared purpose (enrich the Enterprise, conceal the fraud, and distribute proceeds to maintain loyalty and silence, *see, e.g.*, AC ¶¶ 92, 155, 160, 162), relationships among associates (*see, e.g.*, AC ¶ 91), and longevity (over a decade for the core conspirators with Corlito's active involvement since 2023, *see, e.g.*, AC ¶¶ 103–112).

  Corlito's artificial distinction between the "Defendant Directors" and herself fails. Other defendants' roles have no bearing on association. What matters is the shared purpose, the relationships, and the conduct—all of which P180 alleges: Corlito repeatedly worked with Jain (*see, e.g.,* AC ¶¶ 48, 86–89, 155, 247), Hunsicker (*see, e.g.,* AC ¶¶ 7, 91, 245, 308), and Goldenberg (*see, e.g.,* AC ¶¶ 113, 149(a)–(d), 250–51, 266), to cover-up the fraud (AC ¶¶ 103–112) and to facilitate payoffs (AC ¶¶ 150–162). P180 also adequately alleges Corlito's management of the enterprise's affairs. RICO is not limited to upper management. Management is a "low hurdle . . . at the pleading stage" and includes lower-rung participants if they "participate[d], directly or indirectly" in an enterprise's affairs. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009); *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993); 18 U.S.C. § 1962(c). Corlito had a critical position (Financial Controller, AC ¶ 48) and actively managed cover-ups and pay-offs (AC ¶¶ 103–112, 150–162). Her cited authorities do

**Steptoe**

Hon. Victor Marrero, U.S.D.J.,
April 28, 2026
Page 2

not suggest otherwise. *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 248 (S.D.N.Y. 2001) confirms that even "lower rung" participants (including those who pay off participants) may be held liable. And the allegations here show Corlito to be far more involved than the professionals whose conduct was at issue in *EverCare Choice Inc. v. PKF O'Connor Davies, LLP*, 2026 WL 1284171, *10 (S.D.N.Y. May 11, 2026). There, defendants were merely "retained as . . . independent auditors, reporting to their clients, attending certain finance committee meetings, and preparing audited financial statements." *Ibid.* Here, Corlito independently covered up the fraud, paid off investors, and facilitated transactions. P180 also sufficiently alleges knowledge of the enterprise's scheme to defraud P180. Corlito knew because of her role (AC ¶ 84), furthered the cover-up through communicating with auditors and providing access to financial data (AC ¶¶ 88–89), and transferred P180's funds to further the enterprise's goal (AC ¶¶ 149, 318). This is demonstrated by her lies, such as saying that a change in auditors was a cost-saving measure (AC ¶ 92), when in fact she knew that BDO resigned after its logo was used with falsified financials (AC ¶¶ 90–91). *Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022) is inapposite, as those defendants had no common unlawful purpose, no communications between them, and no awareness of each other's conduct. Here, Corlito had the same common purpose (cover-up the fraud and pay out), significant communications, and clear knowledge.

Finally, Corlito is wrong that she has just been lumped in with other defendants. *Mid-Hudson Anesthesiologists, P.C. v. St. Luke's Cornwall*, 2026 U.S. Dist. LEXIS 55969, *11 (S.D.N.Y. Mar. 16, 2026) does not address RICO at all. And, she ignores P180's specific allegations of predicate acts, including her participation in bank fraud and/or money laundering through transfers made from P180's Chase Bank account, redemptions made to Singh and Goldenberg to deplete any remaining cash, and transfers to Ms. Hunsicker's personal accounts. (AC ¶¶ 318(a)–(k)).

***Count II (RICO Conspiracy)***. Corlito argues that if P180 fails to plead substantive RICO against her, its RICO Conspiracy claim fails, too. That is wrong: "The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. . . . If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas v. United States*, 522 U.S. 52, 63–64 (1997) (citation omitted). As Financial Controller, Corlito had access to the company's ledgers, revenue figures, financial statements, and internal reporting as part of her core responsibilities. (AC ¶ 84). Despite this, she permitted and facilitated false statements about those figures and the transfer of millions of dollars from P180 accounts, including transfers to Hunsicker's personal account (AC ¶ 250) and millions more to Singh and Goldenberg through redemptions (AC ¶¶ 318(g)–(h)). Even if this was just "support" and not a crime itself, the conspiracy claim stands. Corlito's only case on this issue, *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 658 (S.D.N.Y. 1996) applies a standard abrogated by *Salinas*. Further, the allegations here are distinct from *Abbot Labs v. Adelphia Supply USA*, 2017 U.S. Dist. LEXIS 1007 at *35–36 (S.D.N.Y. Jan. 4, 2017). There, the plaintiff lacked any particularized facts (alleging, *e.g.*, "Each Defendant . . . conspired with others"). *Id.* The Amended Complaint pleads Corlito's specific knowledge through her role as Financial Controller and participation in transfers and cover-ups. As one example, after the

