**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

P180, INC.                                                    :
                                                              :
                              Plaintiff,       :
                                                              :
         -against-                                   :
                                                              :          Case No. 25-cv-4432
                                                              :
JASWINDER PAL SINGH, CHRISTINE HUNSICKER,   :
GEORGE GOLDENBERG, SCOTT CALLON, CHIRAG   :
JAIN, DAYNA CORLITO, AND DOES 1-50              :
                                                              :
                              Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**</u>
<u>**JASWINDER PAL SINGH'S AND GEORGE GOLDENBERG'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF P180, INC.'S COMPLAINT**</u>

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
Richard W. Boone Jr.
Siobhán A. Mueller
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com
E-mail: kieran.lang@wilsonelser.com

*Counsel for Defendants Jaswinder Pal*
*Singh and George Goldenberg*

337309139v.6

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

LEGAL ARGUMENTS............................................................................................................ 7

    POINT I: PLAINTIFF LACKS STANDING.................................................................. 8

    POINT II: PLAINTIFF FAILS TO PLEAD A VIOLATION OF 18 U.S.C. §
        1962(c) (COUNT I) ................................................................................ 9

        A.    Plaintiff fails to plead with particularity any predicate acts by the
            Moving Defendants.................................................................... 10

        B.    Plaintiff fails to adequately plead a RICO "enterprise."............................ 14

        C.    Plaintiff fails to allege proximate causation............................................. 16

    POINT III: PLAINTIFF FAILS TO PLEAD A CLAIM OF RICO CONSPIRACY
        UNDER 18 U.S.C. § 1962(D) (COUNT II) .......................................................... 18

    POINT IV: PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION
        (COUNT III) ........................................................................................... 19

    POINT V: PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
        FIDUCIARY DUTY (COUNT V) .................................................................... 21

    POINT VI: PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND
        ABETTING BREACH OF FIDUCIARY DUTY (COUNT VIII)....................... 23

    POINT VII: PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT
        INDUCEMENT, FRAUDULENT CONCEALMENT, CONSTRUCTIVE
        FRAUD (COUNT VI) AND AIDING AND ABETTING FRAUD
        AND/OR CO-CONSPIRATOR LIABILITY (COUNT VII).............................. 24

    POINT VIII: PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT
        MISREPRESENTATION.................................................................................. 27

CONCLUSION........................................................................................................................ 28

i

337309139v.6

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Angermeir v. Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014) ................................................................................ 10

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ......................................................................................................... 16

*Associated Gen. Contrs. v California State Council of Carpenters*,
459 U.S. 519 (1983) ......................................................................................................... 17

*Atlasman v. Korol*,
238 A.D.3d 826 (2d Dep't 2025) ...................................................................................... 28

*Auerbach v Bennett*,
47 N.Y.2d 619 (1979) ....................................................................................................... 22

*Baisch v. Gallina*,
346 F.3d 366 (2d Cir. 2003) ............................................................................................. 18

*Balanced Return Fund v. Royal Bank of Can.*,
No. 600949/2009, 2014 N.Y. Misc. LEXIS 6380 (Sup. Ct., N.Y. Cnty. Oct. 30, 2014) ......... 23, 24, 26

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
667 F. Supp. 3d 83 (S.D.N.Y. 2023) .......................................................... 11, 12, 13, 24, 26

*Belen v Herman*,
2024 U.S. Dist. LEXIS 8543 (S.D.N.Y. Jan. 17, 2024) ..................................................... 15

*In re BJ's Wholesale Club Shareholders Litig.*,
2013 Del. Ch. LEXIS 28 (Ch. Jan. 31, 2013) ................................................................... 21

*Black v Wrigley*,
No. 16-CV-430, 2021 U.S. Dist. LEXIS 206748 (E.D.N.Y. Sep. 21, 2021) ................ 14, 27

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) ....................................................................... 14, 15, 18

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001) ............................................................................................. 14

*Carlin v. United Healthcare Ins. Co. of N.Y., Inc.*,
No. 24-CV-8435, 2025 U.S. Dist. LEXIS 172373 (S.D.N.Y. Sept. 4, 2025) ........ 9, 10, 11, 16, 18

*Cohen v Koenig*,
25 F3d 1168 (2d Cir. 1994) .............................................................................................. 25

337309139v.6

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013) ............................................................................................. 13

*Colavito v NY Organ Donor Network, Inc.*,
8 N.Y.3d 43 (2006) ........................................................................................................... 19

*Connecticut National Bank v. Fluor Corp.*,
808 F.2d 957 (2d Cir. 1987) ............................................................................................. 25

*Cont. Petroleum Corp. v Corp. Funding Partners, LLC*,
2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. Apr. 11, 2012) ........................................... 15, 18

*Crawford v. Franklin Credit Mgmt.*,
758 F.3d 473 (2d Cir. 2014) ....................................................................................9, 19, 28

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ............................................................................................. 14

*CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*,
2007 U.S. Dist. LEXIS 74723 (S.D.N.Y. Oct. 3, 2007) .................................................... 21

*Daly v. Castro Llanes*,
30 F. Supp. 2d 407 (S.D.N.Y. 1998) ................................................................................. 11

*Dover Ltd. v. A.B. Watley, Inc.*,
423 F. Supp. 2d 303 (S.D.N.Y. 2006) ............................................................................... 25

*First Capital*, 385 F.3d at 182 .............................................................................................. 18

*First Nationwide Bank v Gelt Funding Corp.*,
820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................................ 15, 17

*Global Mins. & Metals Corp. v Holme*,
35 A.D.3d 93 (1st Dept 2006) ............................................................................... 23, 24, 26

*Goel v. Bunge, Ltd.*,
820 F. 3d 554 (2d Cir. 2016) ............................................................................................... 7

*Gull Keys I LLC v. Fulton Advisory Beef Fund I, LLC*,
No. 23-CV-09058, 2025 U.S. Dist. LEXIS 169799 (S.D.N.Y. Sept. 2, 2025) .............. 25, 26

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
No. 17-CV-1724, 2020 U.S. Dist. LEXIS 257621 (E.D.N.Y. June 28, 2020) .................... 11

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. Sept. 9, 2016) .................................................................... 8

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ............................................................................................................. 16

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) .................................................................................................... 16, 17

iii

*Hughes v. NFL*,
  No. 22-cv-10743 (JLR), 2024 U.S. Dist. LEXIS 160067 (S.D.N.Y. Sept. 5, 2025),
  *appeal docketed*, No. 24-2656 (2d Cir. 2024) ................................................................... 7

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ................................................................................................. 27

*Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.*,
  676 F. Supp. 2d 100 (E.D.N.Y. 2009) .............................................................................. 27

*JAPNA, Inc. v. Selfx Innovations Inc.*,
  No. 22-cv-10753(ALC) (RWL), 2024 U.S. Dist. LEXIS 52774 (S.D.N.Y. Mar. 22,
  2024) ................................................................................................................................. 23

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 ..................................................... 9

*Knox v. Zarzeski*,
  2006 U.S. Dist. LEXIS 117784 (S.D.N.Y. July 11, 2006) ................................................. 8

*Kraus USA, Inc. v. Magarik*,
  No. 17-CV-6541 (ER), 2020 U.S. Dist. LEXIS 83841 (S.D.N.Y. May 12, 2020) ............ 23

*Landy v. Mitchell Petroleum Tech. Corp.*,
  734 F. Supp. 608 (S.D.N.Y. 1990) .................................................................................... 12

*McCrae v. Trans Union LLC*,
  No. 23-cv-07971 (JLR), 2024 U.S. Dist. LEXIS 78935 (S.D.N.Y. Apr. 29, 2024) ............ 8

*Meisel v Grunberg*,
  651 F Supp 2d 98 (S.D.N.Y. 2009) ................................................................................... 27

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  611 F. App'x 34 (2d Cir. 2015) ......................................................................................... 23

*Morgulis v Bus Patrol Am., LLC*,
  2024 U.S. Dist. LEXIS 136982 (S.D.N.Y. Aug. 1, 2024) ................................................. 19

*Neurological Surgery, P.C. v MLMIC Ins. Co.*,
  208 AD3d 1238, 175 N.Y.S.3d 266 (2d Dep't 2022) ......................................................... 28

