**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

P180, INC.                                           :
                                                     :
                              Plaintiff,             :
                                                     :
            -against-                                :
                                                     :          Case No. 25-cv-4432
                                                     :
JASWINDER PAL SINGH, CHRISTINE HUNSICKER,:
GEORGE GOLDENBERG, SCOTT CALLON, CHIRAG:
JAIN, DAYNA CORLITO, AND DOES 1-50                   :
                                                     :
                              Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS JASWINDER PAL SINGH'S AND GEORGE GOLDENBERG'S MOTION TO DISMISS PLAINTIFF P180, INC.'S COMPLAINT</u>

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
Richard W. Boone Jr.
Siobhán A. Mueller
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
E-mail: richard.boone@wilsonelser.com
E-mail: siobhan.mueller@wilsonelser.com
E-mail: kieran.lang@wilsonelser.com

*Counsel for Defendants Jaswinder Pal Singh and George Goldenberg*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................. 2

    POINT I. PLAINTIFF'S "CONTRADICTION" ARGUMENT IS WRONG ................... 2

    POINT II. PLAINTIFF HAS NOT DEMONSTRATED STANDING ............................ 2

    POINT III. PLAINTIFF FAILS TO STATE A CLAIM UNDER 18 U.S.C. §
        1962(c) ........................................................................................................ 3

        A.    Plaintiff Fails to Allege Particularized Predicate Acts by Each
            Moving Defendant. ....................................................................... 3

        B.    Plaintiff Fails to Allege an Association-in-Fact Enterprise ......................... 4

        C.    Plaintiff Fails to Allege Proximate Causation ............................................. 6

    POINT IV. PLAINTIFF FAILS TO STATE A RICO CONSPIRACY CLAIM .............. 7

    POINT V. PLAINTIFF FAILS TO STATE A CONVERSION CLAIM ......................... 8

    POINT VI. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
        FIDUCIARY DUTY ...................................................................................... 9

    POINT VII. PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND
        ABETTING BREACH OF FIDUCIARY DUTY ............................................... 10

    POINT VIII. PLAINTIFF FAILS TO STATE CLAIMS FOR FRAUD, AIDING
        AND ABETING FRAUD, AND NEGLIGENT MISREPRESENTATION ........11

    POINT IX. PLAINTIFF'S REMAINING ARGUMENTS LACK MERIT ..................... 12

CONCLUSION .......................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angermeir v Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014)........................................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 .......................................................................................................2, 8

*Belen v Herman*,
2024 U.S. Dist. LEXIS 8543 (S.D.N.Y. Jan. 17, 2024)...........................................................5

*BWP Media USA*,
69 F. Supp. 3d at 360 ...............................................................................................................5

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001)....................................................................................................12

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)................................................................................................................12

*Cohen v S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013).....................................................................................................11

*Commer. Cleaning Servs. v Colin Serv. Sys.*,
271 F.3d 374 (2d Cir. 2001)......................................................................................................6

*Cont. Petroleum Corp. v Corp. Funding Partners, LLC*,
2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. Apr. 11, 2012)..........................................................5

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015).......................................................................................................2

*Crawford v Franklin Credit Mgt.*,
758 F.3d 473 (2d Cir. 2014)..................................................................................................7, 12

*First Capital Asset Mgt. v Satinwood, Inc.*,
385 F.3d 159 (2d Cir 2004)........................................................................................................5

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010)......................................................................................................................6

*Hemmerdinger Corp. v. Ruocco*,
No. 12-cv-2650 (WFK), 2016 U.S. Dist. LEXIS 52391 (E.D.N.Y. Apr. 19,
2016) .......................................................................................................................................13

339883959v.2

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)............................................................................................................6, 7

*IBEW Local Union 481 Defined Contribution Plan & Trust v Winborne*,
   301 A.3d 596 (Del. Ch. 2023)................................................................................................10

*JAPNA, Inc. v. Selfx Innovations Inc.*,
   2024 U.S. Dist. LEXIS 52774 (S.D.N.Y. Mar. 22, 2024) .......................................................11

*Jones v Bock*,
   549 U.S. 199 (2007)...............................................................................................................9

*Knox v. Zarzeski*,
   2006 U.S. Dist. LEXIS 117784 (S.D.N.Y. July 11, 2006) ......................................................2

