**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| P180, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>JASWINDER PAL SINGH, CHRISTINE HUNSICKER, GEORGE GOLDENBERG, SCOTT CALLON, CHIRAG JAIN, DAYNA CORLITO, AND DOES 1-50,<br><br>Defendants. | CIV NO. 25-CV-04432-VM-SDA |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAYNA CORLITO'S**
**MOTION TO DISMISS PLAINTIFF P180'S AMENDED COMPLAINT**

**WHITE AND WILLIAMS LLP**
Thomas E. Butler, Esq.
Stuart J. Wells, Esq.
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 244-9500
*Attorneys for Defendant Dayna Corlito*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................1
ALLEGATIONS IN AMENDED COMPLAINT ....................3
A. General Allegations .................... 3
B. Allegations against Corlito. .................... 5
LEGAL STANDARD....................7
POINT I - PLAINTIFF FAILS TO PLEAD A SUBSTANTIVE RICO VIOLATION ....................8
A. Plaintiff Fails to Plead an "Association-in-Fact" Enterprise .................... 9
B. Plaintiff Fails to Plead Corlito's Participation in the Operation or Management of Any Alleged Enterprise .................... 13
C. Plaintiff Fails to Plead Corlito's Participation in a "Pattern of Racketeering Activity".................... 15
1. Wire Fraud ....................16
2. Bank Fraud....................17
3. Money Laundering....................18
D. Plaintiff Fails to Plead Plausible Causation Between Corlito's Conduct and the Alleged Harm.................... 19
POINT II - PLAINTIFF FAILS TO PLEAD A RICO CONSPIRACY ....................21
A. Plaintiff's Failure to Plead a Section 1962(c) Substantive Claim Necessarily Dooms the RICO Conspiracy Claim. .................... 21
POINT III - PLAINTIFF FAILS TO PLEAD A CLAIM FOR CONVERSION....................22
POINT IV- PLAINTIFF FAILS TO PLEAD CLAIMS FOR CO-CONSPIRATOR LIABILITY AND AIDING AND ABETTING FRAUD ....................24
A. Co-Conspirator Liability Under New York Law .................... 24
B. Plaintiff Fails to Plead Knowledge and Substantial Assistance in its Aiding and Abetting Fraud Claim.................... 25
POINT V - PLAINTIFF FAILS TO PLEAD A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ....................27
CONCLUSION....................28



52395521v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbot Labs v. Adelphia Supply USA*,
Case No. 15-cv-5826, 2017 U.S. Dist. LEXIS 1007 (S.D.N.Y. Jan. 4, 2017) ........................21

*Abrams v. Pecile*,
84 A.D.3d 618 (1st Dep’t 2011) ....................................................................................23

*Abu Dhabi Coin. Bank v. Morgan Stanley & Co. Inc.*,
651 F. Supp. 2d 155 (S.D.N.Y. 2009)...............................................................................25

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)......................................................................................................19

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983)..............................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................8

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
667 F. Supp. 3d 83 (S.D.N.Y. 2023).........................................................................21, 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................8, 15

*Bernstein v. Misk*,
948 F.Supp. 228 (E.D.N.Y. 1997) ................................................................................18, 19

*Black v. Ganieva*,
619 F. Supp. 3d 309 (S.D.N.Y. June 30, 2022) ...............................................................12

*Boyle v. United States*,
556 U.S. 938 (2009)...................................................................................................9, 10

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001)............................................................................................17

*Casio Computer Co. v. Sayo*,
Case No. 98-civ-3772, 1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. Sept. 20, 1999) ...........................................................................................................................19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999)............................................................................................15



52395521v.1

*Cogen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013)....................16

*Colavito v. N.Y. Organ Donor Network, Inc.*,
8 N.Y.3d 43 (2006)....................22

*D. Penguin Bros. Ltd. v. City National Bank*,
587 F.App'x 663 (2d Cir. 2014)....................11

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018)....................12, 13, 14, 19

*DDR Constr. Servs. v. Siemens Indus.*,
770 F. Supp. 2d 627 (S.D.N.Y. 2011)....................20

*DeFalco v. Bernas*,
244 F.3d 286 (S.D.N.Y. 2001)....................9, 16

*Eklund v. Pinkey*,
27 A.D.3d 878 (3rd Dep't 2006)....................23

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)....................10, 13

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
902 F.3d 132 (2d Cir. 2018)....................8

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*,
174 A.D.3d 473 (1st Dep't 2019)....................24

*Fiorenti v. Central Emergency Physicians, PLLC*,
305 A.D.2d 453 (2d Dep't 2003)....................24

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)....................11, 15, 16

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994)....................8

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)....................25

*Godlewska v. Human Dev. Ass'n*,
Case No. CV-03-3985 (DGT), 2005 U.S. Dist. LEXIS 36998 (E.D.N.Y. Jul. 18, 2005)....................12

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y. 2000)....................9



52395521v.1

*Gross v. Waywell*,
628 F.Supp.2d 475 (S.D.N.Y. 2009)....................17

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010)....................20

*Holmes v. Parade Place, LLC*,
Case No. 12 Civ. 6299 (GBD)(DF), 2013 U.S. Dist. LEXIS 138645 (S.D.N.Y. Sep. 25, 2013)....................15

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992)....................19, 20

*Jus Punjabi, LLC v. Get Punjabi, Inc.*,
Case No. 14-cv-3318, 2015 U.S. Dist. LEXIS 66006 (S.D.N.Y. May 20, 2015)....................18, 19

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)....................8, 19

*Kaufman v. Cohen*,
307 A.D.2d 113 (N.Y. App. Div. 2003)....................27

*Kolbeck v. LIT America, Inc.*,
939 F. Supp. 240 (S.D.N.Y. 1996)....................25, 27

*Lanzaro-Brunstein v. Creative Portal LLC*,
Case No. 25-cv-5905 (NSR), 2026 U.S. Dist. LEXIS 132082 (S.D.N.Y. June 12, 2026)....................22

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....................25

*Levin v. Javeri (In re Firestar Diamond, Inc.)*,
654 B.R. 836 (Bankr. S.D.N.Y. 2023)....................15

*Lippe v. Bairnco Corp.*,
218 B.R. 294 (S.D.N.Y. 1998)....................13

*Loughrin v. United States*,
573 U.S. 351 (2014)....................17

*Marine Midland Bank v. Smith*,
482 F. Supp. 1279 (S.D.N.Y. 1979), *aff'd*, 636 F.2d 1202 (2d Cir. 1980)....................27

*Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*,
386 F. Supp. 3d 319 (S.D.N.Y. 2019)....................21

*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025) .......... 19

*Meese v. Miller*,
79 A.D.2d 237 (4th Dep't 1981) .......... 24

*Montalvo v. J. Petrocelli Constr., Inc.*,
8 A.D.3d 173 (1st Dep't 2004) .......... 23

*Moore v. PaineWebber, Inc.*,
189 F.3d 165 (2d Cir. 1999) .......... 16

*Old Republic Natl. Tit. Ins. Co. v. Cardinal Abstract Corp.*,
14 A.D.3d 678 (2nd Dep't 2005) .......... 23

*Pappas v. Tzolis*,
20 N.Y.3d 228 (2012) .......... 24

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) .......... 13

*S & K Sales Co. v. Nike, Inc.*,
816 F.2d 843 (2d Cir. 1987) .......... 27

*Samuel M. Feinberg Testamentary Trust v. Carter*,
652 F. Supp. 1066 (S.D.N.Y. 1987) .......... 27

