**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
P180, INC.,

Plaintiff,

-against-

JASWINDER PAL SINGH, CHRISTINE HUNSICKER, GEORGE GOLDENBERG, SCOTT CALLON, CHIRAG JAIN, DAYNA CORLITO, AND DOES 1-50,

Defendants.
------------------------------------------------------

CIV NO. 25-CV-04432-VM-SDA

**REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF DEFENDANT DAYNA CORLITO'S**
**MOTION TO DISMISS PLAINTIFF P180'S AMENDED COMPLAINT**

**WHITE AND WILLIAMS LLP**
Thomas E. Butler, Esq.
Stuart J. Wells, Esq.
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 244-9500
*Attorneys for Defendant Dayna Corlito*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1
LEGAL ARGUMENT.............................................................................................................2
I. THE OPPOSITION IDENTIFIES NO WELL-PLED FACTS CURING P180'S CONCLUSORY AND COLLECTIVE PLEADING DEFICIENCIES. .............................2
II. P180 FAILS TO PLEAD A SUBSTANTIVE RICO CLAIMS AGAINST CORLITO ...............................................................................................................3
A. Association-in-Fact Enterprise Fails.......................................................... 3
B. Enterprise Operation Fails ........................................................................ 5
C. Pattern of Racketeering Fails..................................................................... 6
D. Causation Fails............................................................................................ 7
III. P180 FAILS TO PLEAD A RICO CONSPIRACY AGAINST CORLITO .......................8
IV. P180 FAILS TO PLEAD CONVERSION ..........................................................9
V. P180 FAILS TO PLEAD CORLITO'S KNOWING PARTICIPATION IN OR SUBSTANTIAL ASSISTANCE OF ANY UNDERLYING TORT ................................11
CONCLUSION.......................................................................................................12



52557831v.2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1567 56th St., LLC v. Spitzer*,
774 F. Supp. 3d 476 (E.D.N.Y. 2025) ....5

*Abbott Laboratories v. Adelphia Supply USA*,
2017 U.S. Dist. LEXIS 1007 (S.D.N.Y. Jan. 4, 2017)....8

*Abrams v. Pecile*,
84 A.D.3d 618 (1st Dep't 2011) ....10

*Aghaeepour v. Northern Leasing Systems, Inc.*,
2015 U.S.Dist. LEXIS 16108 (S.D.N.Y. Dec. 1, 2015) ....6, 7

*Angermeir v. Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014)....6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ....4

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
667 F.Supp. 3d 83 (S.D.N.Y. 2023)....8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....2, 3, 4

*Bernstein v. Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997) ....7

*Boyle v. United States*,
556 U.S. 938 (2009)....3

*Colavito v. New York Organ Donor Network, Inc.*,
8 N.Y.3d 43 (2006) ....9

*D. Penguin Bros. v. City Nat'l Bank*,
587 F.App.'x 663 (2d Cir. 2017)....4, 9

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018)....5, 6, 7, 8

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
822 F.2d 1242 (2d Cir. 1987) ....................2

*Employees' Retirement System v. Blanford*,
794 F.3d 297 (2d Cir. 2015)....................12

*Fountain v. United States*,
357 F.3d 250 (2d Cir. 2004)....................6

*Franco v. English*,
210 A.D.2d 630 (2d Dep't 1994)....................12

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)....................11

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
640 F. Supp. 2d 300 (S.D.N.Y. 2009)....................6

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y. 2000)....................2

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)....................3

*Hillcrest Homes, LLC v. Albion Mobile Homes, Inc.*,
117 A.D.3d 1434 (3d Dep't 2014)....................10

*In re Time Warner Inc. Securities Litigation*,
9 F.3d 259 (2d Cir. 1993)....................12

*Ingram v. Machel & Jr. Auto Repair, Inc.*,
148 A.D.2d 324 (1st Dep't 1989)....................10

*Kolbeck v. LIT America, Inc.*,
939 F. Supp. 240 (S.D.N.Y. 1996)....................11

*Lateral Recovery, LLC v. Capital Merchant Services*,
LLC, 632 F. Supp. 3d 402 (S.D.N.Y. 2022)....................9