**Steptoe**

Hon. Victor Marrero, U.S.D.J.,
April 28, 2026
Page 3

resignation of BDO as auditor and knowing better, Corlito responded "No" to a new auditor's inquiry as to whether any recent fraud had occurred. (AC ¶¶ 90–91).

***Count III (Conversion)***. Unable to dispute that P180 sufficiently alleges her participation in converting P180's funds, Corlito argues that P180 pleaded a tort when it should have pleaded a breach of contract. But New York law is not so rigid. For example, she could be liable as a participant (*e.g.*, *Ingram v. Machel & Jr. Auto Repair, Inc.*, 148 A.D.2d 324, 325 (1989)) or for breaching an independent duty arising from bailment (*e.g.*, *Conn. N.Y. Lighting Co. v. Manos Bus. Mgmt. Co.*, 171 A.D.3d 698, 699–700 (2019)). P180 clearly alleges she improperly handled entrusted funds (AC ¶ 155) and so is liable either as a participant or from violating a separate duty when she exceeded her authority by misappropriating the funds through, at a minimum, transfers to Hunsicker. Thus, the conversion claim is not duplicative as Corlito is liable independent of any contract. Corlito's citation to an un-reasoned dismissal (*CDR Créances S.A. v Euro-American Lodging Corp.*, 40 A.D.3d 421, 422 (1st Dep't 2007)) in which plaintiff failed to plead either breach of contract or conversion does not require otherwise. Also, Corlito is wrong that P180 has any demand requirement where, as here, demand would be futile (*e.g.*, *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 260 (2002)) or where the taking itself immediately gives rise to a cause of action for conversion (*Prot. Indus. Corp. v. DDB Needham Worldwide, Inc.*, 8 A.D.3d 185, 186 (2004)). Both exceptions are satisfied. Corlito was entrusted with P180's funds solely in connection with her role and had no right to use or divert those funds in a manner inconsistent with P180's interests, and her misappropriation of the funds immediately gave rise to P180's claim for conversion.

***Count VII (Aiding & Abetting Fraud and/or Co-Conspirator Liability)***. Corlito claims that P180 fails to plead that she had knowledge of and provided substantial assistance for Count VII. But P180 alleges both. Corlito knew of the fraud since at least October 2023, when BDO resigned after Hunsicker falsified its audit report (AC ¶¶ 104–112) yet continued in her role at CaaStle. As to substantial assistance, P180 details this conduct, including her cover-up of BDO's resignation (AC ¶¶ 88–92) and participation in fraudulent banks transfers (AC ¶¶ 318(a)–(k)). The claim for co-conspirator liability is also proper here because even with no civil conspiracy cause of action, co-conspirators may be held liable for other's torts in furtherance of their scheme.

***Count VIII (Aiding & Abetting Breach of Fiduciary Duty)***. Similarly, Corlito claims that P180 does not plead knowledge of or substantial assistance for Count VIII. Again, she's wrong. P180 alleges that Corlito knew the truth about CaaStle's business position, knew that Hunsicker was lying about it to key partners, and actively covered that up. It is a fair inference that Corlito, based upon her position, knew that Hunsicker and Goldenberg were breaching fiduciary duties to those partners. (*E.g.*, AC ¶¶ 370–71). Corlito's reliance on *Baron v. Galasso*, 83 A.D.3d 626, 628 (2nd Dep't 2011) is misplaced. That case involves a bank's alleged failure to detect a bookkeeper's depletion of an escrow account and failure to discover unauthorized diversions. Here, P180 alleges that Corlito was not a passive intermediary but an active participant in both the financial misconduct and cover-up. That's enough at this stage of the case.

\* \* \*

Steptoe

Hon. Victor Marrero, U.S.D.J.,
April 28, 2026
Page 4

P180 requests a pre-motion conference or, alternatively, a briefing schedule.

Respectfully Submitted,

By:  /s/ Conor Tucker

Conor Tucker

cc:    Counsel of Record via ECF