*NY State Catholic Health Plan, Inc. v Academy O & P Assoc.*,
  312 FRD 278 (EDNY 2015) .............................................................................................. 11

*Orlando v Nxt-ID Inc.*,
  No. 20-cv-1604, 2022 U.S. Dist. LEXIS 60682 (S.D.N.Y. Mar. 31, 2022) ....................... 21

*Productores Asociados de Cafe Rio v Moreno*,
  No. 98 Civ. 499 (DAB), 1999 U.S. Dist. LEXIS 6627 (S.D.N.Y. May 5, 1999) ............... 16

*Purgess v Sharrock*,
  806 F Supp 1102 (S.D.N.Y. 1992) .................................................................................... 18

iv

*Reich v Lopez*,
    38 F Supp 3d 436 (S.D.N.Y. 2014) ........................................................................................... 18

*report and recommendation adopted*, No. 17 Civ. 6147 (AT)(SDA), 2018 U.S. Dist.
    LEXIS 79279, at *1 (S.D.N.Y. May 10, 2018) ....................................................................... 11

*Rohe v. Bertine, Hufnagel, Headley, Zeltner*,
    Dru, 160 F. Supp. 542, 548 (S.D.N.Y. Feb. 1, 2016) ............................................................. 21

*Royal Canin U.S.A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025) .................................................................................................................... 1

*Ruel v McGrath*,
    No. 1:12-CV-417, 2013 U.S. Dist. LEXIS 202738 (N.D.N.Y. June 19, 2013) ..................... 25

*Sanchez v. ASA College, Inc.*,
    No. 14-CV-5006 (JMF), 2015 U.S. Dist. LEXIS 73222 (S.D.N.Y. June 5, 2015) ................ 10

*Santana v. Adler*,
    No. 17-cv-06147 (AT)(SDA), 2018 U.S. Dist. LEXIS 51401 (S.D.N.Y. Mar. 26,
    2018) .................................................................................................................................. 10, 11

*Silverman v 3D Total Solutions, Inc.*,
    2019 U.S. Dist. LEXIS 153048 (S.D.N.Y. Sep. 9, 2019) ....................................................... 27

*Spartan Capital Secs., LLC v. Sports Field Holdings, Inc.*,
    2021 U.S. Dist. LEXIS 31421 (S.D.N.Y. Feb. 19, 2021) ....................................................... 22

*Thyroff v. Nationwide Mut. Ins.*,
    460 F.3d 400 (2d Cir. 2006) .................................................................................................... 19

*Tropical Sails Corp. v Yext, Inc.*,
    2015 U.S. Dist. LEXIS 64722 (S.D.N.Y. May 18, 2015) ....................................................... 24

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ...................................................................................................... 9

*United States v Turkette*,
    452 U.S. 576 (1981) ................................................................................................................. 15

*Valenti v. Penn Mutual Life Insur.*,
    850 F. Supp. 2d 445 (S.D.N.Y. 2012) ..................................................................................... 18

*W. Energy Opportunities II, LLC v Finalis Sec., LLC*,
    No. 24-cv-2565, 2025 U.S. Dist. LEXIS 56773 (S.D.N.Y. Mar. 26, 2025) ........................... 14

*Wade Park Land Holdings, LLC v Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022) ..................................................................................... 15

*Weinreb v. 37 Apartments Corp.*,
    97 A.D.3d 54 (1st Dept. 2012) ................................................................................................ 22

v

337309139v.6

*Zamora v. Fit Int'l Grp. Inc.*,
   834 Fed. Appx. 622 (2d Cir. 2020) ................................................................................... 24

*Zebra Strategies, Inc. v Gonzalez-Nazario*,
   764 F. Supp. 3d 144 (S.D.N.Y. 2025) ........................................................................... 19, 20

*Zottola v. Eisai Inc.*,
   564 F. Supp. 3d 302 (S.D.N.Y. Sept. 29, 2021) .................................................................. 7

**Statutes**

18 U.S.C. §1961(4) ................................................................................................................ 14

18 U.S.C. § 1962 ..................................................................................................................... 9

18 U.S.C. § 1962(c) ............................................................................................................. 9, 18

18 U.S.C. § 1962(d) .............................................................................................................. 18

18 U.S.C. § 1962(d)(a) ......................................................................................................... 18

18 U.S.C. § 1962(d)(b) ......................................................................................................... 18

28 U.S.C. § 1367 ..................................................................................................................... 1

N.Y. Bus. Corp. Law § 701 .................................................................................................... 8

Racketeer Influenced and Corrupt Organizations Act ("RICO") ... 1, 3, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19

**Rules**

Federal Rule of Civil Procedure 9(b) ......................................... 2, 7, 9, 10, 12, 13, 21, 25, 26, 27

Federal Rule of Civil Procedure Rule 12(b)(1) ................................................................. 1, 4, 28

Federal Rule of Civil Procedure Rule 12(b)(6) .............................................................. 1, 3, 7, 28

Federal Rule of Civil Procedure Rule 17(b) ........................................................................... 8

N.Y. C.P.L.R. 3016 ............................................................................................................... 27

337309139v.6

## PRELIMINARY STATEMENT

Defendants Jaswinder Pal Singh ("Singh") and George Goldenberg ("Goldenberg") (collectively, the "Moving Defendants") respectfully submit this memorandum of law in further support of their motion to dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

This action is not a legitimate RICO case, which is the sole basis for this Court's jurisdiction.[1]  Rather, it is a transparent attempt by P180's leadership to evade the company's substantial financial obligations to the bankruptcy estate of CaaStle, Inc.  According to the Chapter 7 bankruptcy trustee, P180 owes CaaStle approximately $11.2 million.  Far from being a victim of Defendant Christine Hunsicker's ("Hunsicker") alleged fraud, P180 is a direct beneficiary.  The company's very existence was funded by capital it obtained from CaaStle.  It used those resources to acquire meaningful stakes in several companies, including a controlling stake in Vince Holding Corp., a publicly traded company (NYSE:VNCE) whose shares have since substantially appreciated in value.  Rather than honor its legitimate debt obligations, P180 now seeks to avoid them by baselessly characterizing the Moving Defendants as parties to Hunsicker's fraud.  However, the fact that the criminal proceedings were directed solely at Hunsicker confirms that the Moving Defendants were not participants in any of her wrongdoing.  They are simply targets of convenience, named in this action based solely on their roles as directors and/or officers of CaaStle, not because of anything either actually did.

---

[1] Because they are the sole basis for jurisdiction, dismissal of Plaintiff's RICO claims carries significant jurisdictional consequences.  Plaintiff's state-law claims are before this Court only through supplemental jurisdiction under 28 U.S.C. § 1367.  (*See* Doc. No. 84, ¶¶ 12-13).  As the Supreme Court recently confirmed, "[w]ith the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).  Accordingly, dismissal of the RICO claims will divest this Court of jurisdiction over this matter entirely.

1

Singh had absolutely no involvement with P180 at any time.  He was never a director, officer, agent, or fiduciary of P180.  He left the CaaStle board in December 2017 and was not a director, officer, or employee of CaaStle during the relevant period.  Singh was not even aware of P180 when it was formed.  He rejoined the CaaStle board only in December 2024—after Hunsicker's alleged conduct had been disclosed, though before the full extent was known—solely to assist with the company's transition.  Singh had no role in negotiating any transactions between CaaStle and P180, no role in approving any fund transfers, and no involvement in any of the conduct that forms the basis of Plaintiff's claims.  Accordingly, the Amended Complaint does not identify a single false statement made by Singh to P180, let alone plead facts establishing scienter, reliance, or causation.  Plaintiff's attempt to impute liability to Singh based solely on his historical status as a co-founder of CaaStle, or his receipt of a CaaStle share redemption at prices Plaintiff mischaracterizes (which occurred before Singh returned to CaaStle's board and has nothing to do with P180), is not a substitute for the particularized allegations that Rule 9(b) demands.