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006)..................................................................................................12

*Kolbeck v. LIT America, Inc.*,
   939 F. Supp. 240 (S.D.N.Y. 1996) ........................................................................................11

*Kraus USA, Inc. v. Magarik*,
   2020 U.S. Dist. LEXIS 83841 (S.D.N.Y. May 12, 2020).........................................................11

*Lerner v Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..................................................................................................11

*Leveto v Lapina*,
   258 F3d 156 (3d Cir 2001)......................................................................................................9

*Michael Grecco Prods., Inc. v RADesign, Inc.*,
   112 F.4th 144 (2d Cir. 2024) ..................................................................................................9

*Mills v Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)....................................................................................................3

*Nastasi & Assoc. v Bloomberg, L.P.*,
   2022 U.S. Dist. LEXIS 172854 (S.D.N.Y. Sep. 23, 2022).......................................................7

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025)...............................................................................................................12

*Salinas v. United States*,
   522 U.S. 52 (1997)..................................................................................................................7

*Sedima, S.P.R.L. v. Imrex*,
   473 U.S. 479 (1985)................................................................................................................4

339883959v.2

*Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC,*
  2021 U.S. Dist. LEXIS 29368 (S.D.N.Y. Feb. 16, 2021)........................................................3

*Staehr v Hartford Fin. Servs. Group,*
  547 F.3d 406 (2d Cir. 2008)..................................................................................................9

*State Farm Mut. Auto. Ins. Co. v CPT Med. Servs., P.C.,*
  375 F Supp 2d 141 (E.D.N.Y. 2005) ....................................................................................8

*United States v Turkette,*
  452 U.S. 576 (1981)...............................................................................................................5

*Zamora v Fit Intl. Group Corp.,*
  834 F App'x 622 (2d Cir. 2020) .........................................................................................10

*Zottola v Eisai Inc.,*
  564 F Supp 3d 302 (S.D.N.Y. 2021)......................................................................................3

**Statutes**

18 U.S.C. § 1962(c) ....................................................................................................................3

18 U.S.C. § 1962(d) ...................................................................................................................7

28 U.S.C. § 1367(c)(3)...............................................................................................................12

**Rules**

Delaware Court of Chancery, Rule 9(b) ....................................................................................10

Federal Rules of Civil Procedure, Rule 9(b)..................................................................1, 3, 11, 12

Federal Rules of Civil Procedure, Rule 12(b)(1) ........................................................................1

Federal Rules of Civil Procedure, Rule 12(b)(6) .....................................................................1, 9

339883959v.2

## PRELIMINARY STATEMENT

Defendants Jaswinder Pal Singh ("Singh") and George Goldenberg ("Goldenberg") (collectively, the "Moving Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").

Plaintiff's Opposition (ECF No. 123) does not cure the Amended Complaint's fundamental deficiencies. Plaintiff's unavailing theory remains guilt by association: because Defendant Christine Hunsicker pled guilty to fraud, and because the Moving Defendants had professional relationships with Hunsicker, they must somehow be guilty too. However, RICO and fraud claims require particularized, individualized allegations, *not* proximity to a confessed wrongdoer. Such claims also require damages, which—as a principal beneficiary of the alleged fraud, obtaining millions in loans made from the proceeds of Hunsicker's alleged scheme[1]—P180 cannot establish.

Despite ninety-five pages of allegations, the Amended Complaint still fails to plead: (1) that either Moving Defendant personally committed or knowingly participated in two or more predicate acts of fraud with the specificity Rule 9(b) demands; (2) an association-in-fact enterprise with an ascertainable structure beyond the pattern of racketeering itself; (3) the direct causal relationship between any predicate act attributable to the Moving Defendants and P180's claimed injuries; or (4) the actual knowledge and substantial assistance required for the state-law accessory claims. As a result, P180's claims are ripe for dismissal.

For these reasons, set forth in greater detail in the Moving Defendants' initial Memorandum and discussed further herein, Plaintiff's claims should be dismissed, with prejudice.

---

[1] In this regard, P180 brazenly complains that it received "over $9,300,000" from Hunsicker that she obtained from investors through fraud and was somehow wrongly induced to invest that money in a controlling share in Vince in January 2025. (Dkt. 125, p. 12). Between January 31, 2025 and July 15, 2026, those shares have appreciated in value from $3.53 to $6.16. Brendan Hoffman, the owner of 75% of P180, is now the CEO and public face of Vince.