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
119 F.3d 91 (2d Cir. 1997) .......... 15

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) .......... 9

*Skillgames, LLC v. Brody*,
1 A.D.3d 247 (1st Dep't 2003) .......... 24

*Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*,
64 A.D.3d 472 (N.Y. App. Div. 2009) .......... 25

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) .......... 16

*United States v. Turkette*,
452 U.S. 576 (1981) .......... 9

*United Stats v. Maher*,
108 F.3d 1513 (2d Cir. 1997) .......... 18

*Valenti v. Penn Mut. Life Ins. Co.*,
850 F. Supp. 2d 445 (S.D.N.Y. 2012)....................21

*Vice v. Nat'l Collegiate Student Loan Tr. 2004-1*, Case No. 23-CV-6287, 2025 U.S. Dist. LEXIS 277503 (S.D.N.Y. Aug. 29, 2025) ....................17

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*,
Case No. 03-civ-8606, 2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sept. 29, 2004) ....................13

*Wight v. BankAmerica Corp.*,
219 F.3d 79 (2d Cir. 2000)....................25

*Zidell v. Citibank, N.A.*,
No. 25 Civ. 5245 (DEH), 2026 U.S. Dist. LEXIS 143880 (S.D.N.Y. June 29, 2026) ....................25

*Zottola v. Eisai Inc.*,
564 F.Supp.3d 302 (S.D.N.Y. Sept. 29, 2021) ....................8, 17

**STATUTES**

18 U.S.C.
§ 1344....................17
§ 1956(a) ....................18
§ 1961(4)....................9
§ 1961(5)....................15
§ 1962(c) ....................8, 9, 13, 15, 16, 17, 19, 21
§ 1962(d)....................16, 21, 22
§ 1964(c) ....................9, 19

**OTHER AUTHORITIES**

Fed. Rule Civ. 8 .................... 2, 18

Fed. Rule Civ. P. 9(b) .................... 1, 2, 8, 16, 17, 18, 25, 27, 28

Fed. R. Civ. P. 12(b)(6)....................1, 7, 8, 28

Defendant Dayna Corlito ("Corlito"), by and through her undersigned attorneys, respectfully submits this Memorandum of Law in support of her Motion to Dismiss Plaintiff P180, Inc.'s ("Plaintiff" or "P180") Amended Complaint (ECF No. 89) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises from the collapse of CaaStle, Inc. ("CaaStle"), formerly an on-line clothing rental subscription service co-founded by its CEO, Defendant Christine Hunsicker ("Hunsicker"). Hunsicker has admitted and pled guilty to fraudulently inducing investments in CaaStle by creating false financial documents that portrayed CaaStle as a wildly successful technology company when it was not. In this action, P180 alleges that Hunsicker, with the knowledge and assistance of fellow Defendants and CaaStle insiders Jaswinder Pal Singh ("Singh"), Georgiy Goldenberg ("Goldenberg"), Scott Callon ("Callon"), and Chirag Jain ("Jain"), made similar misrepresentations concerning CaaStle's financial success, subscriptions and technological capabilities to perpetrate a fraud upon P180. The purported purpose of the P180 fraud was to cover CaaStle's collapse, preserve the appearance of a viable business, avoid outside scrutiny, and extract or preserve financial benefits for Hunsicker and these insiders before the fraud became public.

By the Amended Complaint, P180 seeks to add Corlito to the mix, but it does not plead facts showing that Corlito was part of that alleged scheme. Instead, Plaintiff seeks to extend sweeping RICO and tort liability to Corlito based upon her title as CaaStle's Financial Controller, generalized allegations that she had access to financial information, and conclusory assertions that she was "involved" in fund flows. That is not enough.

The claims against Corlito rest on impermissible group pleading and speculation. The Amended Complaint does not allege that Corlito founded CaaStle, sat on the board of CaaStle or

P180, negotiated any P180 transaction, participated in any alleged merger strategy between the entities, communicated with P180 investors, attended any meetings at which misrepresentations were allegedly made, or made any statement to P180 on which P180 allegedly relied. Unlike the other Defendants, the Amended Complaint does not allege that Corlito received redemption proceeds, cashed out stock, obtained any personal payment, or otherwise profited from the alleged fraud. Nor does it identify any specific false financial statement, audit, bank record, email, communication, or report that Corlito allegedly created, altered, transmitted, approved, or supplied to P180, or even alleged that Corlito knew misrepresentations were allegedly being made to P180.

Instead, Plaintiff relies on conclusory allegations that Corlito, as Financial Controller, had "pervasive access" to ledgers and financial records, worked with auditors, repeated an explanation about an auditor change, and "would have been involved" in moving money. Those allegations do not satisfy Rules 8, 9(b), or 12(b)(6). A complaint must plead facts showing what Corlito herself did, when she did it, what she knew, how she knew it, and how her conduct caused P180's alleged injury. The Amended Complaint does none of that. It repeatedly places Corlito's name in lists of defendants and asserts that she "conspired," "facilitated," or was "involved," without pleading the factual content necessary to make those labels plausible.

The RICO claim fails for multiple independent reasons. Plaintiff does not plead facts showing that Corlito joined an association-in-fact enterprise, shared the alleged enterprise's purpose, or participated in the operation or management of that enterprise. At most, the Amended Complaint alleges that Corlito performed finance-related tasks as a CaaStle employee under Jain's direction and pursuant to a shared services arrangement. Ordinary employment functions do not establish RICO enterprise participation. Plaintiff also fails to plead that Corlito committed any predicate act of wire fraud, bank fraud, or money laundering. There is no specific

misrepresentation by Corlito, no false statement by her to a bank, no bank instruction she submitted, and no money laundering transaction pleaded with facts showing unlawful proceeds, knowledge, or concealment purpose.

The RICO conspiracy claim fares no better. Plaintiff does not plead nonconclusory facts showing that Corlito agreed to join any RICO conspiracy or knowingly agreed that predicate acts would be committed. The Amended Complaint's references to "Defendants" and the "Hunsicker Enterprise" cannot substitute for allegations of Corlito's own agreement, knowledge, or participation as required by settled law.

The state-law claims against Corlito likewise fail. The conversion claim is based on two alleged January 30, 2025 transfers totaling $1.3 million from P180 to Hunsicker's personal account. But the Amended Complaint does not allege that Corlito received, possessed, controlled, or exercised dominion over those funds. The aiding and abetting claims also fail because Plaintiff does not plead actual knowledge by Corlito of any fraud on P180 or any breach of fiduciary duty owed to P180, much less substantial assistance in either.

The Amended Complaint's allegations against Corlito are therefore not factual allegations of liability. They are inferences drawn from job title, access, and association. Because that is insufficient as a matter of law, all claims against Corlito should be dismissed.

## ALLEGATIONS IN AMENDED COMPLAINT

### A. General Allegations

To its investors, Hunsicker portrayed CaaStle as a successful technology "unicorn," but, in reality, the company was a failing, cash-burning business with few customers and limited cash. Am. Compl. ¶¶ 1, 49-58. Hunsicker was indicted and has pleaded guilty to securities fraud and admitted, among other things, that she altered audit materials, falsely inflated CaaStle's revenue, and fabricated bank account information. Am. Compl. ¶¶ 55-57, 295-298. No other CaaStle

employee has been indicted and, in her allocution, Hunsicker admitted acting alone and did not implicate any co-conspirators.