*Lenczycki v. Shearson Lehman Hutton, Inc.*,
238 A.D.2d 248 (1st Dep't 1997)....................10

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....................11

*Maersk, Inc. v. Neewra, Inc.*,
687 F. Supp. 2d 300 (S.D.N.Y. 2009)....................11, 12

*Moll v. US Life Title Ins. Co.*,
654 F.Supp. 1012 (S.D.N.Y. 1987) ....................................................................................3

*Nastasi & Associates, Inc. v. Bloomberg, L.P.*,
2022 U.S.Dist. LEXIS 172854 (S.D.N.Y. Sept. 23, 2022)......................................................9

*Old Republic National Title Insurance Co. v. Cardinal Abstract Corp.*,
14 A.D.3d 678 (2d Dep't 2005) .........................................................................................10

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
507 F.3d 117 (2d Cir. 2007)..................................................................................................2

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)..............................................................................................................6

*Salinas v. United States*,
522 U.S. 52 (1997)................................................................................................................9

*SEC v. DiMaria*,
207 F. Supp. 3d 343 (S.D.N.Y. 2016)................................................................................12

*Sperrazza v. Kail*,
267 A.D.2d 692 (3d Dep't 1999) ......................................................................................10

*Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Insurance Co.*,
64 A.D.3d 472 (1st Dep't 2009) ........................................................................................12

*Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*,
2026 U.S. Dist. LEXIS 182699 (E.D.N.Y. Aug. 14, 2026)......................................................4

*United States v. Kelly*,
128 F.4th 387 (2d Cir. 2025) ...............................................................................................5

*United States v. Maher*,
108 F.3d 1513 (2d Cir. 1997)...............................................................................................7

*United States v. Turkette*,
452 U.S. 576 (1981)..............................................................................................................3

*United States v. White*,
7 F.4th 90 (2d Cir. 2021) .....................................................................................................9

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)...............................................................................................10

*Zamora v. Fit Int'l Grp. Corp.*,
834 Fed. Appx. 622 (2d Cir. 2020).................................................................................3, 4

Defendant Dayna Corlito ("Corlito") respectfully submits this Reply Memorandum of Law in response to the opposition (the "Opposition") filed by P180, Inc. ("P180").

## PRELIMINARY STATEMENT

The Opposition does not cure the fundamental pleading deficiencies identified in Corlito's opening brief. The claims against Corlito continue to rest on generalized assertions, group pleading, and inferences drawn from her position as CaaStle's financial controller. The Amended Complaint does not allege concrete facts showing that Corlito joined any fraudulent undertaking, directed any alleged enterprise, knowingly committed predicate acts, agreed to participate in a conspiracy, exercised unauthorized dominion over P180's property, or knowingly assisted any fraud or breach of fiduciary duty.

The Opposition repeatedly attempts to convert Corlito's job responsibilities and access to financial information into proof of wrongdoing. But access and employment are not substitutes for facts identifying what Corlito personally did, said, knew, authorized, or received. P180 does not identify any specific financial record or business metric that Corlito allegedly falsified, any actual CaaStle book or record that she altered, any communication with P180 or its investors in which she participated, or any transaction record showing that she initiated or approved a challenged transfer. Instead, P180 relies on assertions that Corlito must have been involved because she worked in CaaStle's finance department.

Each claim therefore fails for the same basic reason: P180 has not pleaded facts connecting Corlito herself to the alleged misconduct. The seriousness of the alleged wrongdoing by others does not relieve P180 of its obligation to plead a plausible claim against Corlito individually. Because the Opposition merely repeats and recharacterizes the Amended Complaint's conclusions without supplying the missing factual allegations, all claims against Corlito should be dismissed.