The allegations against Goldenberg fare no better.  Stripped of rhetorical flourish, the Amended Complaint alleges that Goldenberg participated in board discussions, negotiated a loan from CaaStle to P180, and somehow facilitated fund transfers (though P180 does not specify how he did so, and Goldenberg did not participate in the approvals of the alleged transactions or even know of them).  In other words, P180 alleged only that Goldenberg engaged in routine corporate transactions in his capacity as a director and officer.  These were legitimate business activities. P180 was repaying its debt to CaaStle and paying fees owed under a shared services arrangement pursuant to which CaaStle outsourced P180's corporate functions.  Such conduct does not constitute fraud.  It describes ordinary, arm's-length transactions protected by the business judgment rule.  The Amended Complaint does not identify any knowingly false statement by

2

Goldenberg, does not allege he received any misappropriated funds, and cannot turn his handling of ordinary business transactions into fraud merely by labeling them part of a "conspiracy."

Thus, the narrative upon which P180's claims depend is simply false, and P180 must impermissibly lump all Defendants together hoping Hunsicker's conduct might be imputed to them.  For that reason alone, each of Plaintiff's claims fails as a matter of law, though that is far from the only deficiency in Plaintiff's claims.   Among other things, Plaintiff's RICO claims (Counts I and II) fail because the Amended Complaint does not plead with the required particularity any predicate acts personally committed by the Moving Defendants, does not adequately allege a RICO enterprise, and cannot establish the requisite agreement for a RICO conspiracy.  Plaintiff's conversion claim (Count III) fails because the Amended Complaint does not allege the Moving Defendants exercised unauthorized dominion or control over P180's funds.  Plaintiff's breach of fiduciary duty claim (Count V) fails because the Amended Complaint does not plead misconduct by Goldenberg beyond conclusory allegations, and his actions as a director are protected by the business judgment rule.  Plaintiff's fraud theories (Count VI) fail because the supposed fraud is not pled with particularity, including any specific actionable misstatement or omission by either Moving Defendant, nor does Plaintiff plausibly allege scienter, justifiable reliance, or proximate causation.  Plaintiff's aiding and abetting claims (Counts VII and VIII) fail because Plaintiff does not adequately allege an underlying fraud or breach of duty, actual knowledge, or substantial assistance by either Moving Defendant.   Plaintiff's negligent misrepresentation claim (Count IX) fails because it lacks the requisite particularity and does not plead a "special or privity like relationship."

For these reasons, which are set forth in greater detail below, the Court must dismiss this action, in its entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

3

Additionally, as discussed below, because the Amended Complaint is devoid of any allegation that this lawsuit was duly authorized by P180's board of directors, this matter should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## FACTUAL BACKGROUND

CaaStle, Inc., a Delaware corporation founded in 2011 by Hunsicker and Singh and headquartered in New York, is a fashion-technology company that provided a "clothing-as-a-service" platform, offering subscription-rental and reverse-logistics solutions to allow apparel brands to monetize inventory through recurring shipments to consumers. Hunsicker served as Chief Executive Officer and director. Singh left CaaStle's board in December 2017 and had no active involvement with the company until returning as a director in December 2024.

Plaintiff P180, Inc., also a Delaware corporation headquartered in New York, was founded in February 2024 by "veteran apparel executive" Brendan Hoffman. In P180's own words, it was created "with the goal of investing in premier apparel brands and utilizing CaaStle's technology around yield-optimization to make the businesses more profitable[,]" including improving brands' margins of discounted merchandise. Hoffman owned seventy-five (75%) percent of P180, while CaaStle owned twenty-five (25%) percent of the company. Hunsicker served as P180's CEO and board chair while Goldenberg nominally served as a director, solely in his capacity as a CaaStle COO. Singh was never a director, officer, agent, or fiduciary of P180, and never had any relationship with P180 whatsoever.

During the course of its partnership with CaaStle, P180 made substantial investments into apparel brands Elyse Walker, Altuzarra, and Vince, ultimately taking a controlling share of the latter.[2] Those investments were primarily funded through loans from CaaStle, which P180 was

---

[2] The Vince acquisition provided Hoffman with his current job as Vince CEO.

4

337309139v.6

supposed to repay as it raised capital.  Additionally, P180 paid CaaStle a fee for necessary services it was provided.  The allegedly fraudulent transfers at issue in this action concern payments by P180 either for loans from CaaStle or for those shared services fees—that is, legitimate debt repayments and contractual obligations, not unauthorized diversions.  Singh had no role whatsoever in directing, approving, or facilitating any of those payments.  To the extent Goldenberg had any involvement in these transactions, it was solely to facilitate routine payments.

Although Plaintiff knows all of this, it nonetheless seeks to hold the Moving Defendants liable for the fraud that P180 alleges was orchestrated by Hunsicker through CaaStle.  (*See generally* Doc. No. 84).  To that end, the Amended Complaint attempts to paint what P180 characterizes as a "sprawling fraud driven by a fake-it-'til-you make it mentality," alleging that Hunsicker orchestrated a years-long conspiracy—dubbed the "Hunsicker Enterprise"—to defraud P180 out of millions while concealing massive financial fraud at CaaStle.  (*Id.*, ¶¶ 1, 9).  However, P180 never explains how it was a victim of Hunsicker's fraud when, in truth, it was a beneficiary—taking millions from CaaStle in loans.[3]

Notwithstanding, the Amended Complaint asserts that Hunsicker falsely portrayed CaaStle as a thriving, cash-rich technology platform with hundreds of thousands of subscribers and hundreds of millions in revenue.  Allegedly relying on these representations, Hoffman formed P180 in early 2024 to acquire and rehabilitate fashion brands using CaaStle's e-commerce infrastructure.  Hoffman—who is reported to have been fired from several prior roles as a CEO in the fashion industry—purportedly had a "Money Ball" realization that "apparel brands and stores were losing significant value by focusing sell-through of full-price items while leaving discounted

---

[3] Much of that money was used by P180 to acquire a controlling stake in Vince, a publicly traded company whose shares have since appreciated substantially in value.

5

items as an afterthought." (*Id.*, ¶ 123). Hoffman believed he "could drive meaningful profitability back to apparel brands and stores and regain historical levels of valuations." (*Id.*).

P180 alleges that, after its formation, Hunsicker siphoned P180's funds to prop up CaaStle, induced P180 to assume supposedly "ill-advised" debts (which, in fact, proved quite beneficial to P180), transferred P180's cash to CaaStle under the guise of intercompany loans, and attempted to force a merger that would bury CaaStle's liabilities inside P180. These actions were allegedly part of a coordinated scheme of fraud and self-dealing, in which Hunsicker misrepresented CaaStle's financial health, subscriber base, and technological capabilities to P180's leadership and investors, concealing the company's dire financial condition and lack of viable business operations. Notably, however, the Amended Complaint does not identify a single false statement made by Singh or Goldenberg, or that either personally received any misappropriated P180 funds.

P180 claims that, relying on Hunsicker's false representations, it participated in a series of transactions—including the acquisition of interests in the aforementioned brands—believing it would benefit from CaaStle's technology. P180 asserts that CaaStle allegedly had only a fraction of the claimed subscribers and negligible revenues, and its technology was not scalable as promised. Additionally, the Amended Complaint discusses purportedly unauthorized transfers from P180's bank accounts, including several million dollars wired to CaaStle, allegedly without proper authorization or documentation. P180 claims these transfers were designed to siphon funds to cover CaaStle's losses and maintain the appearance of solvency. However, the Amended Complaint itself acknowledges that P180 received substantial funds from CaaStle and entered into loan arrangements with CaaStle.[4] (Doc. No. 84, ¶¶ 261, 264). Parsing through Plaintiff's rhetoric,

---

[4] P180 further alleges that Hunsicker attempted to force a merger between P180 and CaaStle, with the intent to shift CaaStle's mounting liabilities onto P180 and obscure the ongoing fraud. In truth, P180's CEO, Brendan Hoffman, also represented to investors that he wanted to pursue a merger, and even negotiated potential terms where he would

6

the truth remains clear: to the extent Goldenberg had any involvement in the transactions at issue, he was simply following Hunsicker's seemingly legitimate decisions.  Singh, again, had nothing to do with P180 or the alleged transactions.