1

## ARGUMENT

### POINT I
### PLAINTIFF'S "CONTRADICTION" ARGUMENT IS WRONG

Plaintiff's Opposition begins with the erroneous premise that the Moving Defendants are somehow impermissibly "contradicting" the Amended Complaint's factual allegations. (Dkt. 123, p. 16-17). However, as *Ashcroft v. Iqbal* makes clear, a court "need not accept as true" allegations that are mere "legal conclusions couched as factual allegations." 556 U.S. 662, 678. Once Plaintiff's conclusory and speculative allegations are stripped away, what remains are well-pleaded facts showing that Singh had no involvement with P180[2] and that Goldenberg's involvement was routine. The Moving Defendants do not ask the Court to weigh competing evidence; they ask the Court to apply *Iqbal*'s framework and recognize that Plaintiff's factual allegations—short of labels, conclusions, and speculation—fail to state a plausible claim.

### POINT II
### PLAINTIFF HAS NOT DEMONSTRATED STANDING

A plaintiff bears the burden of "alleging facts that affirmatively and plausibly establish its standing." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015). P180's single, unelaborated reference to an April 30, 2025 board resolution (Dkt. 84, ¶ 8) does not carry that burden. The resolution is not quoted, not attached, and not shown to reflect disinterested board action.[3] Plaintiff's attempt to cabin *Knox v. Zarzeski*, 2006 U.S. Dist. LEXIS 117784, at *17 (S.D.N.Y. July 11, 2006) to dissolution proceedings ignores the underlying principle: a corporation must demonstrate valid board authorization. Plaintiff has not.

---

[2] Singh was not even an officer or director of CaaStle during the period of Hunsicker's fraud at CaaStle and only rejoined CaaStle *after* Hunsicker was removed from the board.

[3] That is a critical omission given Plaintiff's own allegations that Hoffman was the only non-conflicted director for much of the relevant period and that CaaStle, an entity presently in bankruptcy where its interests are subject to an automatic stay, is a substantial shareholder.

2

**POINT III**
**PLAINTIFF FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(c)**

Plaintiff's Opposition fails to cure the fundamental defects in its RICO claim against the Moving Defendants.  As demonstrated below, Plaintiff has not pled predicate acts attributable to Singh or Goldenberg with particularity, nor adequately alleged a pattern of racketeering activity or proximate causation.

**A.    Plaintiff Fails to Allege Particularized Predicate Acts by Each Moving Defendant.**

As set forth in the initial Memorandum, each individual RICO defendant must be connected to at least two predicate acts pled with the particularity Rule 9(b) demands: "the who, what, when, where, and how" of the fraud.  *Zottola v Eisai Inc.*, 564 F Supp 3d 302, 316 (S.D.N.Y. 2021) (quoting *Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC*, 2021 U.S. Dist. LEXIS 29368, at \*8 (S.D.N.Y. Feb. 16, 2021)).

Plaintiff argues it need only show "knowing or intentional participation in a scheme" without alleging each defendant personally spoke a falsehood.  (Dkt. 123, at 14).  Even under that theory, the complaint must specify "the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent" as to each defendant.  *Mills v Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).  Additionally, Plaintiff must allege "knowing or intentional participation."  *See, e.g., Angermeir v Cohen*, 14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014) ("At a minimum … 'allege that [each Defendant] *personally* knew of, or participated in, the fraud.'" (quoting *Mills*, 12 F.3d at 1175)).

Regarding Goldenberg, Plaintiff asserts that it "alleges multiple meetings conducted online where Goldenberg made fraudulent statements over the wires in furtherance of the scheme."  (Dkt. 123, pp. 19-20).  But the Amended Complaint does not plead the specific false statements attributable to Goldenberg (as distinct from Hunsicker) and does not identify how he might have

3

known they were false, beyond supposition that he must have been involved in the scheme. Allegations of "prepar[ing] the company's diligence materials," redeeming shares (a common occurrence in privately held companies), or attending meetings (*id.*, p. 20) cannot, standing alone, satisfy the requirement of predicate acts. Otherwise, every corporate officer is potentially liable as a RICO co-conspirator in any fraud involving the company.