Based upon alleged misrepresentations by Hunsicker concerning CaaStle's financial success and technology, Brendon Hoffman ("Hoffman"), an apparel industry veteran, founded P180 in February 2024 as a joint venture with CaaStle ostensibly to marry his industry contacts with CaaStle's technological platform and subscriber base. Am. Compl. ¶¶ 117-128. CaaStle owned 25% of the venture and provided various accounting, marketing and technology services to P180 pursuant to a shared services agreement. Am. Compl. ¶¶ 128-131, 247.

The Amended Complaint alleges that, in realty, Hunsicker and fellow CaaStle directors and/or officers Jaswinder Pal Singh ("Singh"), Georgiy Goldenberg ("Goldenberg"), Scott Callon ("Callon"), and Chirag Jain ("Jain") formed an association-in-fact enterprise (the "Hunsicker Enterprise") to use P180 as a means to conceal CaaStle's problems and distribute proceeds of their fraudulent activities. Am. Compl. ¶¶ 3-8, 222-241. According to the Amended Complaint, after the alleged fraud at CaaStle threatened to become public, Hunsicker and her alleged cohorts pursued a plan to focus CaaStle's future on P180 and to pressure P180 into a merger or other transaction that would give CaaStle access to P180's real assets and business. Am. Compl. ¶¶ 222-241, 278-282.

The Amended Complaint alleges that P180 pursued transactions involving apparel businesses, including elysewalker, Altuzarra, and Vince, based on representations about CaaStle's scale, technology, logistics, and subscriber ecosystem. Am. Compl. ¶¶ 134-146, 257-258. According to P180, Hunsicker and Goldenberg attended or participated in certain meetings relating to those transactions and either made or failed to correct allegedly false statements about CaaStle's

capabilities in order to induce P180 to enter into these transactions and to borrow money from CaaStle for its acquisitions and operations. Am. Compl. ¶¶ 134-146, 307(a)-(e), 314(b)-(c).

P180 also alleges that funds were transferred from P180's Chase Bank account without authorization (Am. Compl. ¶¶ 149, 250, 318) and that at least $1.3 million of these funds were transferred to Hunsicker's personal account on or about January 30, 2025. Am. Compl. ¶¶ 149(a)-(d), 250(a)-(b), 318(b)-(e), 318(i)-(j), 328-334. Separately, P180 alleges that, as CaaStle's broader investor fraud was about to come to light, CaaStle funded substantial stock redemptions by Singh and Goldenberg (Am. Compl. ¶¶ 318(g) and (h)) and that, at Hunsicker's direction, CaaStle also redeemed the shares of investors to silence their concerns about fraud at CaaStle. Am. Compl. ¶¶ 318(a) and (f).

**B. Allegations against Corlito.**

Corlito was CaaStle's Financial Controller and operated under the direction of Jain, the company's Head of Finance and *de facto* CFO. Am. Compl. ¶¶ 23, 24. The Amended Complaint alleges generally that Corlito, as Financial Controller, had "pervasive access" to CaaStle's ledgers, revenue figures, financial statements, and reporting. Am. Compl. ¶ 84. It alleges that Jain and Corlito communicated with auditors and provided access to financial data. Am. Compl. ¶¶ 88-89. The pleading does not identify any specific CaaStle financial statement allegedly prepared, altered, falsified, transmitted, or approved by Corlito nor allege that Hunsicker provided Corlito with or otherwise told Corlito about, the false financial documents Hunsicker admittedly created on her own and distributed to CaaStle's investors. Am. Compl. ¶¶ 84-92, 308-310. Similarly, there are no allegations that the CaaStle's actual ledgers and financial books and records had been altered or falsified in any way.

With respect to the auditor issue, P180 alleges that CaaStle's outside auditor, BDO, resigned in October 2023 after learning that Hunsicker had imposed BDO's logo onto a falsified financial statement she created and sent to an investor. Am. Compl. ¶ 90. When questioned about this document in or about October 2023, Hunsicker "claimed that she had created the fake audit in connection with a lecture that she gave at Princeton University, and that sending the audit to [the investor] had been a one-time error, unrelated to the solicitation of any investment." Am. Compl. ¶ 105. While Hunsicker would later admit there was no such lecture (Am. Compl. ¶106), there are no allegations that Corlito was aware Hunsicker's explanation was false and since Hunsicker was a Princeton graduate with allegedly close ties to Princeton faculty like Singh (Am. Compl. ¶¶19, 61-71), there was no obvious reason to doubt Hunsicker.

Nonetheless, P180 alleges that Jain and Corlito concealed Hunsicker's actions by responding "No" to a new auditor's question asking whether there had been any recent fraud. Am. Compl. ¶ 91. The Amended Complaint further alleges that Jain developed a plan to tell others that the switch from BDO occurred as a "cost saving" measure and directed Corlito to repeat that explanation to employees, investors and others (Am. Compl. ¶¶ 91-92), but it does not identify the employees, investors, or stakeholders to whom Corlito allegedly made such statements, the dates of any such statements, the medium used, the exact content of any statement, or any specific statement made to P180. Am. Compl. ¶¶ 91-92.

The Amended Complaint alleges that Jain and Corlito "facilitated the buyback of shares" by Singh and Goldenberg (Am. Compl. ¶ 112), but it does not identify any specific buyback document Corlito prepared, any bank instruction she submitted, any communication she sent, any approval authority she exercised, or the specific role she allegedly played in any buyback. Am. Compl. ¶¶ 112, 152-160, 185. Similarly, in connection with investor redemptions, the Amended

Complaint alleges that Corlito "would have been involved" in "moving the money," "addressing or minimizing any concerns raised by other employees," and ensuring that bank accounts could handle redemptions. Am. Compl. ¶ 155. But, again, the pleading does not state what Corlito specifically did to facilitate the redemptions or identify any particular act, communication, authorization, or transaction instruction by Corlito. Am. Compl. ¶¶ 155, 185.

With respect to P180's bank accounts, the Amended Complaint alleges that, "[f]rom the beginning," Jain and Corlito "controlled" P180's bank account and fund flow under the shared services agreement. Am. Compl. ¶¶ 245, 247. The pleading does not allege the terms of the shared services arrangement, identify Corlito's account permissions, allege that Corlito had signatory authority, or identify any specific transfer instruction executed by Corlito. Am. Compl. ¶¶ 245-249. Further, while the Amended Complaint alleges that certain transfers were from P180's bank account in 2024 and early January 2025, Corlito's alleged involvement in these transactions is lumped together with that of Goldenberg, Hunsicker and Jain and pled generally, without elaboration, as "conspire[ing]" to make those transfers without authorization. Am. Compl. ¶¶ 149(a)-(d), 318(b)-(e). The Amended Complaint does not allege that Corlito initiated, approved, signed, transmitted, or personally directed any of those specific transfers. Am. Compl. ¶¶ 149(a)-(d), 318(b)-(e).

Against this backdrop, the Amended Complaint asserts five (5) claims against Corlito, including (1) violation of the RICO Act, (2) conspiracy to violate the RICO Act, (3) conversion, (4) aiding and abetting fraud and/or co-conspirator liability, and (5) aiding and abetting breach of fiduciary duty.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain sufficient factual matter that, "if accepted a true, states a claim for relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, where, as here, a complaint alleges fraud, the heightened pleading standard of Rule 9(b) applies. *See* Fed. R. Civ. P. 9(b). Under this standard, Plaintiff must plead each claim sounding in fraud with "particularity," including the "who, what, when, where, and how of the fraud." *Zottola v. Eisai Inc.*, 564 F.Supp.3d 302, 316 (S.D.N.Y. Sept. 29, 2021).