## LEGAL ARGUMENT

### I. THE OPPOSITION IDENTIFIES NO WELL-PLED FACTS CURING P180'S CONCLUSORY AND COLLECTIVE PLEADING DEFICIENCIES.

P180 cannot manufacture claims against Corlito by attaching inflammatory labels to ordinary employment activities and grouping her with defendants against whom materially different facts are alleged. The Amended Complaint must plead facts making each claim against Corlito herself plausible, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), and, as to the claims sounding in fraud, it must further particularize allegations identifying Corlito's own conduct. *DiVittorio v. Equidyne Extractive Industries, Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987). Because "the mere assertion of a RICO claim" carries an "almost inevitable stigmatizing effect," courts must "flush out frivolous RICO allegations at an early stage of the litigation" by strictly enforcing the plausibility and particularized standards of Rule 8 and 9(b). *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (quotation omitted). As set forth in Corlito's opening brief, the Amended Complaint does not satisfy these standards.

The Opposition does not cite any well-pled facts that cure the defects, rather, it doubles down on P180's reliance upon conclusory and collective assertions. It repeats the challenged allegations and rewrites them as established facts, declaring that solely by reason of her position as controller, Corlito "managed the cover-up," "executed sham stock buy-backs," "helped prepare falsified records," and "assist[ed] in looting P180" and that solely by her inclusion as a "Defendant" she participated in fraudulent representations to P180. (Opp. 1, 4-6, 12-13). A conclusion does not become a fact because counsel states it emphatically. *See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (a "legal conclusion[] couched as [a] factual allegation" need not be accepted). The paragraphs cited by the Opposition (¶¶ 112,



52557831v.2

155, 160, 185, 247, 250, 266, 307, 308, 310 and 318) identify no document Corlito altered, metric she falsified, transfer instruction she issued, approval authority she exercised, prospectus she prepared, or P180 investor call she participated in. Indeed, many of these paragraphs (*e.g.*, ¶¶ 307, 308 and 310) simply group Corlito with Hunsicker, Jain and/or other Defendants while other allegations identify the actual documents fabricated by Hunsicker (¶¶ 55-56) and the specific Defendants, Hunsicker and Goldenberg (¶ 308(a), (b) and (c), who attended P180 investor calls. Recasting collective conclusions as facts does not move P180's claims "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, or otherwise satisfy the specificity requires of Rule 9(b). *See Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("lumping the defendants into collective allegations" is insufficient). Against this backdrop, P180's claims fail.

## II. P180 FAILS TO PLEAD A SUBSTANTIVE RICO CLAIMS AGAINST CORLITO

### A. Association-in-Fact Enterprise Fails

As emphasized in *Boyle v. United States*, 556 U.S. 938, 945 (2009), shared purpose is paramount to an association-in-fact enterprise. The Opposition fails to reference any facts plausibly alleging a common purpose shared by Corlito and other Defendants. *See Moll v. US Life Title Ins. Co.*, 654 F.Supp. 1012, 1031 (S.D.N.Y. 1987) (association-in-fact enterprise requires individuals who share common purpose and work together to achieve it); *United States v. Turkette*, 452 U.S. 576, 583 (1981). Rather than alleging coordinated action toward a shared objective, P180 relies on speculative and indirect associations.

P180 alleges "Defendants" shared a purpose to lie and maximize wealth of the "Hunsicker Enterprise," evade discovery of fraud, and distribute funds to members for ongoing loyalty and silence. (¶ 301); Opp., 14-15. However framed, P180 does not plausibly attribute that purpose to Corlito nor explain why she would share any objective to defraud P180. *See e.g., Zamora v. Fit Int'l Grp. Corp.*, 834 Fed. Appx. 622, 626 (2d Cir. 2020) (common purpose to "defraud investors

and convert funds and property for personal gain" is a naked assertion without further factual enhancement as to intent to defraud). Unlike the allegations against Hunsicker and Goldenberg (*e.g.*, ¶¶ 131-147), no facts place Corlito in an enterprise-planning meeting, merger discussion, or communication adopting the alleged objective of defrauding P180. She was not a director of CaaStle or P180, she did not receive redemption proceeds and is not alleged to have obtained any enterprise-related benefit. Contrastingly, Hunsicker, Goldenberg and Singh are all alleged to have received payments from their alleged participation in the fraud.