On July 18, 2025, the United States Department of Justice announced that a grand jury in the Southern District of New York returned an indictment charging Hunsicker—and Hunsicker alone—with wire fraud, bank fraud, and securities fraud.  On March 4, 2026, Hunsicker pled guilty and agreed to forfeit nearly three hundred million dollars.  To date, Hunsicker has not been sentenced.  Critically, no criminal charges have been filed against any other individual, including either Moving Defendant.  The fact that Hunsicker alone was charged and pled guilty establishes that she was the sole participant in the alleged scheme.  The Moving Defendants had no role, and are named in this civil action as scapegoats that Plaintiff hopes will help avoid its debt to CaaStle.

## LEGAL ARGUMENTS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the "'legal feasibility' of a complaint."  *Goel v. Bunge, Ltd.,* 820 F. 3d 554, 558 (2d Cir. 2016).  To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hughes v. NFL*, No. 22-cv-10743 (JLR), 2024 U.S. Dist. LEXIS 160067, at *8 (S.D.N.Y. Sept. 5, 2025).  Further, where a complaint alleges fraud—as Plaintiff does here in Counts I, II, VI, VII, and IX—the heightened pleading standard of Rule 9(b) applies. *See* Fed. R. Civ. P. 9(b).  Plaintiff must plead each claim sounding in fraud with "particularity," including the "who, what, when, where, and how of the fraud."  *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 316 (S.D.N.Y. Sept. 29, 2021).

---

become a major shareholder and the CEO of the merged entity.  Regardless, that merger was never consummated and is, therefore, irrelevant.

337309139v.6

In deciding whether Plaintiff meets either the general Fed. R. Civ. P. 12(b)(6) standard or Rule 9(b)'s particularity standard, the Court may consider the well-pleaded, non-conclusory factual allegations in the complaint, materials referenced in the complaint, and matters subject to judicial notice. *See, e.g., Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.,* 206 F. Supp. 3d 869, 886 (S.D.N.Y. Sept. 9, 2016). The allegations must put a defendant on notice of the nature of a plaintiff's claims. *See McCrae v. Trans Union LLC,* No. 23-cv-07971 (JLR), 2024 U.S. Dist. LEXIS 78935, at *2 (S.D.N.Y. Apr. 29, 2024) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## POINT I
## PLAINTIFF LACKS STANDING

As an initial matter, P180 has not demonstrated that it has standing. Rule 17(b) of the Federal Rules of Civil Procedure provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed. R. Civ. P. 17(b). In New York, the business of a corporation is managed by its board of directors. *See Knox v. Zarzeski*, 2006 U.S. Dist. LEXIS 117784, at *17 (S.D.N.Y. July 11, 2006). "Decisions to initiate litigation are among the matters that are within the discretion and control of a corporation's board of directors and, thus, a complaint may not be filed in the name of the corporation without proper authorization." *Id.* (internal citation omitted).

The Amended Complaint fails to allege any facts demonstrating that P180's board authorized the commencement of this action. Indeed, the Amended Complaint acknowledges that during much of the relevant period, Hoffman was the only non-conflicted director of P180. (Doc. No. 84, ¶¶ 8, 145). While the Amended Complaint references the addition of independent directors to P180's board after Hunsicker and Goldenberg's departure, *see id.* at ¶ 274, it never alleges that the reconstituted board adopted a resolution authorizing this lawsuit or that Hoffman had the

8

authority to initiate litigation on behalf of P180 in his individual capacity.  Because the Amended

Complaint fails to establish that this action was properly authorized, it must be dismissed.

**POINT II**
**PLAINTIFF FAILS TO PLEAD A VIOLATION OF**
**18 U.S.C. § 1962(c) (COUNT I)**

Courts have repeatedly cautioned that the use of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") by civil plaintiffs is a "thermonuclear device" and that "courts should

strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Katzman v.*

*Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229.  Here,

Plaintiff asserts exactly this sort of frivolous civil RICO claims against the Moving Defendants,

predicated on supposed acts of wire fraud, bank fraud, and money laundering in furtherance of a

convoluted, and ultimately unsuccessful, scheme to gain control of P180's money and assets.

Under 18 U.S.C. § 1962(c) ("Section (c)") of RICO, it is unlawful "'for any person

employed by or associated with any enterprise engaged in, or the activities which affect, interstate

or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'"

*Carlin v. United Healthcare Ins. Co. of N.Y., Inc.*, No. 24-CV-8435, 2025 U.S. Dist. LEXIS

172373, at *1 (S.D.N.Y. Sept. 4, 2025) (quoting 18 U.S.C. § 1962(c)).  Therefore, a plaintiff "must

show (1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or

property, and (3) that such injury was by reason of the substantive RICO violation."  *Id.* (citing *In*

*re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013)).

To satisfy the first prong of a *prima facie* Section (c) claim, a plaintiff must show that a

defendant conducted, or participated in the conduct of, a RICO enterprise's affairs through two

predicate acts of racketeering within ten years, which include wire or mail fraud as Plaintiff alleges

here.  *See Crawford v. Franklin Credit Mgmt.,* 758 F.3d 473, 487 (2d Cir. 2014).  Allegations of

9

337309139v.6

fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) which require that a plaintiff state with particularity the circumstances constituting fraud or mistake. *Carlin,* 2025 U.S. Dist. LEXIS 172373, at *15.[5]

As discussed in greater detail below, Plaintiff's Section (c) claim must be dismissed because the Amended Complaint does not adequately plead either predicate acts by the Moving Defendants establishing a pattern of racketeering activity or a RICO enterprise.  Furthermore, even if Plaintiff could establish predicate acts and an enterprise, the claim must be dismissed because the Amended Complaint fails to adequately allege that P180's purported injuries were proximately caused by the Moving Defendants' alleged racketeering activity.

### A.    Plaintiff fails to plead with particularity any predicate acts by the Moving Defendants.

Plaintiff's Amended Complaint does not satisfy the requirement of Fed. R. Civ. P. 9(b) that allegations of fraud, including RICO wire fraud, be stated with particularity.  As this Court has recognized, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Sanchez v. ASA College, Inc.,* No. 14-CV-5006 (JMF), 2015 U.S. Dist. LEXIS 73222, at *5 (S.D.N.Y. June 5, 2015).

Courts in this Circuit have recognized that while Rule 9(b) "does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity," the rule nonetheless requires "that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145-46

---

[5] *See also Santana v. Adler,* No. 17-cv-06147 (AT)(SDA), 2018 U.S. Dist. LEXIS 51401, at *6-7 (S.D.N.Y. Mar. 26, 2018), *report and recommendation adopted*, No. 17 Civ. 6147 (AT)(SDA), 2018 U.S. Dist. LEXIS 79279, at *1 (S.D.N.Y. May 10, 2018).

337309139v.6

(S.D.N.Y. 2014). However, where multiple defendants are alleged to have participated in predicate acts of mail or wire fraud, "'the plaintiff must particularize and prove each defendant's participation in the fraud' as well as each defendant's involvement in the two necessary predicate acts." *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724, 2020 U.S. Dist. LEXIS 257621, at \*8 (E.D.N.Y. June 28, 2020) (quoting *NY State Catholic Health Plan, Inc. v Academy O & P Assoc.*, 312 FRD 278, 299 (EDNY 2015)). Thus, to adequately plead RICO predicate acts, a plaintiff must (1) describe the alleged fraudulent scheme with particularity, and (2) allege facts showing that each defendant had knowledge of, and participated in, that scheme. *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 126 (S.D.N.Y. 2023). Plaintiff's Amended Complaint fails to satisfy either requirement as to the Moving Defendants.

This Court routinely grants motions to dismiss RICO claims where a complaint can only allege fraudulent conduct by referring to "defendants" generically, as is the case here. *See, e.g., Carlin*, 2025 U.S. Dist. LEXIS 172373, at \*1.[6] As the court explained in *Bayshore*, "'[m]erely pleading a close relationship with another entity that is alleged to have made particular misleading statements is insufficient' to state a RICO claim based on fraud." 667 F. Supp. 3d at 129 (quoting *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998)). Plaintiff does not identify any specific instance where the Moving Defendants personally communicated fraudulent misrepresentations to Plaintiff. Instead, Plaintiff makes only vague allegations that "Defendants" "repeatedly committed [] offenses as part of concerted efforts to perpetuate and avoid disclosure of their fraud elsewhere and to use P180 for their own personal financial gain." (Doc. No. 84, ¶ 305).