As for Singh*,* there is no question that he was never an officer, director, or employee of P180. He therefore had no role at P180 and Plaintiff does not claim otherwise. The best allegations of predicate acts by Singh that Plaintiff can muster are that he "repeatedly made false statements, including to CaaStle investors …, including a telephonic meeting planning the fraudulent takeover of P180 … and fraudulently demanding payment directly from P180 [of its loan from CaaStle]." (*Id.*). Those allegations do not establish any predicate act. They are simply the actions of a corporate director proposing a merger and seeking to collect a debt.[4] Also, the merger never occurred, and P180 still has not paid its debt to CaaStle.[5] This lawsuit by the principal beneficiary of Hunsicker's fraud is a subterfuge to avoid that obligation.

Thus, Plaintiff's bare, conclusory allegations offer no concrete facts demonstrating the Moving Defendants' participation in or knowledge of the claimed fraudulent acts.

**B.        Plaintiff Fails to Allege an Association-in-Fact Enterprise.**

Plaintiff's Opposition asserts that "P180 sufficiently pleads an enterprise: the common purpose of operating CaaStle with a false appearance of solvency to extract funds and assets,

---

[4] As for the purported false statements to investors, that is alleged to predate P180's existence and has no temporal or substantive connection to Plaintiff's claims.

[5] In this regard, Plaintiff concedes the need "that P180 show it experienced 'harm caused by predicate acts sufficiently related to constitute a pattern'" but that "Defendants never achieved their goal of taking over P180." (Dkt. 123, p. 21 (quoting *Sedima, S.P.R.L. v. Imrex*, 473 U.S. 479, 497 (1985). Contrary to being a "red herring," this establishes that "whether the scheme 'to gain control of P180's money and assets' was 'ultimately unsuccessful' is relevant" (*id.*) and that the alleged takeover never happened—meaning P180 suffered no harm caused by the alleged predicate acts.

4

including from P180 and to shield insiders from exposure." (Dkt. 123, p. 22). P180 also asserts that it "catalogues extensive relationships among Defendants, the longevity of those relationships, and Defendants' respective roles in the enterprise." (*Id.*). Plaintiff's theory appears to be that working with Hunsicker (or in the case of Singh during the relevant period, simply knowing her) is sufficient to establish a RICO enterprise.[6]

A plaintiff asserting a RICO claim based on an association-in-fact enterprise must demonstrate that the enterprise exists "separate and apart from the pattern of activity in which it engages." *Belen v Herman*, 2024 U.S. Dist. LEXIS 8543, at *13 (S.D.N.Y. Jan. 17, 2024) (quoting *United States v Turkette*, 452 U.S. 576, 583 (1981)). Here, the only "enterprise" alleged is the commission of the very fraud of which Plaintiff complains: the so-called "Hunsicker Enterprise" is defined solely by reference to the alleged predicate acts, not by any ongoing organizational structure independent of those acts. This does not suffice. *See, e.g., First Capital Asset Mgt. v Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir 2004) ("The Amended Complaint fails … to detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves - a requirement in this Circuit.").

Plaintiff identifies no structure, roles, or decision-making hierarchy for Singh or Goldenberg independent of, and antecedent to, the fraud itself. Plaintiff counters that "[e]ven removing the predicate acts of wire fraud, mail fraud, bank fraud, and money laundering from the record, P180 still alleges coordinated action and business ties between Defendants." (Dkt. 123, p.

---

[6] Specifically, Plaintiff alleges that"[t]he 'Hunsicker Enterprise' was a group of individuals associated in fact centered around Christine Hunsicker and her various fraudulent business ventures" and that "each of the Defendants worked together toward the common purpose of lying to maximize the wealth of the Hunsicker Enterprise and evade discovery of the fraud, as well as to distribute ill-gotten funds to members of the enterprise to secure their ongoing loyalty and silence." (Doc. No. 84, ¶¶ 300-301). These vague and conclusory allegations reveal nothing about the "hierarchy, organization, and activities of the alleged association." *BWP Media USA,* 69 F. Supp. 3d at 360 (quoting *Cont. Petroleum Corp. v Corp. Funding Partners, LLC,* 2012 U.S. Dist. LEXIS 51841, at *14 (S.D.N.Y. Apr. 11, 2012).