In determining whether Plaintiff satisfies the requirements of either Rule 12(b)(6) or Rule 9(b), the Court may consider well-pled allegations of fact as true and draw reasonable inferences therefrom, "but conclusions of law or unwarranted deductions of fact are not admitted" or to be considered on a motion to dismiss. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quotes and citations omitted). Thus, a complaint must be dismissed where it fails to put defendant on notice of the nature of a plaintiff's claims and "tenders naked assertions devoid of further factual enhancement" that are "merely consistent with a defendant's liability…" *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 557); *see also Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678) (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As against Corlito, the Amended Complaint does not meet the requirements of Rule 12(b)(6) or Rule 9(b) and should be dismissed.

## <u>POINT I</u>

## <u>PLAINTIFF FAILS TO PLEAD A SUBSTANTIVE RICO VIOLATION (18 U.S.C. § 1962(c))</u>

RICO claims are notorious for their unusual potency and "inevitable stigmatizing effect," as Courts in this Circuit highlight the need to "flush out frivolous RICO allegations at an early stage of litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (noting that RICO is "the litigation

equivalent of a thermonuclear device"); *see also Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (same and noting that civil RICO claims are looked at "with particular scrutiny … to ensure that the Statute is used for the purposes intended by Congress."). P180's RICO claim here is exactly the type of "frivolous RICO allegation" courts warn of: an attempt to piece together disjointed acts of wire fraud, bank fraud, and money laundering to concoct a RICO claim against Corlito.

Section 1964(c) of the RICO Act ("civil RICO") provides a civil remedy to private parties who suffer injuries to their business or property, caused by a defendant's violation of Section 1962 of the RICO Act ("substantive RICO"). *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court…"). When asserting a civil RICO claim under Section 1964, plaintiff must first establish its Section 1962(c) substantive RICO claim. To plead a Section 1962(c) substantive RICO claim, plaintiff must assert facts sufficient to establish (1) the existence of an enterprise with activities affecting interstate commerce, (2) which a defendant conducted the affairs of (3) through a pattern (4) of racketeering activity. *See* 18 U.S.C. § 1962(c); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (S.D.N.Y. 2001) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Each of these elements "must be established as to **each** individual defendant." *DeFalco*, 244 F.3d at 306 (emphasis added). The Amended Complaint does not sufficiently allege any of these elements as against Corlito.

**A. Plaintiff Fails to Plead an "Association-in-Fact" Enterprise**

As a threshold matter, Plaintiff fails to meet its burden on the "enterprise" element of its RICO claim. An "association-in-fact" enterprise arises when a group of people associate together for the common purpose of engaging in a course of conduct. *Boyle v. United States*, 556 U.S. 938, 946 (2009) (*citing United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also* 18 U.S.C. §

1961(4) ("enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity). While *Boyle* does not require a formal enterprise structure with a rigid hierarchy, it still requires relationships among the associates sufficient to show that they function together as a unit. *Boyle*, 556 U.S. at 946. Proof that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, . . . [is] not . . . enough to show that the individuals were members of an enterprise." *Id.* at 947, n.4. The various defendants must be tied together into a "single entity" that functions as a "continuing unit" to carry out a common purpose. *See e.g.*, *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (there must be something that "ties together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together—acting in concert…"). With respect to Corlito, the Amended Complaint does meet this standard because it fails to plead sufficient relations between Corlito and the other Defendants or that Corlito shared a common purpose with the other members of the alleged Hunsicker Enterprise.

The Amended Complaint contains no facts showing that Corlito had a relationship with Hunsicker, Singh, Goldenberg, or Callon outside ordinary corporate functions. It alleges no meetings in which Corlito joined enterprise planning, no communications in which she agreed to a fraudulent objective, no role in strategy concerning P180, and no facts tying her to the alleged long-running insider group "centered around" Hunsicker and "her various fraudulent business ventures, including her corruption of what was formerly Gwynnie Bee and later CaaStle and her efforts to take control of P180." Am. Compl., ¶300 (emphasis added), ¶302 (describing Hunsicker as the "lynchpin" of the alleged enterprise), ¶58 ("This is just a sampling of *Hunsicker's* fraud; it

was absolutely pervasive and infected virtually every number or metric *she presented* to any stakeholder.”).

The only specific relationship alleged is that Corlito worked under Jain in a finance function at CaaStle. Such ordinary business relationships are insufficient to establish that Corlito was part of an association-in-fact enterprise. Thus, in *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004), the Second Circuit held that allegations of routine business relationships and ordinary interactions among individuals and entities did not plausibly establish the existence of a RICO enterprise. Similarly, in *D. Penguin Bros. Ltd. v. City National Bank*, 587 F.App’x 663, 667 (2d Cir. 2014), the Second Circuit affirmed dismissal where the allegations demonstrated nothing more than ordinary business dealings among participants rather than the operation of a distinct racketeering enterprise. The same result is warranted here.

The Amended Complaint also contains no allegations that Corlito knew of, let alone agreed to participate in, the enterprise’s alleged purpose. The supposed purpose of the enterprise was to enrich insiders, conceal CaaStle’s fraud, and ultimately seize or control P180’s assets. But the Amended Complaint does not allege that Corlito held equity, received any redemption payment, sat on either company’s board, participated in merger discussions, negotiated the alleged P180 loan, communicated with P180 investors, made any alleged misrepresentation to P180, or stood to obtain any enterprise-level gain. The Amended Complaint alleges lucrative redemptions to Singh and Goldenberg, but it alleges no comparable benefit to Corlito. Absent facts showing that she shared the alleged enterprise’s objective, the complaint pleads no more than employment by a company in which others allegedly committed fraud.

Further, while the Amended Complaint alleges coordination between Hunsicker and other Defendants to carry out the fraud, there are no allegations that Corlito was involved in or even

aware of these transactions. *See e.g.*, Am. Compl., ¶¶137, 145. Specifically, when discussing the Altuzarra and Vince transactions, the Amended Complaint alleges that Singh, Goldenberg, Callon, and Hunsicker "inarguably knew that CaaStle was a fraud," could not fulfill its promises, and that P180 was under an incorrect assumption as to CaaStle's affairs. Am. Compl., ¶145(d). The Amended Complaint, however, fails to plead any facts indicating that Defendant *Corlito* had knowledge of the scheme of the alleged Hunsicker Enterprise to defraud P180 and the claims against her should be dismissed. *See e.g., Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. June 30, 2022) (RICO claim not pled where "it does not appear from the allegations in the complaint that [two sets of defendants] were even aware of the extortionate conduct of [another set of defendants]" (*quoting Godlewska v. Human Dev. Ass'n*, No. CV-03-3985 (DGT), 2005 U.S. Dist. LEXIS 36998, at *22 (E.D.N.Y. Jul. 18, 2005)); *see also, D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018) (internal quotation omitted) (collecting cases) (proof that individuals, independently and without coordination, engaged in RICO predicate acts is insufficient to prove an enterprise).