At most, the Amended Complaint alleges conduct incidental to Corlito's role at CaaStle and a shared-services arrangement. (¶¶48, 84, 247); (Opp. 15). Based on these allegations, the plausible inference is Corlito engaged in ordinary business and employment activities, which is insufficient to support an inference of common purpose. *See D. Penguin Bros. v. City Nat'l Bank*, 587 F.App.'x 663, 667 (2d Cir. 2017) (dismissing RICO claim where allegations demonstrated nothing more than ordinary business dealings among participants): *Uber Techs., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP*, 2026 U.S. Dist. LEXIS 182699, *13 (E.D.N.Y. Aug. 14, 2026) (no plausible common purpose where alleged benefits were merely incidental to an ordinary and lawful relationship); *Zamora*, 834 F. App'x at 626 (plausible shared purpose not alleged where the allegations only infer defendant engaged in ordinary business activities).

The Opposition's attempt (Opp. 10-11) to distinguish *Penguin* and similar cases fatally relies upon the same conclusionary and collective assertions of fact that *Igbal* and *Twombly* expressly prohibit. Merely because Corlito was a controller at CaaStle does not make her liable for the fraudulent conduct of Hunsicker, Goldenberg or any of the other Defendants. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (allegations that "lump[] all the defendants together" do satisfy requirements of Rule 8).

The Opposition's reliance on *D'Addario v. D'Addario*, 901 F.3d 80, 100-04 (2d Cir. 2018), *1567 56th St., LLC v. Spitzer*, 774 F. Supp. 3d 476 (E.D.N.Y. 2025) and *United States v. Kelly*, 128 F.4th 387, 409-11 (2d Cir. 2025), is similarly misplaced. (Opp. 7-11). None of these case holds that employment alone establishes association with an enterprise. *D'Addario* found entities created and used as necessary instruments of fraudulent transfers, while separately rejecting an alleged enterprise where defendants acted "independently and without coordination." *D'Addario*, 901 F.3d at 102-04. In *Spitzer*, the enterprise depended on coordinated action of each defendant, with reciprocal reliance and acting for one another's benefit. *Spitzer*, 774 F. Supp. at 490. Such is not the case here. The Amended Complaint does not plausibly allege Hunsicker, Jain, Singh, Goldenberg, or Callon needed Corlito to carry out any transaction, transfer, or communication. To the contrary, the allegations indicate that any actions attributed to Corlito could have been performed by others, including Hunsicker, Jain, P180, or participants in the shared-services arrangement. Finally, *Kelly*, a post-trial criminal case involving extensive evidence of coordinated conduct, held only that an enterprise's common purpose need not itself be illegal. *Kelly,* 128 F.4th at 409-11. It did not eliminate the requirement that the defendant knowingly associate and function with the alleged enterprise. And the Opposition fails to point to any nonconclusory or non-collective allegation that Corlito knowingly associated herself with the other Defendants for the purpose of carrying out the alleged goals of the Hunsicker Enterprise. Accordingly, P180 fails to plead that Corlito was a member of an association-in-fact enterprise, which in itself warrants dismissal of the substantive RICO claim.

**B. Enterprise Operation Fails**

While Corlito agrees the operation-or-management test is not confined to upper management (Opp., 18), P180 nonetheless fails to plausibly allege Corlito "participate[d] in the

operation or management of the [Hunsicker] enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The Opposition calls this requirement a "relatively low hurdle" and characterizes Corlito as a "necessary tool" satisfying this hurdle because she allegedly communicated with auditors, facilitated redemptions, and "executed the flow of funds." (Opp. 11-13). But those labels do not identify any enterprise decision Corlito made, authority she exercised, direction she gave, or discretion she employed. The pleading instead alleges that Jain directed Corlito and managed P180's accounting under a shared-services arrangement. (¶ 247)

In this regard, the cases P180 cites (Opp. 11-13) are materially different. *D'Addario* involved entities formed and deployed to effectuate the fraudulent transfers, 901 F.3d at 103-04, and *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 309-10 (S.D.N.Y. 2009), involved knowing direction of critical components of an organized counterfeit-goods operation. Neither supports imposing RICO liability upon an employee merely because she performed ordinary financial functions.