---

[6] *See also Santana*, 2018 U.S. Dist. LEXIS 51401, at \*6-7.

11

337309139v.6

While Plaintiff does refer to some alleged communications or actions by Defendant Hunsicker, the Amended Complaint is devoid of any similar allegations concerning the Moving Defendants.  For example, the Amended Complaint asserts that "Hunsicker is the lynchpin of the association, but is not solely responsible for its operation and management, *and others may be involved as well*, including *on information and belief* other CaaStle board members."  (Doc. No. 84, ¶ 302).  Such speculative, "on information and belief" allegations are "woefully insufficient" to satisfy Rule 9(b).  *See Bayshore*, 667 F. Supp. 3d at 126-27 ("while Rule 9(b) does not require that knowledge be pled with the same particularity as the elements of the alleged fraud, courts in this Circuit have held that simple assertions of knowledge are insufficient") (quoting *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 621 (S.D.N.Y. 1990)).

Regarding Singh, the Amended Complaint relies almost entirely on his status as a CaaStle co-founder and former board member to impute participation in the alleged fraud.  Plaintiff points to Singh's "access to complete information about CaaStle's business" and his alleged personal relationship with Hunsicker, but access to information and personal associations are not predicate acts of racketeering. (Doc. No. 84, ¶¶ 61-71).  *See, e.g., Bayshore*, 667 F. Supp. 3d at 129 ("Absent more, the Amended Complaint's descriptions of business relationships cannot constitute intentional participation in a fraud.").  Critically, Singh was never affiliated with P180 in any capacity—he was not a director, officer, agent, or fiduciary of P180, and never had any relationship with P180 whatsoever.  Singh also resigned from CaaStle's board in December 2017 and was not even a CaaStle director or officer during the relevant period.  He rejoined the CaaStle board only in December 2024—after Hunsicker's fraud had been disclosed but before the full measure of it was known—solely to assist with the company's transition.  The Amended Complaint does not identify a single specific fraudulent statement that Singh made to P180 or on which P180 relied.

12

Nor does it plead facts from which the Court could infer Singh had actual knowledge of the alleged scheme or that he participated in it. *See Bayshore*, 667 F. Supp. 3d at 127 (holding that allegations did not "suggest any basis for inferring that [defendant] knew the statements were false or was seeking to defraud Plaintiffs"). These deficiencies are fatal to the RICO claim against Singh.

As for Goldenberg, the Amended Complaint fares no better. Plaintiff alleges that Goldenberg "knowingly articulated false information regarding value-add of CaaStle's capabilities, ecosystem, and scale" at meetings in September 2024 and that he "kept tight control of financial information." (Doc. No. 84, ¶¶ 133, 145(a)). But the Amended Complaint fails to specify what statements Goldenberg made, what he said that was false, why those statements were fraudulent, or how they constituted predicate acts for a RICO violation. Rather, many of the cited instances involve statements by others "in [Goldenberg's] presence" or statements he "failed to correct" (Doc. No. 84, ¶¶ 135, 138)—which do not constitute the affirmative acts required for a RICO predicate. Moreover, to the extent the Amended Complaint alleges Goldenberg participated in board discussions, negotiations concerning P180's loans, or facilitated fund transfers, these merely describe his duties as a corporate director and officer—that was literally his job, not evidence of some conspiracy. Plaintiff also does not allege facts showing how Goldenberg knew any statements by Hunsicker were false—an essential element of the claim. *See, e.g., Bayshore Capital Advisors*, 667 F Supp 3d at 126 ("Even taking Plaintiffs allegations as true, Plaintiffs do not allege in the Amended Complaint that the … Defendants knew or were otherwise informed that many of their statements were false.")

Thus, Plaintiff's bare, conclusory allegations offer no concrete facts demonstrating the Moving Defendants' participation in or knowledge of the claimed fraudulent acts. *See, e.g., Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("To satisfy [Rule 9(b)], a complaint

13

must 'specify the time, place, speaker, and content of the alleged misrepresentations,' [and] 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).  Plaintiff has therefore not met the requirements to establish predicate acts by the Moving Defendants.

### B.      Plaintiff fails to adequately plead a RICO "enterprise."

Plaintiff's Section (c) claim should also be dismissed because the Amended Complaint fails to adequately plead an "association-in-fact" RICO enterprise involving the Moving Defendants. *See W. Energy Opportunities II, LLC v Finalis Sec., LLC*, No. 24-cv-2565, 2025 U.S. Dist. LEXIS 56773, at *14-15 (S.D.N.Y. Mar. 26, 2025) ("The key to a successful RICO claim is demonstrating the existence of an enterprise. "); *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) ("The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one.") (citation omitted)).

"A RICO 'enterprise' is defined as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'"  *Id.* (quoting 18 U.S.C. §1961(4)).  "To constitute an enterprise, the 'association of individuals' must share a common goal of perpetuating fraudulent conduct in which they 'work together to achieve such purposes.'" *Id,* (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)).   "Plaintiffs must demonstrate three structural features: (1) a purpose, (2) relationships among members of the enterprise, and (3) longevity sufficient to permit them to pursue the enterprise's purpose." *Id.*.[7]  "When determining if a plaintiff has sufficiently alleged an

---

[7] *See also Black*, 619 F. Supp. 3d at 330 (An association-in-fact RICO enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." (internal quotation marks omitted)).

14

association-in-fact RICO enterprise, courts will 'analyze the hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit.'" *Id.* (quoting *BWP Media USA, Inc.*, 69 F. Supp. 3d at 360).

Applying these standards, Courts routinely dismiss alleged RICO claims where, as here, "Plaintiffs have failed to provide any information whatsoever regarding the Defendants' respective roles in the enterprise" and where "[e]ach allegation of purported conduct set out in the complaint is attributed to 'Defendants' as a group." *BWP Media USA*, 69 F Supp 3d at 360.[8] Here, Plaintiff states only that "[t]he 'Hunsicker Enterprise' was a group of individuals associated in fact centered around Christine Hunsicker and her various fraudulent business ventures" and that "each of the Defendants worked together toward the common purpose of lying to maximize the wealth of the Hunsicker Enterprise and evade discovery of the fraud, as well as to distribute ill-gotten funds to members of the enterprise to secure their ongoing loyalty and silence." (Doc. No. 84, ¶¶ 300-301). These vague and conclusory allegations reveal nothing about the "hierarchy, organization, and activities of the alleged association." *BWP Media USA*, 69 F. Supp. 3d at 360 (quoting *Cont. Petroleum Corp. v Corp. Funding Partners, LLC*, 2012 U.S. Dist. LEXIS 51841, at \*14 (S.D.N.Y. Apr. 11, 2012).

Furthermore, the Amended Complaint fails to allege that the purported enterprise was independent from the alleged fraud. A plaintiff asserting a RICO claim based on an association-in-fact enterprise must demonstrate that the enterprise exists "separate and apart from the pattern of activity in which it engages." *Belen v Herman*, 2024 U.S. Dist. LEXIS 8543, at \*13 (S.D.N.Y.

---

[8] *See also Wade Park Land Holdings, LLC v Kalikow*, 589 F. Supp. 3d 335, 375 (S.D.N.Y. 2022) ("Plaintiffs claim that they allege each defendant's role in the enterprise, but the allegations to which they point merely describe separate actions involving various pairs of defendants." (citation omitted)); *First Nationwide Bank v Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) ("Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the Amended Complaint.").

15

Jan. 17, 2024) (quoting *United States v Turkette*, 452 U.S. 576, 583 (1981)).  Here, the only "enterprise" alleged is the commission of the very fraud of which Plaintiff complains—the so-called "Hunsicker Enterprise" is defined solely by reference to the alleged predicate acts, not by any ongoing organizational structure independent of those acts.