24).  However, a twenty-year personal friendship with a fraudster is not a RICO enterprise, nor is simply sharing a common employer.

### C.    Plaintiff Fails to Allege Proximate Causation.

Plaintiff's Opposition does not dispute that "[p]roximate cause for RICO purposes … requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 268 (1992)).  Rather, Plaintiff argues that "P180 pleads the necessary direct relation between the harm caused and Defendants' predicate acts" because it "has identified multiple sources of monetary damages, including loans Defendants induced it to procure, payments made in reliance upon Defendants fraudulent statements, and obligations it undertook based upon Defendants representations."  (Dkt. 123, p. 25).

This confirms that P180's claimed injuries are: (1) loan obligations it voluntarily undertook; (2) service fees it paid to CaaStle; and (3) other unspecified "obligations."  However, Plaintiff has not alleged losses arising from any of those things.[7]  Plaintiff further claims that "P180 has also lost income from partnerships that failed because Defendants had lied about capabilities, technology, and subscribers."  (*Id.*).  However, the allegations cited allege no such thing—not even the conclusory speculation upon which the rest of Plaintiff's allegations rely.

Even if Plaintiff could have included such allegations, Plaintiff's theory is plainly "'contingent' harm 'flowing merely from the misfortunes visited upon a third party.'"  (*Id.* (quoting *Commer. Cleaning Servs. v Colin Serv. Sys.*, 271 F.3d 374, 381 (2d Cir. 2001))).  Plaintiff ultimately claims that, because Hunsicker defrauded CaaStle investors, it was somehow harmed because its

---

[7] It cannot, because P180 owes its very existence to those loans and services, and it appears to have profited handsomely from appreciation in the value of Vince shares.

independent business judgments might have been different.  This cannot satisfy proximate cause.

*See Holmes,* 503 U.S. at 271.

<u>POINT IV</u><br><u>PLAINTIFF FAILS TO STATE A RICO CONSPIRACY CLAIM</u>

A defendant may be liable for RICO conspiracy under § 1962(d) if he "knew of, and agreed to, the general criminal objective of a jointly undertaken scheme." *Salinas v. United States*, 522 U.S. 52, 63 (1997).  Plaintiff concedes that it has not alleged anything directly showing such knowledge or agreement, arguing instead that it can be implied from the Moving Defendants' positions and the access to information these positions afforded.[8]  (Dkt. 123, pp. 27-28).

An allegation that the Moving Defendants merely had the *ability* to conspire with Hunsicker is insufficient.  *See, e.g. Crawford v Franklin Credit Mgt.*, 758 F.3d 473, 489 (2d Cir. 2014) (upholding dismissal of Section (d) claim where plaintiff "presented no evidence of any agreement by Defendants to engage in conduct of the type that would be sufficient to constitute a pattern of racketeering activity").  In *Nastasi & Assoc. v Bloomberg, L.P.*, 2022 U.S. Dist. LEXIS 172854, at *59 (S.D.N.Y. Sep. 23, 2022), the court upheld the RICO conspiracy claim because the plaintiff "specifically alleges that [defendant] willfully and knowingly agreed and conspired with other Defendants to commit the above referenced predicate acts … and it backs up that assertion with factual allegations sufficient to support an inference of an agreement to join a RICO conspiracy."  Plaintiff has not backed up its conclusory assertions of a conspiracy here.

Plaintiff also argues that its RICO conspiracy claim should survive because "P180 has indisputably pleaded substantive RICO allegations against Hunsicker" because "she has admitted

---

[8] Specifically, Plaintiff argues that "Goldenberg, through his position, had access to both CaaStle and P180s true financial statements…, which he used to facilitate false statements about those figures and to assist in the transfer of millions of dollars from P180 accounts… [h]e then cashed out when the exposure was imminent" and that "Singh likewise had access to complete information about CaaStle's business, which he used to cover up Hunsicker's fraud…,, to further the scheme to defraud P180…, and also to cash out when exposure was imminent."  (Dkt. 123, p. 27).

7

339883959v.2

much of them in her answer." (Dkt. 123, p. 27).[9]  But P180 has not adequately pled substantive RICO violations, nor has Hunsicker admitted any.[10]  Plaintiff also misconstrues the Moving Defendants' argument.  Although there does not need to be a consummated RICO violation, *see e.g.*, *State Farm Mut. Auto. Ins. Co. v CPT Med. Servs., P.C.*, 375 F Supp 2d 141, 150-151 (E.D.N.Y. 2005), the things the co-conspirator is alleged to have done must actually be a RICO violation, which in the case of Hunsicker, they are not.