While the Amended Complaint alleges that other Defendants "knew the [Vince] transaction was proceeding on" P180's false assumptions about CaaStle technology and "knew about the falsified business records at CaaStle" and "knew that the [Vince] transaction had little value," there are no allegations that Corlito was remotely involved to plausibly infer she had knowledge of any allegedly fraudulent transaction other Defendants may have induced Plaintiff into. Am. Compl., ¶145(d); *see also e.g., id.* at ¶314(b) ("Thus, the Hunsicker Enterprise members, who were also directors of CaaStle, conspired to approve this fraudulent loan despite liquidity issues at CaaStle.").

Ultimately, given the lack of relations, coordination, and even awareness of supposed associates and scheme, Plaintiff fails to infer plausibly that all Defendants were woven together into a single or continuing unit to pursue to common purpose of defrauding P180.

### B. Plaintiff Fails to Plead Corlito's Participation in the Operation or Management of Any Alleged Enterprise

To state a claim under 18 U.S.C. § 1962(c), Plaintiff must plausibly allege that Corlito participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). She cannot be liable as a culpable party merely because she "provided services that were helpful to the enterprise." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 307 (S.D.N.Y. 2010). Rather, Plaintiff must allege that Corlito had "some degree of control over the enterprise." *Elsevier*, 692 F.Supp.2d at 307; *see also Reves*, 507 U.S. at 179 ("some part in directing the enterprise's affairs is required"). Plaintiff's generalized and conclusionary allegations that Corlito "participated in," had "management authority," "assisted in" or was "involved" in Hunsicker's fraudulent scheme are not sufficient to show control. Am. Compl. ¶¶102, 113, 152, 155; *see Lippe v. Bairnco Corp.*, 218 B.R. 294, 304 (S.D.N.Y. 1998) (dismissing RICO claims where plaintiff's only allegations of participation were that defendants "knowingly, intentionally or recklessly assisted in effecting" the allegedly fraudulent transactions). Plaintiff is required to plead factual allegations regarding how Corlito "enjoyed discretionary authority" over some key aspect of the Enterprise, *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, Case No. 03-civ-8606, 2004 U.S. Dist. LEXIS 19501 at *45 (S.D.N.Y. Sept. 29, 2004), such that she is "a necessary tool for the schemes' operation." *D'Addario*, 901 F.3d at 103 (2d Cir. 2018) (*citing Reves*, 507 U.S. at 184). Plaintiff has failed to do so.

Plaintiff cannot point to any nonconclusory fact pleaded in the Amended Complaint from which it can be inferred that Corlito directed or controlled any aspect of the alleged Hunsicker

Enterprise's affairs so as to render her a "necessary tool for the schemes' operation" against P180. Rather, the Amended Complaint indicates that Hunsicker is the lynchpin, "but is not solely responsible for its operation and managements, and others may be involved as well, including on information and belief other CaaStle board members." *See* Amended Complaint, ¶302. This assertion is critical here give that there are no allegations that Corlito was a CaaStle or P180 Board member, attended board meetings with other Defendants, or coordinated with other Defendants to carry out the elyswealker, Alturazaara, or Vince transactions, all of which were allegedly carried out by Hunsicker with some degree of participation by Singh, Goldenberg, and Callon. *See e.,g*, Am. Compl., ¶145(d). The Amended Complaint's exclusion of Corlito from these allegedly fraudulent actions in furtherance of the scheme to defraud and takeover P180 with other Defendants reflects her exclusion from the conduct/directing of the Hunsicker Enterprise's affairs.

The Amended Complaint relies on conclusive assumptions regarding Corlito's involvement with some Defendants by virtue of her employment at CaaStle. The Amended Complaint alleges that Corlito worked with CaaStle's "Head of Finance and de facto CFO" Jain, Hunsicker, and assisted Goldenberg, who had "control of the finances," by ensuring "CaaStle's bank accounts retained enough cash assets to permit the redemption." *See e.g.*. Am. Compl., ¶¶88, 91, 113. At best, this indicates that Corlito was employed by CaaStle and interacted with some high-level executives in carrying out conduct related to her role at CaaStle – she did her job. Stating that Corlito was involved in transactions made under the direction of her superior and pursuant to a shared services arrangement does not give rise to an inference that Corlito directed the affairs of the alleged Hunsicker Enterprise in furtherance of defrauding P180. *See e.g.*, *D'Addario*, 901 F.3d at 103 (a RICO defendant will not be liable for mere participation in a racketeering act, but will sustain liability under the statute for participation in the operation or

management of an enterprise through a pattern of racketeering activity). Impermissibly offering "labels and conclusions" based on Corlito's job title at CaaStle, coupled with "formulaic recitation of the elements of a cause of action" will not suffice to support a Section 1962(c) RICO claim. *Levin v. Javeri (In re Firestar Diamond, Inc.)*, 654 B.R. 836, 863 (Bankr. S.D.N.Y. 2023), *quoting*, *Twombly*, 550 U.S. at 555.

### C. Plaintiff Fails to Plead Corlito's Participation in a "Pattern of Racketeering Activity"

Even assuming that Plaintiff sufficiently pled an association-in-fact enterprise, Plaintiff nonetheless fails to establish a pattern of racketeering activity through Corlito's involvement in two predicate acts. When pleading a violation of § 1962(c), Plaintiff must allege that each Defendant engaged in a "pattern of racketeering activity." *First Capital Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (*citing Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity, and the predicate acts must be sufficiently "related" to one another and "amount to, or pose a threat of, continuing criminal activity." *See* 18 U.S.C. § 1961(5); *see also Holmes v. Parade Place, LLC*, No. 12 Civ. 6299 (GBD)(DF), 2013 U.S. Dist. LEXIS 138645, at *10-11 (S.D.N.Y. Sep. 25, 2013) (*quoting Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 96 (2d Cir. 1997)).

In its Amended Complaint, Plaintiff cites three categories of predicate acts – alleged wire fraud, bank fraud, and money laundering. Am. Compl., ¶¶ 306, 316. However, the Amended Complaint wholly fails to allege sufficiently that Corlito committed any predicate acts constituting an individual, rather than collective, pattern with the requisite particularity

**1. <u>Wire Fraud</u>**

Plaintiff attempts to rope Corlito into its wire fraud claim through conclusive group pleadings and supposed involvement solely through other Defendants' conduct and her role at CaaStle. Any allegations in a complaint grounded in fraud trigger Rule 9(b), requiring the plaintiff to plead the circumstances of each fraud-based claim with particularity. *See* Fed. R. Civ. Proc. 9(b); *see also First Capital Asset Mgmt.*, 385 F.3d at 179-80 (*quoting Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (when alleging the particular details of fraud, plaintiff "must allege facts that give rise to a *strong* inference of fraudulent intent")). Further, Section 1962(c) requires its elements to "be established as to each individual defendant." *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)."). Plaintiff has not met this standard.

For the wire fraud claim, the Amended Complaint recounts eight (8) meetings involving Hoffman and/or Hunsicker and/or Goldenberg dealing with affairs related to the elysewalker, Altuzarra, and Vince transactions, which Plaintiff alleges was "in furtherance of their conspiracy to defraud P180 of its money and assets." Am. Compl., ¶307(a)-(e). The Amended Complaint also refers to two (2) examples involving other Defendants' alleged misrepresentations and omissions throughout the Vince transaction with P180. Am. Compl., ¶314 (a)-(c). None of the above-mentioned meetings or examples are alleged to have specifically included Corlito, let alone identify the speaker and the specific content of the alleged misrepresentations as required under Rule 9(b). *See Cogen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("To satisfy [Rule 9(b)], a complaint must 'specify the time, place, speaker, and content of the alleged

misrepresentations . . . '") (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)). P180 does not even allege Corlito knew of the meetings or the misrepresentations allegedly made at those meetings.