**C. Pattern of Racketeering Fails**

P180 claims "a pattern of more than two predicate acts by Corlito," yet focuses primarily on purported predicate acts by other Defendants. (Opp. 20). To plead wire fraud, P180 must allege a scheme to defraud money and use of wires to further that scheme. *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). Indeed, P180 itself alleges Hunsicker, Singh, Goldenberg, and Callon "committed multiple offenses of interstate wire fraud," (¶304) through various interactions in connection with the elysewalker, Altuzarra, and Vince transactions in 2024. (¶307(a)-(e)). By contrast, P180 fails to plead comparable, nonconclusory allegations as to Corlito.

The Opposition invokes *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145-48 (S.D.N.Y. 2014), and *Aghaeepour v. Northern Leasing Systems, Inc.*, 2015 U.S.Dist. LEXIS 16108, *13 (S.D.N.Y.

Dec. 1, 2015), arguing that P180 need only describe an overall scheme where the wires further a master plan. (Opp. 13-16). But those cases still required allegations plausibly connecting the defendant to the fraudulent scheme. *Angermeir*, 14 F.Supp.3d at 147; *Aghaeepour,* 2015 U.S.Dist. LEXIS 16108, *17. They do not permit P180 to plead another defendant's communications with particularity and infer Corlito's participation from her job title.

P180's money laundering/bank fraud allegations fare no better. P180 points to CaaStle stock buy backs (Opp., 23) but pleads no facts plausibly showing any intent to promote unlawful activity, as money laundering requires. *United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir. 1997); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997). Nor does P180 plausibly allege bank fraud merely by asserting Corlito participated in transfers from P180's account. Allegations that Corlito "committed bank fraud" or made transfers "under false pretenses" are legal conclusions requiring factual support, not substitutes for it. Further, plausible alternatives to P180's speculation include ordinary-course stock repurchases, as well as legitimate buybacks pursuant to Hunsicker's business judgment and discretion.

Accordingly, P180's conclusory and speculative allegations of wire fraud, bank fraud, and money laundering do not plausibly establish the requisite pattern of racketeering activity and therefore cannot sustain its substantive RICO claim against Corlito.

**D. Causation Fails**

The Opposition does not dispute that RICO causation requires a "direct relation between the injury asserted and the injurious conduct alleged," nor that proximate cause excludes "too remote, purely contingent, or indirect" injuries. (Opp. 24); *D'Addario*, 901 F.3d at 96 (citations omitted). P180 relies on *D'Addario* to argue that proximate cause may exist where damages are a "step removed" from defendant's conduct. (Opp. 25). But in *D'Addario*, causal connection was readily identifiable because defendants' conduct directly diminished the value of the estate,

causing the beneficiary to incur expenses to stop that harm. 901 F.3d at 96. That circumstance bears little resemblance to P180's allegations here, which plausibly infers allegations that Hunsicker defrauded CaaStle investors, thereby influencing P180's business decisions.

P180 identifies damages arising from induced loans, payments made in reliance on alleged misrepresentations, obligations undertaken, and lost income. (Opp., 24). As to Corlito, however, P180 points only to her alleged involvement in financial transfers performed through her role in CaaStle's finance department and access provided by the shared-services arrangement. *Id.*

The required direct relationship is absent. P180's alleged injuries arise principally from alleged misrepresentations, director-level interactions, induced loans, and third-party transactions. By contrast, the conduct attributed to Corlito is limited to her alleged involvement in financial transfers. That alleged conduct is too attenuated to support the injuries P180 seeks to recover. At most, the Amended Complaint alleges Corlito participated in transfers, some involving P180's bank account, through access provided under the shared-services arrangement. (¶ 247). P180's primary alleged injuries arise from separate conduct and transactions.

## III. P180 FAILS TO PLEAD A RICO CONSPIRACY AGAINST CORLITO

The Opposition identifies no well-pleaded facts showing that Corlito knowingly agreed to further the alleged RICO conspiracy. A Section 1962(d) claim requires facts showing that each Defendant knew of, agreed to, and acted in furtherance of a conspiracy to violate RICO. *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F.Supp. 3d 83, 137 (S.D.N.Y. 2023). Conclusory assertions of knowledge, agreement, or participation do not suffice. *Abbott Laboratories v. Adelphia Supply USA*, 2017 U.S. Dist. LEXIS 1007, at *35-36 (S.D.N.Y. Jan. 4, 2017).