Accordingly, Plaintiff offers nothing more than "Hunsicker, Singh, Goldenberg, Jain, Corlito, and Callon have long been associated" and that "[t]wo or more of them have been involved in multiple ventures across the last twenty years."  (Doc. No. 84, ¶ 302).  Of course, Plaintiff does not reveal which two, or what ventures, nor does it claim those ventures had any nefarious purpose. Plaintiff also does not describe any of the Defendant's "respective roles in the enterprise."  *BWP Media USA*, 69 F Supp 3d at 360.[9]  Plaintiff merely notes a few ordinary business meetings that Goldenberg attended.  There is no allegation that Singh did anything at all.  As a result, Plaintiff cannot establish a RICO enterprise.

### C.    Plaintiff fails to allege proximate causation.

Even assuming *arguendo* that Plaintiff could adequately plead predicate acts and an enterprise, its Section (c) claim must be dismissed because the Amended Complaint fails to allege that P180's purported injuries were proximately caused by the Moving Defendants' alleged racketeering activity.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  "Proximate cause for RICO purposes … requires 'some direct relation between the injury asserted and the injurious conduct alleged.'"

---

[9] *See also Carlin*, 2025 U.S. Dist. LEXIS 172373, at *17 ("[A] plaintiff may not rely solely upon defendants' 'positions of control' in an enterprise, and may not link individual defendants to fraudulent activities 'by stating only that [d]efendants were officers and shareholders' of the organization." (quoting *Productores Asociados de Cafe Rio v Moreno*, No. 98 Civ. 499 (DAB), 1999 U.S. Dist. LEXIS 6627, at *10 (S.D.N.Y. May 5, 1999)).

16

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Here, Plaintiff's theory of causation is too attenuated to state a viable RICO claim. Plaintiff's alleged injuries—loans received from CaaStle and payments made for those loans and necessary services—flow not from any conduct by the Moving Defendants, but from P180's own voluntary business decisions and Hunsicker's alleged fraud. As the Amended Complaint acknowledges, it was Hunsicker who orchestrated the alleged scheme, made the alleged misrepresentations, and controlled the purported enterprise. (*See* Doc. No. 84, ¶ 302 (identifying Hunsicker as the "lynchpin" of the supposed enterprise)). The Moving Defendants are, at most, alleged to have been associated with Hunsicker or, in Goldenberg's case, to have facilitated routine corporate transactions by P180. This is conduct that is several steps removed from any of P180's claimed injuries. *See Holmes*, 503 U.S. at 271 ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step." (quoting *Associated Gen. Contrs. v California State Council of Carpenters*, 459 U.S. 519, 534 (1983))).

Additionally, any injuries that P180 allegedly suffered from loans it received from CaaStle are not cognizable RICO injuries because P180 was a direct beneficiary—not a victim—of the alleged scheme. P180 received millions in funding from CaaStle, which it used to acquire valuable assets, including a controlling stake in Vince, whose shares have since increased in value. The notion that P180 was injured "by reason of" the Moving Defendants' alleged conduct is belied by the undisputed fact that P180 profited substantially from its relationship with CaaStle. *See First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 92-94 (S.D.N.Y. 1993) (dismissing RICO claim where plaintiff could not establish actual injury from the alleged fraud).

For these reasons, Plaintiff has failed to plausibly allege either predicate acts by the Moving Defendants, an association-in-fact RICO enterprise, or proximate cause.  Plaintiff's Section (c) claim (Count I) must therefore be dismissed.

### POINT III
### PLAINTIFF FAILS TO PLEAD A CLAIM OF RICO CONSPIRACY
### UNDER 18 U.S.C. § 1962(D) (COUNT II)

Pursuant to 18 U.S.C. § 1962(d) ("Section (d)"), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  "To establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity."  *Cont. Petroleum Corp.*, 2012 U.S. Dist. LEXIS 51841, at *23 (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003)).  "To satisfy this standard, plaintiffs must establish 'as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same.'"  *Id.* (quoting *Valenti v. Penn Mutual Life Insur.*, 850 F. Supp. 2d 445, 450 (S.D.N.Y. 2012)).

"Where a complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." *BWP*, 69 F. Supp. 3d at 363.[10]  Since Plaintiff fails to allege a substantive RICO claim against the Moving Defendants, its RICO conspiracy claim should also be dismissed.  Moreover, even if Plaintiff sufficiently pled a substantive Section (c) claim, its Section (d) claim cannot survive.  To allege conspiracy under Section (d), "a plaintiff must allege that the defendant participated in 'an agreement to violate RICO's substantive

---

[10] *See also Reich v Lopez*, 38 F Supp 3d 436, 453 (S.D.N.Y. 2014) ("As Plaintiffs have not adequately pleaded a substantive RICO violation, their conspiracy claim under 18 U.S.C. § 1962(d) is also dismissed.");  *First Capital*, 385 F.3d at 182 (finding no violation of § 1962(d) because plaintiffs "did not adequately allege a substantive violation of RICO" under § 1962(c));  *Purgess v Sharrock*, 806 F Supp 1102, 1110 n.9 (S.D.N.Y. 1992) ("Dismissal of plaintiff's substantive RICO claim (Count 4) mandates dismissal of the conspiracy to commit RICO claim (Count 5) as well.").

337309139v.6

provisions.'" *Carlin*, 2025 U.S. Dist. LEXIS 172373, at *14 (citation omitted).  Plaintiff has failed

to allege any agreement by the Moving Defendants to associate themselves in a RICO enterprise

or that they agreed to commit two or more predicate acts.  Plaintiff only vaguely asserts that

Defendants "conspired, aided, and abetted each other, as the Hunsicker Enterprise, in the

commission of multiple offenses in violation of RICO as part of a scheme to defraud P180 and its

investors." (Doc. No. 84, ¶ 323).  These conclusory allegations are insufficient to plead a RICO

conspiracy claim.  *See, e.g., Crawford*, 758 F.3d at 489 (upholding dismissal of Section (d) claim

where plaintiff "presented no evidence of any agreement by Defendants to engage in conduct of

the type that would be sufficient to constitute a pattern of racketeering activity").

For these reasons, Plaintiff has failed to plausibly allege a RICO conspiracy.  Accordingly,

Plaintiff's Section (d) claim (Count II) must be dismissed.

<u>**POINT IV**</u>
<u>**PLAINTIFF FAILS TO STATE A CLAIM**</u>
<u>**FOR CONVERSION (COUNT III)**</u>

Count III of Plaintiff's Amended Complaint purports to assert a common law claim against

the Moving Defendants for conversion but is unable to demonstrate the requisite *prima facie*

elements.  Under New York law, "'[c]onversion is the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights.'  This

includes a 'denial or violation of the plaintiff's dominion, rights, or possession' over her property.

<u>It also requires that the defendant exclude the owner from exercising her rights over the goods.</u>

*Zebra Strategies, Inc. v Gonzalez-Nazario*, 764 F. Supp. 3d 144, 160 (S.D.N.Y. 2025) (quoting

*Thyroff v. Nationwide Mut. Ins.*, 460 F.3d 400, 403-04 (2d Cir. 2006)) (emphasis in original).[11]  A

---

[11] *See also Morgulis v Bus Patrol Am., LLC*, 2024 U.S. Dist. LEXIS 136982, at *20 (S.D.N.Y. Aug. 1, 2024) ("In order to establish a claim for conversion, the plaintiff must show (1) 'plaintiff's possessory right or interest in the property' and (2) 'defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.'" (quoting *Colavito v NY Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006)).

337309139v.6

"threadbare recital of the elements of a conversion claim, without any accompanying factual basis, is woefully insufficient to survive a motion to dismiss." *Id.* at *21.

As an initial matter, the Amended Complaint is vague as to any specific allegation that *either* Moving Defendant personally excluded P180 from exercising its rights over the money in question. Plaintiff only vaguely states that "Defendants" collectively "had no right to [make the transactions]." (Doc. No. 84, ¶¶ 149, 250, 318). As to Goldenberg, the only allegation is the conclusory statement that he was "aware of and/or facilitated" the alleged transfers. (Doc. No. 84, ¶¶ 145, 318). Conclusory allegations that a defendant was merely "aware of" transfers, without specific facts showing that defendant personally "exercised control" over plaintiff's property, are legally insufficient. *See Zebra Strategies*, 764 F. Supp. 3d at 160. Moreover, even if the Amended Complaint alleged Goldenberg "facilitated" certain fund transfers, facilitating a transaction as part of his corporate duties does not constitute conversion. The Amended Complaint does not allege Goldenberg personally took any P180 funds for himself, directed funds to his own accounts, or acted outside the scope of his corporate duties.