### POINT V
### PLAINTIFF FAILS TO STATE A CONVERSION CLAIM

Plaintiff's Opposition argues that "P180 properly alleges conversion" because it "alleges four occasions where Goldenberg directly participated in alienating P180's funds without authorization." (Dkt. 123, p. 29 (citing Dkt. 84, ¶ 149)).  The referenced paragraph actually states, in each instance, that "Hunsicker and, on information and belief [*i.e.* pure conjecture] Goldenberg, Corlito, and Jain, conspired to transfer [the funds] … without right to do so."  (Dkt. 84, ¶ 149). Those vague and conclusory allegations are patently insufficient.  *See Iqbal*, 556 U.S. at 678. Plaintiff offers no concrete allegation that Goldenberg had anything to do with any transfer.[11]

As for Singh, Plaintiff cannot even point to a conclusory allegation of involvement in any transfer from P180.  Instead, while conceding that "Singh had no role at P180," it claims he somehow "still directed transfers from P180 bank accounts without authorization."  Plaintiff does

---

[9] P180 cites to ¶ 3 of the Hunsicker Answer as an admission, however, ¶ 3 of the Hunsicker Answer to the Amended Complaint states, in relevant part, "To the extent that the allegations in Paragraph 3 assert any wrongdoing against Hunsicker, such allegations are denied." This is a denial, not an admission, as P180 purports.

[10] She has pled guilty to securities fraud, but that is not the same thing as admitting to a RICO violation.

[11] Recognizing this, Plaintiff asserts its hope that that "discovery will show more." (Dkt. 123, p. 29).  That hope does not cure the deficiency.

339883959v.2

not attempt to explain how that is so.  Unsurprisingly, Plaintiff offers no citation to the Amended

Complaint in support, because there is no such allegation.[12]

**POINT VI**
**PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY**

Plaintiff argues that Delaware law governs fiduciary duties owed by P180's officers and

directors because P180 is a Delaware corporation.  (Dkt. 123, at 29-30).  The Court need not

resolve this choice-of-law question because the result is the same under either state's law.  Many

cases from this district cited by the Moving Defendants also apply Delaware law.

As for the substance of Plaintiffs claim, P180 argues that "looting a corporation for personal

profit, whether directly or to save an investment in another company, violates the duty of loyalty."

(Dkt. 123, p. 30).  Plaintiff cites numerous paragraphs in the Amended Complaint that purportedly

show this.  However, when you strip away the conclusory and speculative allegations, all they

really allege is that Goldenberg was the COO of CaaStle.[13]

Plaintiff also contends the business judgment rule is an affirmative defense that cannot be

resolved on a Rule 12(b)(6) motion.  However, "[a] complaint may be subject to dismissal under

Rule 12(b)(6) when an affirmative defense … appears on its face."  *Jones v Bock*, 549 U.S. 199,

215 (2007) (quoting *Leveto v Lapina*, 258 F3d 156, 161 (3d Cir 2001)).[14]  Here, the Amended

---

[12] Plaintiff also asserts that "[t]hose funds were used to redeem both Singh and Goldenberg's shares when exposure was threatened."  However, the specific paragraphs in the Amended Complaint that are cited do not support that assertion – they specifically note that Hunsicker admitted that, at least as concerning Singh, she "used CaaStle funds obtained through fraud on *investors* [*i.e.* not P180] to repurchase" the shares.  (Dkt. 84, ¶ 169).  Notwithstanding, Plaintiff does later allege, in its typically conclusory manner, that "at least some" of the money to repurchase the shares must have come "from money that Defendants had looted from P180 earlier in the summer.")  (*Id.*, ¶¶ 252-253).  Again, such vague and conclusory allegations are insufficient.

[13] Plaintiff repeatedly alleges that Goldenberg must have known of the fraud in that role and, therefore, speculates that every meeting he attended or action he took was part of that fraud.  But the actual allegations are only that Goldenberg attended meetings, or that he took various actions.

[14] *See also Michael Grecco Prods., Inc. v RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." (quoting *Staehr v Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008))).