Plaintiff's effort to escape this pleading flaw by including "Defendants" within its wire fraud allegations is insufficient to impose liability upon Corlito. Am. Compl., ¶¶307(a)-(e), 314 (a)-(c). Courts have long recognized that "lumping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required." *Gross v. Waywell*, 628 F.Supp.2d 475, 495 (S.D.N.Y. 2009).

Similarly insufficient is Plaintiff's vague assertion that Corlito falsified "financial documents regarding growth, business metrics, and finances." Am. Compl., ¶¶308, 310. The Amended Complaint does not identify the documents that Corlito allegedly falsified, explain how they were false, or identify to whom such false documents were provided. The failure to identify the "who, what, when, where, and how of the fraud" renders these allegations inadequate to satisfy the particularity requires of Rule 9(b). *Zottola*, 564 F.Supp.3d at 316.

**2. <u>Bank Fraud</u>**

To plead a bank fraud under Section 1344, Plaintiff must plausibly allege facts showing that Corlito knowingly participated in a scheme to defraud a financial institution or knowingly obtained property under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises. *See* 18 U.S.C. § 1344; *Loughrin v. United States*, 573 U.S. 351, 355-66 (2014). While Plaintiff need not allege that Corlito intended to defraud the bank itself, it is required to plead that Corlito intended to obtain bank property and did so "by means of" a false statement. *Loughrin*, 573 U.S. at 365. As with any fraud claim, Plaintiff must plead such statements with particularity and the failure to do so is fatal it is claim. *See Vice v. Nat'l Collegiate Student Loan Tr. 2004-1*, Case No. 23-CV-6287, 2025 U.S. Dist. LEXIS

277503, at *45 (S.D.N.Y. Aug. 29, 2025) (dismissing RICO claims for failure to plead "predicate acts of mail fraud, wire fraud or bank fraud with the particularity required by Rule 9(b)").

The Amended Complaint identifies twelve (12) purported transfers allegedly constituting bank fraud. Am. Compl. ¶318(a)-(k). However, it does not allege that Corlito made any misrepresentation to Chase Bank or any other financial institution with respect to these transfers, deceived any bank employee, submitted any false bank instruction, possessed signatory authority over any P180 account, or obtained bank-controlled property by means of a false statement. Instead, it alleges in conclusory group fashion that Corlito was "involved" in or "conspired" to transfer funds. Those allegations do not plead bank fraud, satisfy the particularity requirements of Rule 9(b) nor demonstrate that Corlito herself participated in an act that could plausibly be deemed to constitute bank fraud and thus, P180's RICO claims against Corlito should be dismissed. *Id.*

**3. <u>Money Laundering</u>**

To state a claim for money laundering Section 1956, Plaintiff must plead that: (i) Corlito conducted a financial transition; (iii) the transaction involved the proceeds of specified unlawful activity; (iii) Corlito knew that the funds involved in the financial transaction represented the proceeds of the unlawful activity; and (iii) Corlito knew that the financial transaction was designed to conceal or disguise the source, ownership or control of the proceeds. *See* 18 U.S.C. 1956(a); *United Stats v. Maher*, 108 F.3d 1513, 1527-1528 (2d Cir. 1997) (elements of money laundering). While money laundering claims are not subject to the heightened pleading standard of Rule 9(b), Plaintiff "must still adequately plead all elements of the offenses in compliance with Rule 8." *Jus Punjabi, LLC v. Get Punjabi, Inc.*, Case No. 14-cv-3318, 2015 U.S. Dist. LEXIS 66006, at *18 (S.D.N.Y. May 20, 2015). Such pleading requires more than just a formulaic recital of the statutory elements. Plaintiff must allege some facts from which the existence of these elements may at least be reasonably inferred. *See Bernstein v. Misk*, 948 F.Supp. 228, 236 n.2 (E.D.N.Y. 1997) (holding

that "conclusory statements . . . unsupported by any facts in the complaint . . . fail to satisfy the essential elements of the" money laundering statutes). Plaintiffs have not met this standard.

Plaintiff alleges the same twelve (12) transactions comprising its bank fraud claims also comprise its money laundering claims. Am. Compl. ¶318(a)-(k)). Other than the approximate dates and amounts of the transactions, the Amended Complaint contains no other factual details of the transactions and summarily asserts that Corlito transferred funds with the requisite knowledge and purpose to sustain a money laundering claim. Blanket recitals of the money laundering elements without further elaboration are insufficient to sustain a claim for money laundering and this claim should be dismissed. *Bernstein*, 948 F.Supp. at 236 n.2; *Jus Punjabi*, 2015 U.S. Dist. LEXIS at *18-22; *Casio Computer Co. v. Sayo*, Case No. 98-civ-3772, 1999 U.S. Dist. LEXIS 14675 at *55 (S.D.N.Y. Sept. 20, 1999) (dismissing money laundering claims because there was no "factual support" for its formulaic assertion of the claim's statutory elements).

**D. Plaintiff Fails to Plead Plausible Causation Between Corlito's Conduct and the Alleged Harm**

Section 1964(c) provides a civil RICO remedy for a party who is injured "by reason of a violation of Section 1962…" 18 U.S.C. § 1964(c)); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 654-55 (S.D.N.Y. 1996) ("Although essentially a criminal statute, RICO provides for civil penalties by private parties who have been injured 'by reason of' a RICO violation."). To prove a claim under this section, Plaintiff must establish that its alleged injury was caused by the RICO violation. *See D'Addario*, 901 F.3d at 96. The statute's "by reason of" language requires a direct relation between Plaintiff's asserted injury and Corlito's alleged commission of racketeering activity. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)) (requiring direct causation and noting that foreseeability alone is insufficient); *see also Anza v. Ideal Steel Supply Corp.*, 547

U.S. 451, 461 (2006) (the central question for RICO claim causation is "whether the alleged violation led directly to the plaintiff's injuries").

Here, the Amended Complaint fails to establish a direct relation between Plaintiff's alleged injury and any alleged RICO acts carried out by Corlito. The Amended Complaint centers around Hunsicker's fraud and allegedly fraudulent loans/transactions involving CaaStle, P180, and other third-parties like elysewalker, Altuzarra, and Vince – there are no allegations that Corlito was remotely involved or privy to these events. Am. Compl., ¶145, ¶307 (a)-(e) (recounting alleged instances of wire fraud by Hunsicker and other Defendants in carrying out the elysewalker, Altuzarra, and Vince transactions), ¶314(b) (recounting other Defendants' meetings and misstatements/omissions surrounding the same transactions). Plaintiff's articulated harm flows from and was directly caused by omissions/misrepresentations by *Hunsicker* in the course transacting/conducting business between CaaStle and P180, and through *Hunsicker's* falsification of financial documents and metrics. Am. Compl., ¶¶56, 57, 90, 273 (stating that *Hunsicker* explicitly falsified and distributed inflated financial documents and metrics). Plaintiff cannot save its claim against Corlito by pointing to Hunsicker's or other Defendants' conduct.