As the Opposition makes clear (Opp. 18-20), P180's conspiracy theory rests principally on Corlito's employment at CaaStle. But knowledge, agreement, or "meeting of the minds" cannot

be plausibly inferred from employment alone. The Opposition identifies no meeting Corlito attended at which the alleged conspiracy was discussed, no communication reflecting her assent, and no facts showing that she knew of the plan to induce P180's transactions or force a merger. Indeed, the alleged merger planning and P180-facing misrepresentations identify other defendants, not Corlito. Ordinary employment activity, even if helpful to alleged conspirators, does not plausibly establish agreement to their enterprise objective. *D. Penguin*, 587 F.App.'x at 667.

P180's authorities do not fill this gap. (Opp. 18-20). *Salinas v. United States*, 522 U.S. 52, 63-66 (1997), held that a conspirator need not personally commit predicate acts, but still required an agreement to facilitate a scheme involving RICO violations. *United States v. White*, 7 F.4th 90, 99 (2d Cir. 2021), affirmed a criminal conviction supported by evidence that the defendant knew the scheme's objective and deliberately functioned with its participants. *Lateral Recovery, LLC v. Capital Merchant Services*, LLC, 632 F. Supp. 3d 402, 465 & n.28 (S.D.N.Y. 2022), inferred agreement from defendants' positions, coordinated acts, and alleged financial benefits in a closely-held company with few employees, whereas CaaStle was a larger company with dedicated departments, Corlito received no alleged proceeds and is connected to no conspiratorial communication. And *Nastasi & Associates, Inc. v. Bloomberg, L.P.*, 2022 U.S.Dist. LEXIS 172854 at *60 (S.D.N.Y. Sept. 23, 2022), confirms that a conspiracy claim may survive dismissal of a substantive claim only where separate facts plausibly establish the defendant's knowing agreement. No such facts exist here.

## IV. P180 FAILS TO PLEAD CONVERSION

The Opposition does not identify well-pleaded facts showing that Dayna Corlito exercised unauthorized dominion or control over any property belonging to P180. A conversion claim requires the defendant's own exercise of control over the property in derogation of the plaintiff's rights. *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). Consistent

with that rule, conversion claims are dismissed where the complaint does not plead specific facts showing that the particular defendant possessed or controlled the disputed property. *Abrams v. Pecile*, 84 A.D.3d 618, 618-19 (1st Dep't 2011); *Old Republic National Title Insurance Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2d Dep't 2005).

The Opposition asserts that Corlito "personally executed" and "approved" unauthorized transfers from P180's accounts. (Opp. 20-23). But the Amended Complaint does not allege those facts. Paragraph 247 states generally that Corlito "executed the flow of funds" under a shared-services arrangement, without alleging her account permissions, signatory authority, or power to approve transfers. Paragraphs 250 and 266 allege only, on information and belief, that Corlito acted collectively with other defendants or provided unspecified "assistance." Most tellingly, paragraph 328 alleges that several defendants "caused" the two January 30 transfers, but attributes their facilitation to Goldenberg and their causation to Hunsicker, Jain, and Singh, not Corlito. The Opposition cannot convert those collective allegations into facts establishing Corlito's personal dominion or control. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

P180's authorities do not cure that omission. *Hillcrest Homes, LLC v. Albion Mobile Homes, Inc.*, 117 A.D.3d 1434, 1435-36 (3d Dep't 2014), holds that a defendant need not personally benefit from converted property, but does not dispense with the requirement that the defendant actually exercise control over it. *Ingram v. Machel & Jr. Auto Repair, Inc.*, 148 A.D.2d 324, 325 (1st Dep't 1989), imposed liability upon a corporate officer for his own affirmative acts producing the conversion. Similarly, *Sperrazza v. Kail*, 267 A.D.2d 692, 693 (3d Dep't 1999), and *Lenczycki v. Shearson Lehman Hutton, Inc.*, 238 A.D.2d 248, 248 (1st Dep't 1997), involved defendants specifically alleged to have directed or effected the challenged dispositions. None of these cases permits dominion to be inferred merely from an employee's title or generalized

involvement in account administration. Because the Amended Complaint identifies no transfer Corlito authorized, directed, or independently controlled, the conversion claim against her should be dismissed.