As to Singh, the conversion claim fails for an even more fundamental reason: the Amended Complaint is devoid of any allegation that Singh was personally involved in, or had any connection to, the alleged bank transfers. Singh had no involvement with P180. He was never a director, officer, employee, agent, or fiduciary of the company. (Doc. No. 84, ¶¶ 17-19). He had no authority over P180's bank accounts, no role in approving any fund transfers, and no involvement in any of the at-issue transactions. Indeed, the Amended Complaint does not allege Singh even knew about, let alone authorized, any wire transfers.

For these reasons, the Amended Complaint fails to show that the Moving Defendants alienated Plaintiff from control over any monetary amount or personally exercised unauthorized

20

337309139v.6

dominion over any funds to which P180 rightfully had access.  Accordingly, Plaintiff's conversion claim must be dismissed.

**POINT V**
**PLAINTIFF FAILS TO STATE A CLAIM FOR**
**BREACH OF FIDUCIARY DUTY (COUNT V)**

Plaintiff cannot state a claim of a breach of fiduciary duty against Goldenberg because the Amended Complaint is devoid of any actual allegation of misconduct on his part, and his alleged facilitation of ordinary business transactions is protected under the business judgment rule.

"'The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Rohe v. Bertine, Hufnagel, Headley, Zeltner,* Dru, 160 F. Supp. 542, 548 (S.D.N.Y. Feb. 1, 2016).  Plaintiff's vague and conclusory assertion that Goldenberg "conspired to force P180 to engage in transactions" (Doc. No. 84, ¶ 345(a)) does not even come close to alleging the requisite elements of a breach of fiduciary duty claim. *See, e.g., Orlando v Nxt-ID Inc.*, No. 20-cv-1604, 2022 U.S. Dist. LEXIS 60682, at *25 (S.D.N.Y. Mar. 31, 2022) (dismissing breach of fiduciary duty claim based on conclusory allegations of wrongdoing by corporate director); *CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*, 2007 U.S. Dist. LEXIS 74723, at *11 (S.D.N.Y. Oct. 3, 2007) ("Plaintiff's bare and conclusory claim … is insufficient to state a claim for breach of the duty of loyalty."); *In re BJ's Wholesale Club Shareholders Litig.*, 2013 Del. Ch. LEXIS 28, at *20 (Ch. Jan. 31, 2013) (dismissing bad faith claim against corporate directors where "[t]he Plaintiffs offer conclusory allegations [of wrongdoing] but the Complaint lacks any facts buttressing that conclusion.").  Moreover, Plaintiff's equally conclusory assertions that "Goldenberg knew of the financial fraud at CaaStle" and "did not timely disclose that information or correct others who stated that CaaStle was a viable,

21

337309139v.6

thriving company with good technology" are likewise insufficient as they do not meet Fed. R. Civ. P. 9(b)'s heightened standard. (*See id.* at 345(b)).

Moreover, Plaintiff's allegations that Goldenberg facilitated any transaction, or took any other action on behalf of P180, were business judgments made in the interest of the company. Under the "business judgment rule," individual board members are protected from liability for decisions "'that were within the scope of their authority,' absent evidence of bad faith or self-interested conduct." *Spartan Capital Secs., LLC v. Sports Field Holdings, Inc.,* 2021 U.S. Dist. LEXIS 31421, at *5 (S.D.N.Y. Feb. 19, 2021) (quoting *Weinreb v. 37 Apartments Corp.*, 97 A.D.3d 54, 57 (1st Dept. 2012)).[12] Plaintiff alleges that "[a]s director[]...Goldenberg owed fiduciary duties to P180" and breached such duties through the "purchase of various assets, which were not in the interest of P180." (*Id.*, ¶¶ 343, 345). Plaintiff's Amended Complaint thus confirms that Goldenberg's challenged conduct occurred in his capacity as a director, precisely the type of action shielded by the business judgment rule. To overcome this protection, Plaintiff must plead particularized facts showing bad faith or self-dealing, not merely allege in conclusory fashion that transactions were "not in the interest of P180." Although Hunsicker is alleged to have engaged in fraud and self-dealing, the Amended Complaint contains no such allegation against Goldenberg. *See Auerbach v Bennett*, 47 N.Y.2d 619, 632 (1979) ("Courts have consistently held that the business judgment rule applies where some directors are charged with wrongdoing, so long as the remaining directors making the decision are disinterested and independent.").

For these reasons, the Amended Complaint fails to state a claim for breach of fiduciary duty against Goldenberg. Accordingly, Plaintiff's claim (Count V) must be dismissed.

---

[12] *See also Weinreb*, 97 AD3d at 57 ("As a general matter, courts are prohibited from inquiring into the propriety of actions taken by a director on behalf of the corporation.").

22

### POINT VI
### PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING
### BREACH OF FIDUCIARY DUTY (COUNT VIII)

As Plaintiff's claim of a breach of fiduciary duty fails against Goldenberg, P180 also cannot state a claim for aiding and abetting a breach of fiduciary duty against either Moving Defendant. "'To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: (1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach.'" *JAPNA, Inc. v. Selfx Innovations Inc.*, No. 22-cv-10753(ALC) (RWL), 2024 U.S. Dist. LEXIS 52774, at *23 (S.D.N.Y. Mar. 22, 2024) (quoting *In re MF Glob. Holdings Ltd. Inv. Litig.*, 611 F. App'x 34 (2d Cir. 2015) (citation omitted)).

"'A defendant participates in a breach by providing 'substantial assistance' to the primary violator, which means 'affirmatively assist[ing], help[ing] conceal or fail[ing] to act when required to do so, thereby enabling the breach to occur.'" *Id.* (quoting *Kraus USA, Inc. v. Magarik,* No. 17-CV-6541 (ER), 2020 U.S. Dist. LEXIS 83841, at *13 (S.D.N.Y. May 12, 2020)). "However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Balanced Return Fund v. Royal Bank of Can.*, No. 600949/2009, 2014 N.Y. Misc. LEXIS 6380, at *29 (Sup. Ct., N.Y. Cnty. Oct. 30, 2014). Further, "'[a]ctual knowledge, as opposed to merely constructive knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty' or fraud." *Id.* (quoting *Global Mins. & Metals Corp. v Holme*, 35 A.D.3d 93, 101-102 (1st Dept 2006)).

The Amended Complaint does not allege facts showing the Moving Defendants provided any "substantial assistance." Instead, it merely proffers conclusory allegations that they "knew or should have known about the alleged" breach through their respective roles. (*See generally,* Doc.

23

No. 84).  Such allegations are "flatly insufficient" to survive a motion to dismiss.  *See Zamora v. Fit Int'l Grp. Inc.*, 834 Fed. Appx. 622, 628 (2d Cir. 2020).[13]  Singh was not affiliated with P180 and owed no duty to Plaintiff.  Although Goldenberg was allegedly a director of P180, the Amended Complaint does not allege any affirmative act of assistance by either Goldenberg or Singh directed at P180.  Therefore, Plaintiff's aiding and abetting claim fails.  *See, e.g., Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 145 (S.D.N.Y. 2023) (dismissing aiding and abetting claim where "Plaintiffs have not pled any facts indicating that [defendants] were aware of any scheme … to defraud [p]laintiffs").

For these reasons, Plaintiff has failed to plausibly allege actual knowledge or substantial assistance by either Moving Defendant.  Accordingly, Plaintiff's aiding and abetting breach of fiduciary duty claim (Count VIII) must be dismissed.