9

Complaint alleges that Goldenberg's challenged conduct was undertaken in his capacity as a P180 director and officer, triggering the business judgment rule.

Under that rule, a plaintiff must plead particularized facts demonstrating bad faith, self-dealing, or a failure of oversight constituting disloyalty. *See, e.g., IBEW Local Union 481 Defined Contribution Plan & Trust v Winborne*, 301 A.3d 596, 619 (Del. Ch. 2023) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." (quoting Del. Ct. Ch. R. 9(b))).   Plaintiff's conclusory allegations regarding Goldenberg's participation in the fraud are therefore insufficient.   The Opposition identifies no specific decision by Goldenberg, at a specific time, that was motivated by self-interest in his P180 fiduciary capacity. The stock redemptions Plaintiff alleges occurred at CaaStle, not P180, and timing alone does not establish self-dealing in Goldenberg's role as a P180 director.

## POINT VII
## PLAINTIFF FAILS TO STATE A CLAIM FOR
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Plaintiff's Opposition argues that "Defendants arguments regarding aiding-and-abetting claims again apply the wrong state's law" (Dkt. 123, p. 32), indicating that P180 thinks New York is incorrect but without revealing what law it thinks applies.   Regardless, the at-issue tort allegedly occurred entirely in New York and is not governed by Delaware corporate law.[15]   P180 also points to no conflict of laws indicating that the choice of law makes any difference.

Plaintiff then trumpets its conclusory allegations that "Goldenberg had actual knowledge that Hunsicker was violating her fiduciary duties to P180" to argue that this shows aiding and abetting Hunsicker's breach of fiduciary duty.   When you strip away the conclusory and speculative allegations, all they really allege is that Goldenberg was the COO of CaaStle and that,

---

[15] Curiously, the only case cited by Plaintiff, *Zamora v Fit Intl. Group Corp.*, 834 F App'x 622, 627-28 (2d Cir. 2020), applies New York law.

339883959v.2

in that capacity, he attended meetings and otherwise did his job. As for Singh, P180 asserts only that he and Goldenberg "decided to coerce P180 into an unfavorable merger." (Dkt. 123, p. 32). That merger never happened.

These allegations do not show knowing participation in any breach of fiduciary duty or actual damages. Knowing participation requires "'substantial assistance' to the primary violator, which means 'affirmatively assist[ing], help[ing] conceal or fail[ing] to act when required to do so, thereby enabling the breach to occur,'" *JAPNA, Inc. v. Selfx Innovations Inc.,* 2024 U.S. Dist. LEXIS 52774, at *23 (S.D.N.Y. Mar. 22, 2024) (quoting *Kraus USA, Inc. v. Magarik,* 2020 U.S. Dist. LEXIS 83841, at *13 (S.D.N.Y. May 12, 2020)).

The non-existent merger, which is the only thing Plaintiff contends ties Singh to this claim, did not cause any injury. As for Goldenberg, his alleged silence in response to false statements by Hunsicker could not constitute substantial assistance unless he knew the statements were false— something Plaintiff does not allege beyond conclusory allegations and speculation. Constructive knowledge will not suffice—"actual knowledge is required to impose liability on an aider and abettor under New York law," which must be alleged with particularity. *Lerner v Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (quoting *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).

## POINT VIII
### PLAINTIFF FAILS TO STATE CLAIMS FOR FRAUD, AIDING AND ABETING FRAUD, AND NEGLIGENT MISREPRESENTATION

Plaintiff's various fraud, aiding-and-abetting/conspiracy, and negligent misrepresentation claims fail under Rule 9(b)'s requirement that "a complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen v S.A.C.*

11

*Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

Plaintiff insists the Amended Complaint identifies specific meetings and dates.  (Dkt. 123, at 32).  But identifying that a meeting occurred is not the same as identifying the specific false statement made, by whom, and why that person knew it to be false.  The Opposition's reliance on circumstantial "motive and opportunity" (stock cash-outs, control of finances) does not substitute for the particularized factual basis for scienter that Rule 9(b) demands as to each defendant.

Plaintiff's negligent misrepresentation claim independently fails as to Singh because it requires "a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff."  *Crawford,* 758 F.3d at 490 (2d Cir. 2014).  Singh had no relationship with P180: no contract, no fiduciary duty, no course of dealing.