Plaintiff's harm is also "too remote" and attenuated. *See e.g., DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 650 (S.D.N.Y. 2011) (*quoting Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010) (*quoting Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992))). Courts have acknowledged "twin requirements" in the context of RICO causation: (1) the injury is the "first step" harm caused by the conduct, and (2) the conduct is "directly responsible" for the harm instead of "simply allowing that harm to come about more easily." *See DDR Constr. Servs.*, 770 F. Supp. at 651 (*quoting Hemi Group, LLC*, 559 U.S. at 10). Here, Plaintiff's alleged harm flowing from any of the elysewalker, Altuzarra, or Vince transactions is



52395521v.1

not the "first step" of harm caused by any conduct of Corlito. The Amended Complaint does not include Corlito in any coordination, discussions, meetings, or even awareness of any of those transactions to plausibly infer that Corlito could have caused Plaintiff's harm. Any conduct allegedly attributable to Corlito, including transfers from CaaStle to investors (Am. Compl., ¶318 (a), (e), (f)) and transfers from P180's bank account pursuant to a shared services arrangement (Am. Compl., ¶247), are not "directly responsible" nor the "first step" of Plaintiff's alleged harm. Accordingly, the Amended Complaint fails to establish that Plaintiff was harmed "by reason of" any alleged RICO acts carried out by Corlito and the RICO claims against her should be dismissed.

## POINT II

## PLAINTIFF FAILS TO PLEAD A RICO CONSPIRACY (18 U.S.C. § 1962(d))

### A. Plaintiff's Failure to Plead a Section 1962(c) Substantive Claim Necessarily Dooms the RICO Conspiracy Claim.

Section 1962(d) of the RICO act ("conspiracy RICO") prohibits any person from conspiring to violate subsections (a)-(c). 18 U.S.C. § 1962(d). To establish a Section 1962(d) claim, plaintiff must allege (1) a conspiracy to violate substantive RICO, (2) "that defendant agreed to join in, and knowingly participated in, that conspiracy," and (3) that defendant acted in furtherance of the conspiracy in some way. *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 137 (S.D.N.Y. 2023) (*quoting Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019)); *see also Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2012) (citations omitted) (stating what plaintiff must plead for a RICO conspiracy claim). Specifically, plaintiff must establish agreement/knowing participation "as to **each** alleged co-conspirator" using nonconclusory allegations. *Valenti*, 850 F. Supp 2d at 450 (emphasis added); *see also Abbot Labs v. Adelphia Supply USA*, Case No. 15-cv-5826, 2017 U.S. Dist. LEXIS 1007 at *35-36 (S.D.N.Y. Jan. 4, 2017)

(conclusory allegations of knowledge and agreement are not sufficient to support a RICO conspiracy claim).

The Amended Complaint also does not articulate a single fact indicating that Corlito "agreed to join in, and knowingly participated in" any conspiracy to defraud Plaintiff specifically. *Bayshore Cap. Advisors, LLC*, 667 F. Supp. 3d at 137 (citation omitted); *see also See Lanzaro-Brunstein v. Creative Portal LLC*, No. 25-cv-5905 (NSR), 2026 U.S. Dist. LEXIS 132082, *12-13 (S.D.N.Y. June 12, 2026) (dismissing Section 1962(d) claim and noting that the complaint did not allege nonconclusory facts showing agreement among defendants to commit RICO scheme). The Amended Complaint's exclusion of Corlito from major P180 transactions, all meetings, decisions/decision-making abilities, fraudulent falsifications of finances, and monetary benefits reflects Corlito's absence from CaaStle-P180 affairs. Excluding Corlito from these key, allegedly fraudulent events involving P180 does not and cannot suggest Corlito assented to or even knew of any alleged conspiracy to defraud P180.

## POINT III

## PLAINTIFF FAILS TO PLEAD A CLAIM FOR CONVERSION

To state a claim for conversion under New York law, a plaintiff must allege: (1) a possessory right or interest in identifiable property, and (2) defendant's dominion over or interference with that property in derogation of plaintiff's rights. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). The Amended Complaint fails to plausibly allege that Corlito exercised dominion or control over any P180 funds.

The conversion claim is based entirely on two transfers allegedly made on January 30, 2025, totaling $1.3 million from P180 to Hunsicker's personal account. The Amended Complaint alleges only that "Hunsicker, Goldenberg, Jain, Corlito, and Singh caused" the transfers to occur

and that Corlito, along with others, exercised dominion over the funds. *See* Amended Complaint, ¶¶ 328, 331. However, these allegations are wholly conclusory and unsupported by any nonconclusory factual allegations explaining what Corlito purportedly did, how she participated in the transfers, whether she authorized them, initiated them, controlled them, or received any of the funds. Absent allegations establishing that Corlito, personally, exercised dominion and control over the $1.3 million, the conversion claims against her must be dismissed. *See Abrams v. Pecile*, 84 A.D.3d 618, 618-19 (1st Dep't 2011) (affirming dismissal of conversion claims against individual because complaint contain no allegations that individual possessed converted property or participated in any decision not return the property upon demand); *Eklund v. Pinkey*, 27 A.D.3d 878, 879 (3rd Dep't 2006) ("Plaintiffs were required to set forth more than vague and conclusory allegations of conversion and such charges had to be supported by factual assertions of specific wrongdoing."); *Old Republic Natl. Tit. Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2nd Dep't 2005) (conversion claim dismissed because complaint failed to allege specific facts demonstrating that defendants had "title, possession, or control over any money or property allegedly converted by them.")

Indeed, the Amended Complaint affirmatively alleges that the transferred funds went to Hunsicker's personal account, not to Corlito. *See* Am. Compl., ¶ 328. It contains no allegation that Corlito received any portion of the money, held the funds, benefitted from the transfers, or exercised independent authority over P180's account. Nor does it allege that the funds passed through CaaStle's accounts.

New York courts routinely dismiss conversion claims where a defendant is alleged merely to have facilitated, processed, or participated in a transaction without obtaining possession of or exercising independent control over the property. *See Montalvo v. J. Petrocelli Constr., Inc.*, 8

A.D.3d 173, 174 (1st Dep't 2004) (dismissing conversion claim where allegations failed to demonstrate defendant exercised unauthorized dominion over funds); *Fiorenti v. Central Emergency Physicians, PLLC*, 305 A.D.2d 453, 454 (2d Dep't 2003) (conversion claim requires actual dominion and control over property); *Meese v. Miller*, 79 A.D.2d 237, 242-43 (4th Dep't 1981) (mere participation in a transaction does not constitute conversion absent unauthorized control over the property).

Moreover, Plaintiff's conversion claim also impermissibly relies on collective group pleading. It repeatedly alleges that multiple defendants together "caused" the transfers and exercised dominion over the funds without identifying any specific conduct attributable to Corlito. Such undifferentiated allegations are insufficient to state a claim because liability for conversion must be predicated on facts showing the defendant's own exercise of dominion and control over the property. *See Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) (conclusory allegations insufficient to state a claim); *Skillgames, LLC v. Brody*, 1 A.D.3d 247, 252 (1st Dep't 2003) (conversion requires factual allegations demonstrating dominion and control by the particular defendant). On this additional ground, the conversion claim as against Corlito must be dismissed.

## POINT IV

## PLAINTIFF FAILS TO PLEAD CLAIMS FOR CO-CONSPIRATOR LIABILITY AND AIDING AND ABETTING FRAUD

### A. Co-Conspirator Liability Under New York Law

The claim for co-conspirator liability against Corlito necessarily fails because there is no independent cause of action for civil conspiracy under New York law, and one cannot aid and abet a tort that does not exist. *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*, 174 A.D.3d 473, 474 (1st Dep't 2019) (dismissing the civil conspiracy claim because



52395521v.1

civil conspiracy is not recognized as an independent tort in New York). Thus, Plaintiff's claim for co-conspirator liability against Corlito should be dismissed.