## V. P180 FAILS TO PLEAD CORLITO'S KNOWING PARTICIPATION IN OR SUBSTANTIAL ASSISTANCE OF ANY UNDERLYING TORT

As with P180's other claims, the Opposition identifies no well-pleaded facts establishing a Corlito's knowing participation in a New York conspiracy or her knowing and substantial assistance of fraud or fiduciary breaches directed at P180. Civil conspiracy requires an underlying tort, a corrupt agreement, an overt act, intentional participation, and resulting damages. *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 319 (S.D.N.Y. 2009). Aiding-and-abetting liability requires actual knowledge of the underlying wrong and substantial assistance in accomplishing it. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-95 (2d Cir. 2006). Constructive knowledge, recklessness, or allegations that Corlito "should have known" are insufficient. *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245-46 (S.D.N.Y. 1996).

The Opposition merely repackages Corlito's ordinary finance responsibilities as proof of knowledge, agreement, and assistance. (Opp. 23-27). The Amended Complaint does not identify any communication in which Corlito agreed to defraud P180, any P180-facing misrepresentation she made or helped prepare, or any meeting concerning P180's transactions that she attended. Nor does it plead facts showing she knew that Christine Hunsicker, Georgiy Goldenberg, or others were breaching duties to P180. General access to CaaStle's financial records, auditor communications, and unspecified assistance with payments do not establish actual knowledge of a separate scheme targeting P180 or substantial assistance that proximately caused its injury. *See Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*, 479 F. Supp. 2d 349, 367-68

(S.D.N.Y. 2007); *Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Insurance Co.*, 64 A.D.3d 472, 476 (1st Dep't 2009).

Again, P180's authorities do not fill those gaps. *Maersk* involved factual allegations supporting an actual corrupt agreement, not merely parallel employment activity. *Employees' Retirement System v. Blanford*, 794 F.3d 297, 306-08 (2d Cir. 2015), and *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 268-69 (2d Cir. 1993), addressed scienter supported by concrete allegations of conscious concealment, not knowledge inferred solely from corporate position. *Franco v. English*, 210 A.D.2d 630, 633 (2d Dep't 1994), involved execution of an instrument that directly released investors' funds to a known fraudulent venture and *SEC v. DiMaria*, 207 F. Supp. 3d 343, 359 (S.D.N.Y. 2016), involved particularized conduct directly concealing identified frauds. None of this particularized conduct is alleged here. Because P180 alleges neither Corlito's corrupt agreement, actual knowledge, nor substantial assistance, all three derivative theories should be dismissed.

## CONCLUSION

For the reasons stated above, the claims for civil RICO, RICO conspiracy, conversion, and both aiding and abetting claims against Corlito should be dismissed.

Respectfully Submitted,

WHITE AND WILLIAMS LLP

*/s/ Thomas E. Butler*

Thomas E. Butler
Stuart J. Wells
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 714-3070
butlert@whiteandwilliams.com
wellss@whiteandwilliams.com
*Attorneys for Defendant Dayna Corlito*

## CERTIFICATION OF COUNSEL

I, Stuart J. Wells, the attorney for Defendant Dayna Corlito, hereby certify that this **REPLY MEMORANDUM OF LAW** is in compliance with Local Civil Rule 7.1(c). The **REPLY MEMORANDUM OF LAW** was prepared using Microsoft Word. The typeface is Times New Roman. The main body of the **REPLY MEMORANDUM OF LAW** is in 12-point font with 1-inch margins throughout, and contains 3,489 words, as counted by the word-processing program.

By: *_/s/ Stuart J. Wells_*
*Attorney for Defendant*
*Dayna Corlito*