**POINT VII**
**PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT,**
**FRAUDULENT CONCEALMENT, CONSTRUCTIVE FRAUD (COUNT VI)**
**AND AIDING AND ABETTING FRAUD AND/OR CO-CONSPIRATOR LIABILITY**
**(COUNT VII)**

"In order to state a claim for fraud and fraudulent inducement, a complaint must sufficiently allege (1) a material misrepresentation of fact by the defendant; (2) that the defendant intended to deceive the plaintiff; (3) that the plaintiff reasonably relied on defendant's misrepresentation; and (4) that the plaintiff was injured as a result."  *Tropical Sails Corp. v Yext, Inc.*, 2015 U.S. Dist. LEXIS 64722, at *13-14 (S.D.N.Y. May 18, 2015).  "Fraudulent concealment is a subset of the broader cause of action of fraud" and "[a] cause of action to recover damages for fraudulent concealment requires, in addition to allegations of scienter, reliance, and damages, an allegation

---

[13] *See also Balanced Return Fund*, 2014 N.Y. Misc. LEXIS 6380 at *29; *Global Mins. & Metals Corp.*, 35 A.D.3d at 101-02.

337309139v.6

that the defendant had a duty to disclose material information and that it failed to do so. *Ruel v McGrath*, No. 1:12-CV-417, 2013 U.S. Dist. LEXIS 202738, at \*20 (N.D.N.Y. June 19, 2013).

"Additionally, these facts must be pled with particularity under Rule 9(b), which requires that a plaintiff (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) indicate where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*[14] "Because reliance is an essential element of fraud, it must also be pled with particularity under Rule 9(b)." *Id.* "'Great specificity' as to scienter is not required because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" *Cohen v Koenig*, 25 F3d 1168, 1173 (2d Cir. 1994) (quoting *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). "Nonetheless, plaintiffs have the 'burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" *Id.* (quoting *Fluor*, 808 F.2d at 962). "Such a basis may be shown through allegations of a motive to deceive and access to accurate information." *Id.* at 1174.

The Amended Complaint fails to plead fraud with the required particularity. It does not identify a specific actionable misstatement or omission by either Moving Defendant, nor does it allege when or where such statements were made. *See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006) (dismissing fraud claim for failure to allege essential elements with particularity). Plaintiff alleges only that the Moving Defendants "made material misrepresentations or omissions" in the most general terms, without specifying which defendant said what, to whom, or when. As to Singh, the deficiency is even more pronounced: he never had any relationship with P180, owed no fiduciary duty to Plaintiff, and was not even a CaaStle

---

[14] *See also Gull Keys I LLC v. Fulton Advisory Beef Fund I, LLC,* No. 23-CV-09058, 2025 U.S. Dist. LEXIS 169799, at \*15 (S.D.N.Y. Sept. 2, 2025) (same).

25

director, officer, or employee during the relevant period. The Amended Complaint's vague references to meetings or communications in which either Moving Defendant participated do not satisfy Rule 9(b)'s requirement that Plaintiff identify the speaker, the content of the statement, and why it was fraudulent. *See Gull Keys I LLC*, 2025 U.S. Dist. LEXIS 169799, at *15.

Further, regarding scienter, the Amended Complaint does not allege, beyond conclusory assertions, either motive to deceive or access to accurate information. Even assuming Plaintiff could identify specific statements, Plaintiff never proffers facts suggesting why the Moving Defendants participated in any alleged fraud or how they could have known such statements to be false when made. Similarly, the Amended Complaint fails to plead justifiable reliance or proximate causation attributable to any statement by the Moving Defendants.

The co-conspirator and aiding and abetting theories in Counts VI and VII fare no better. For the same reasons set forth above, Plaintiff has not adequately alleged that either Moving Defendant had actual knowledge of any fraud or provided "substantial assistance" to further it. *See Global Mins. & Metals*, 35 A.D.3d at 101-02; *Balanced Return Fund*, 2014 N.Y. Misc. LEXIS 6380, at *29. Conclusory allegations that the Moving Defendants were "aware of" Hunsicker's conduct or participated in board discussions do not establish the affirmative acts necessary for aiding and abetting liability. *See Bayshore Cap. Advisors*, 667 F. Supp. 3d at 145.

For these reasons, Plaintiff has failed to plead fraud with the requisite particularity or to allege actual knowledge and substantial assistance by either Moving Defendant. Accordingly, Plaintiff's claims for fraudulent inducement, fraudulent concealment, and constructive fraud (Count VI), as well as Plaintiff's claim for aiding and abetting fraud and co-conspirator liability (Count VII), must be dismissed.

26

337309139v.6

## POINT VIII
## PLAINTIFF FAILS TO STATE A CLAIM FOR
## NEGLIGENT MISREPRESENTATION

The elements of a negligent misrepresentation claim under New York law are: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Black v Wrigley*, No. 16-CV-430, 2021 U.S. Dist. LEXIS 206748, at \*17-18 (E.D.N.Y. Sep. 21, 2021) (quoting *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). Additionally, under New York law, a plaintiff must plead a claim for misrepresentation with particularity. *See* N.Y. C.P.L.R. 3016 ("Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.").[15]

Here, Plaintiff's negligent misrepresentation claim is deficient because, as discussed at length in Point VII above, the Amended Complaint fails to plead the alleged misrepresentations with the particularity required by Rule 9(b). The Amended Complaint includes only a conclusory assertion that the Moving Defendants "made statements of facts to P180 related to CaaStle's capabilities, financial stability, number of subscribers, their intentions regarding multiple transactions" that "were false" and that "Defendants knew or should have known of the falsity of these statements." (Doc. No. 84, ¶¶ 375-377). This falls far short of the specificity required.

---

[15] *See also Silverman v 3D Total Solutions, Inc.*, 2019 U.S. Dist. LEXIS 153048, at \*14-15 (S.D.N.Y. Sep. 9, 2019) ("[c]laims of negligent misrepresentation must also be pled with particularity if based on the same set of facts as intentional fraud claims." (quoting *Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009)); *Meisel v Grunberg*, 651 F Supp 2d 98, 108 (S.D.N.Y. 2009) ("because plaintiff's allegations in support of its negligent misrepresentation claim are based on the same set of facts upon which plaintiff's fraud claim is grounded, that claim must be pleaded with particularity pursuant to Rule 9(b)").

337309139v.6

Further, as concerns Singh, to recover on a negligent misrepresentation theory, Plaintiff must establish "a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *Crawford*, 758 F.3d at 490 (2d Cir. 2014). The Amended Complaint does not allege any such relationship between P180 and Singh, who never had any relationship with P180. *See, e.g., Atlasman v. Korol*, 238 A.D.3d 826, 830 (2d Dep't 2025) ("Generally, '[a] special relationship does not arise out of an ordinary arm's length business transaction between two parties.'" (quoting *Neurological Surgery, P.C. v MLMIC Ins. Co.*, 208 AD3d 1238, 1240, 175 N.Y.S.3d 266 (2d Dep't 2022)).

For these reasons, Plaintiff has failed to plead negligent misrepresentation with the requisite particularity or to establish a special relationship between P180 and Singh. Accordingly, Plaintiff's negligent misrepresentation claim (Count IX) must be dismissed.

## CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully request that this Court grant their motion to dismiss and issue an Order, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), dismissing this action in its entirety with prejudice, together with any such other or further relief as this Court deems just and proper.

28

337309139v.6

Dated: New York, New York
      June 12, 2026

/s/ Richard W. Boone Jr.

Richard W. Boone Jr.
Siobhán A. Mueller
Kieran R. Lang
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com;
siobhan.mueller@wilsonelser.com;
kieran.lang@wilsonelser.com

*Attorneys for Defendants Jaswinder Pal
Singh and George Goldenberg*

29

337309139v.6

## CERTIFICATION OF COUNSEL

I, Richard W. Boone Jr., the attorney for Defendants Singh and Goldenberg, hereby certify that this **MEMORANDUM OF LAW** is in compliance with Local Civil Rule 7.1(c). The **MEMORANDUM OF LAW** was prepared using Microsoft Word. The typeface is Times New Roman. The main body of the **MEMORANDUM OF LAW** is in 12-point font with 1-inch margins throughout, and contains 8,250 words, as counted by the word-processing program.

By:    */s/ Richard W. Boone Jr.*

*Attorneys for Defendants Jaswinder Pal Singh and George Goldenberg*

30

337309139v.6