### POINT IX
### PLAINTIFF'S REMAINING ARGUMENTS LACK MERIT

Plaintiff's remaining arguments fare no better.  Plaintiff argues that the Moving Defendants' supplemental-jurisdiction point is "wrong and waived."  (Dkt. 123, p. 35).  It is neither.  Even assuming *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) is not directly on point—as it addressed the distinct scenario where a plaintiff's own amendment eliminates the federal claim—it is instructive.  Once the RICO claims are dismissed, the Court has discretion under 28 U.S.C. § 1367(c)(3) to decline supplemental jurisdiction, and "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).[16]  That balance favors declining jurisdiction here, where the sole basis for federal jurisdiction is patently

---

[16] *See also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

339883959v.2

insufficient RICO claims and the remaining claims—turning on New York tort law or Delaware corporate law—raise no independent federal interest.  Nor was this argument waived: jurisdictional arguments may be raised regardless of format, and courts routinely address supplemental-jurisdiction questions presented in a footnote.

Plaintiff argues that the absence of criminal charges against Singh and Goldenberg is "irrelevant," citing an inapposite case, *Hemmerdinger Corp. v. Ruocco*, No. 12-cv-2650 (WFK), 2016 U.S. Dist. LEXIS 52391, at *1 (E.D.N.Y. Apr. 19, 2016) (civil RICO suit is not double jeopardy).  The Moving Defendants do not contend that the absence of criminal charges is *dispositive*.  However, where Plaintiff asks the Court to infer knowing participation in a massive fraudulent scheme based solely on proximity to Hunsicker, the fact that federal prosecutors have not charged either Moving Defendant is informative.

Lastly, Plaintiff asserts that the Moving Defendants waived any opposition to leave to amend by failing to adequately articulate why dismissal should be with prejudice.  (Dkt. 123, p. 29).  However, the Motion was clear that leave to amend should be denied because Plaintiff's deficiencies are not curable by re-pleading.  Other than Plaintiff's "guilt by association" allegations, which impermissibly lump all Moving Defendants together, there is nothing more Plaintiff can say, or else Plaintiff would have said it in its Amended Complaint.[17]

---

[17] In this regard, Plaintiff's suggestion that it "could substantially bolster the facts in its Complaint" based on "adversary complaints in CaaStle's bankruptcy estate," New York Times reporting, and "discovery disclosures" only underscores the inadequacy of the current Amended Complaint.  The adversary complaints against Singh and Goldenberg were filed weeks before Plaintiff filed the Amended Complaint.  Indeed, Plaintiff specifically sought, and was granted, an extension of time to file its Amended Complaint to incorporate allegations from those adversary actions.  The fact that Plaintiff now seeks leave to amend to include allegations it previously indicated it was considering only underscores the deficiency of its claims.

339883959v.2

## CONCLUSION

For the foregoing reasons and those set forth in the Moving Defendants' Motion, the Moving Defendants respectfully request that this Court grant the Motion and issue an Order dismissing this action in its entirety with prejudice, together with such other relief as this Court deems just and proper.

Dated: New York, New York
July 17, 2026

/s/ Richard W. Boone Jr.
Richard W. Boone Jr.
Siobhán A. Mueller
Kieran R. Lang
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail:    richard.boone@wilsonelser.com;
siobhan.mueller@wilsonelser.com;
kieran.lang@wilsonelser.com

*Attorneys for Defendants Jaswinder Pal Singh and George Goldenberg*

14

339883959v.2

## CERTIFICATION OF COUNSEL

I, Richard W. Boone Jr., the attorney for Defendants Singh and Goldenberg, hereby certify that this **MEMORANDUM OF LAW** is in compliance with Local Civil Rule 7.1(c) and Your Honor's Individual Practice Rule II(D)(1).  This **MEMORANDUM OF LAW** was prepared using Microsoft Word. The typeface is Times New Roman. The main body of this **MEMORANDUM OF LAW** is in 12-point font with 1-inch margins throughout, and contains 3,453 words, as counted by the word-processing program, excluding the caption, tables of contents and authorities, signature block, and this certification.

By:      */s/ Richard W. Boone Jr.*

***Attorneys for Defendants Jaswinder Pal Singh and George Goldenberg***

15

339883959v.2