### B. Plaintiff Fails to Plead Knowledge and Substantial Assistance in its Aiding and Abetting Fraud Claim

To establish liability for aiding and abetting fraud under New York law, plaintiff must show that a defendant had "knowledge of the fraud" and provided "substantial assistance" to advance the fraud. *Zidell v. Citibank, N.A.*, No. 25 Civ. 5245 (DEH), 2026 U.S. Dist. LEXIS 143880, *4 (S.D.N.Y. June 29, 2026) (*quoting Abu Dhabi Coin. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 186-87 (S.D.N.Y. 2009); *see also Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*, 64 A.D.3d 472, 476 (N.Y. App. Div. 2009) (same).

Aiding and abetting fraud claims are subject to the heightened pleading requirement of Rule 9(b). *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) *(citing Armstrong v. McAlpin*, 699 F.2d 79, 92-93 (2d Cir. 1983)) (applying New York law to an aiding and abetting fraud claim and explaining that "plaintiffs . . . have failed to allege actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (applying Rule 9(b) to aiding and abetting fraud claims).

The Amended Complaint does not adequately allege that Corlito had actual knowledge of the "underlying fraud on P180 perpetrated by Hunsicker, Singh, and Goldenberg…" Am. Compl., ¶362; *see e.g., Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (actual knowledge is required under New York law for aiding and abetting claim); *see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) ("Allegations of constructive knowledge or recklessness are insufficient… The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.").

Plaintiff alleges that Corlito "had known about the fraud at CaaStle since October 2023 at the latest," but this cannot be converted into actual knowledge of the alleged "Hunsicker, Singh, and Goldenberg" or any defrauding of P180. *See Id.*, at ¶363. Plaintiff conflates Corlito's alleged knowledge of fraud at CaaStle by virtue of her job, with knowledge of a convoluted scheme by "Hunsicker, Singh, and Goldenberg" to defraud P180.

Plaintiff also alleges that "Defendants" substantially assisted by "failing to report the fraud publicly, approving a loan of over $5,000,000 to induce the purchase of Vince despite knowing of CaaStle's fraud." Am. Compl., ¶364. Yet the allegation that "Defendants" provided substantial assistance with the Vince loan is not attributable to Corlito in light of her removal from any elysewalker, Altuzarra, or Vince transactions, discussions, or decisions while employed by CaaStle. *See e.g.*, Am. Compl., ¶364; *see also* Am. Compl., ¶ 227 (Jan. 3, 2025 CaaStle Board Meeting without Corlito); ¶ 201 (Dec. 2024 Board Meeting without Corlito); ¶ 227 (Jan. 2025 Board Meeting without Corlito). At best, the Amended Complaint alleges Corlito had knowledge of and provided substantial assistance to CaaStle affairs and outside auditors through her employment. *See e.g.*, Am. Compl., ¶¶ 48, 84, 245, 247.

The Amended Complaint does not allege that Corlito provided any assistance through, for example, the falsification of documents as to defraud P180. The Amended Complaint clearly alleges a pattern of Hunsicker's falsification of the documents, that were then allegedly relied on by Plaintiff. *See e.g.*, Am. Compl., ¶56, ¶57 ("Hunsicker provided investors with an array of false documents, including falsely inflated income statements, fake audited financial statements, and fictitious bank account records"), ¶90 ("…Hunsicker used its [auditor] logo in connection with falsified numbers…"), ¶273 ("She [Hunsicker] stated that she [Hunsicker] had been falsifying

financial data since the beginning of 2019."). Thus, the Amended Complaint fails to plead a claim for aiding and abetting fraud against Corlito.

## POINT V

## PLAINTIFF FAILS TO PLEAD A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To prove a claim for aiding and abetting breach of fiduciary duty, plaintiff must show (1) a breach by a fiduciary of obligations, (2) defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach. *See Kaufman v. Cohen*, 307 A.D.2d 113, 125 (N.Y. App. Div. 2003) (*citing S & K Sales Co. v. Nike, Inc*., 816 F.2d 843, 847-848 (2d Cir. 1987)). Additionally, an aiding and abetting breach of fiduciary duty claim requires a strong inference of actual knowledge. *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996); *see also Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987) ("Actual knowledge, not mere notice or unreasonable awareness, is . . . essential."); *see also Marine Midland Bank v. Smith*, 482 F. Supp. 1279, 1290 (S.D.N.Y. 1979) (no liability for aiding and abetting breach of fiduciary duty where defendant was "not aware of conduct which it knew to constitute a breach of duty"), *aff'd*, 636 F.2d 1202 (2d Cir. 1980).

Similar to many of Plaintiff's other claims, a claim for aiding and abetting breach of fiduciary duty is subject to Rule 9(b)'s heightened pleading standard. *See Kolbeck*,, 939 F. Supp. at 245 (*citing S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987)) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim because the underlying primary violation was based on fraud).

Here, the Amended Complaint cannot sustain a claim of aiding and abetting breach of fiduciary duty. The Amended Complaint does not allege that Corlito "induced or participated" in Hunsicker and Goldenberg's alleged breach of fiduciary duties to P180. Rather, Plaintiff simply

alleges that "Defendants provided substantial assistance in breaching fiduciary duties" through the "fraudulent loan to P180 and inducing the purchase of a controlling interest in Vince." Am. Compl., ¶ 371. As noted above, Corlito herself was not alleged to be remotely involved in any meetings or discussions regarding P180, nor any of the elysewalker, Altuzarra, and Vince transactions, and certainly not the loans nor purchase of any interest in Vince. *See e.g.*, Am. Compl., ¶¶137, 145, 307(a)-(e). Plaintiff does not plausibly allege that Corlito had actual knowledge of Hunsicker and Goldenberg's alleged breach of fiduciary duties to Plaintiff. Merely stating that "Defendants knew about these fiduciary duties and knew or should have known that the actions of the Hunsicker Enterprise would cause the breach of these fiduciary duties" (Am. Compl., ¶370) will not suffice to show actual knowledge, let alone satisfy any pleading standard under Rule 9(b). And it is well established that Plaintiff cannot assert that Corlito "should have known" of Hunsicker and Goldenberg's alleged fiduciary duty breaches because constructive knowledge is insufficient to support an aiding and abetting claim.

## CONCLUSION

For the reasons stated above, the claims for civil RICO, RICO conspiracy, conversion, and both aiding and abetting claims against Corlito should be dismissed pursuant to Fed. Rule Civ. Proc. 12(b)(6) and 9(b).

Respectfully Submitted,

WHITE AND WILLIAMS LLP

*/s/ Thomas E. Butler*

Thomas E. Butler
Stuart J. Wells
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 714-3070
butlert@whiteandwilliams.com
wellss@whiteandwilliams.com
*Attorneys for Defendant Dayna Corlito*

## CERTIFICATION OF COUNSEL

I, Stuart J. Wells, the attorney for Defendant Dayna Corlito, hereby certify that this **MEMORANDUM OF LAW** is in compliance with Local Civil Rule 7.1(c). The **MEMORANDUM OF LAW** was prepared using Microsoft Word. The typeface is Times New Roman. The main body of the **MEMORANDUM OF LAW** is in 12-point font with 1-inch margins throughout, and contains 8,542 words, as counted by the word-processing program.

By: */s/ Stuart J. Wells*
*Attorney for Defendant*
*Dayna Corlito*