Joseph M. Sanderson
212 378 7615
josanderson@steptoe.com

1133 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

November 17, 2026

***VIA ECF***

Hon. Stewart D. Aaron, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 1970
New York, NY 10007

**Re: *P180, Inc. v. Singh, et al.*, No. 25 Civ. 4432 (VM) (SDA)**
**Plaintiff's Letter Motion to Compel Defendants Singh and Goldenberg to Produce Documents for the Full Period at Issue**

Dear Judge Aaron:

We write on behalf of Plaintiff P180, Inc. in response to the Court's November 13, 2026, Order (Doc. 145) regarding the status of P180's pending letter motion to compel (Doc. 143) in light of Defendants' letter and response (Doc. 144) revisiting certain of their positions. In light of Defendants' changed positions, the parties again met and conferred earlier this week.

While the dispute has now been narrowed, the parties were unable to resolve it entirely. In particular, the complaint alleges that the fraudulent scheme at Gwynnie Bee/CaaStle started in 2018, if not before, including a misleading July 2018 investor update shared by Singh and a falsified 2018 income statement. Nevertheless, Defendants have confirmed that (i) for requests seeking communications, they will not produce documents before September 1, 2023, which would prevent P180 from testing its allegations that Singh and Goldenberg were in on the fraud from its beginnings in 2018 or before; and (ii) they will not budge from their position for other requests that they will not search for documents prior to February 1, 2019. Defendants have also repeatedly confirmed that their opposition is based on relevance, and they have not pointed to any particular burden of searching for a longer period. And they have also stood by their position that they are entitled to amend responses to *narrow* the offer of production after the fact, which is simply wrong.

So, the dispute before the Court is a simple one: in a RICO case alleging a multi-year conspiracy, including particular predicate acts by the objecting defendants during that time, is the entire period of the conspiracy relevant to any fact in this case? Of course it is. This Court should order production.

**Supplemental Meet-and-Confer**

The parties met and conferred by videoconference on November 16, 2026, at 1:00 PM ET, for approximately twenty minutes. Conor Tucker, Joseph Sanderson, and Kieran Hawson participated for P180; Kevin Puvalowski and Shanice Hinckson participated for Defendants Singh and Goldenberg. P180 appreciates that its motion has prompted further engagement from Defendants, and the parties have been able to narrow the issues. The dispute over the production end date no longer requires court intervention, as the parties are confident that they can agree on end dates. That moots the motion as to Singh Request 45, which seeks documents only from

December 2023 onward. Doc. 143-1 at 7–8; Doc. 144 at 2. The parties agreed that they are at an impasse as to the production start date for the remaining Requests: Requests 12–15, 23, 28, 32, 76, and 77, Singh Requests 115–118, and Goldenberg Requests 120–123.

## I. Board, Financial, and Meeting Records (Requests 12–15, 23, 32, and 76)

Requests 12–15 seek minutes and notes of CaaStle board meetings, materials presented to the CaaStle board, CaaStle's financial statements, and pitch decks and other documents used to solicit investment in CaaStle. Doc. 143-1 at 1–4. Request 23 seeks documents concerning CaaStle's scale, subscriber numbers, financials, performance metrics, revenue, and software capabilities. *Id*. at 4–5. Request 32 seeks documents concerning conversations with Jean-Paul St. Germain, a shareholder of both P180 and CaaStle. *Id*. at 6–7; Doc. 89 ("AC") ¶ 314(a). Request 76 seeks calendar entries and invitations for meetings with any other defendant. Doc. 143-1 at 8–9. None of these Requests is explicitly limited in time. *See id*. at 1–5, 6–7, 8–9.

Defendants now offer to produce from February 1, 2019, on relevance grounds and without identifying any burden of producing earlier documents. Doc. 144 at 2–3. At the November 16 meet and confer, P180 again asked how many additional documents would need to be produced if P180's January 1, 2018 start date were used; Defendants did not know. Indeed, Defendants' counsel acknowledged that their objection to P180's start date is "not strictly a burden question" and argued instead that documents from before 2019 are not relevant.

That relevance objection lacks merit. Defendants assert that no fraudulent conduct is alleged before February 2019. Doc. 144 at 3. Not so. The Amended Complaint alleges that by 2018 CaaStle's leadership, *including Singh and Goldenberg*, knew the business had failed and set out to make it appear successful, AC ¶¶ 39–40; that in July 2018 Hunsicker and Singh sent investors an update touting results that were false, AC ¶ 53; and that Hunsicker replaced CaaStle's 2018 income statement, which showed $47 million in losses on $23 million in revenue, with one claiming $72 million in revenue and only $24 million in losses. AC ¶ 54.

These pre-2019 board materials, financial statements, investor pitches, and meeting records will show what CaaStle's leadership actually knew about the company's performance when the false figures were first presented. Singh, as co-founder, and Goldenberg, as COO, both had full access to CaaStle's true financial and subscriber data, and the records sought will show whether they knew from the outset that the numbers Hunsicker was giving investors and business partners were false. That knowledge goes directly to their scienter, an element of P180's fraud claims, and to the continuity of the RICO scheme, which P180 alleges operated from at least 2018 (if not earlier). AC ¶¶ 67, 73, 319, 354–55. P180's motion as to Requests 12–15, 23, 32, and 76 is therefore not moot, and Defendants should be required to produce documents responsive to these Requests at least through January 1, 2018.

## II. Communications With Co-Defendants and Key Third Parties (Requests 28 and 77, Singh Requests 115–118, and Goldenberg Requests 120–123)

Requests 28 and 77 seek Singh's and Goldenberg's communications with any other defendant since January 1, 2018. Doc. 143-1 at 5–6, 9–10. Singh Requests 115–118 and Goldenberg Requests 120–123 seek communications since the same date with (i) BDO, CaaStle's former auditor, who resigned after learning of the forged audit report; (ii) Granite

Steptoe

Capital Investors, the CaaStle investor that first raised questions about a forged BDO audit; (iii) Ichigo Asset Management and its principal, defendant Callon; and (iv) John Hennessy, a CaaStle director and Singh's advisor at Stanford. *Id*. at 10–13; Doc. 143 at 3; AC ¶ 45.

Defendants maintain their September 1, 2023 start date for all of these Requests, except that, at the meet and confer, they agreed to apply the February 1, 2019 start date to Singh Request 115 and Goldenberg Request 120. *See* Doc. 143-1 at 6, 10–13. Again, Defendants have identified no burden and rely primarily on their own view of what is relevant.

Each of these Requests reaches relevant pre-2019 documents. Communications under Requests 28 and 77 from 2018 matter because that is the year by which CaaStle's leadership—including Singh, Goldenberg, and Callon—knew the business had failed and chose to make it appear successful. AC ¶¶ 39–40. That plainly goes to scienter. They will also test Singh's claim that he was "away" from CaaStle after 2017 and did not know the truth when he sent CaaStle investors a false update with Hunsicker in July 2018. AC ¶¶ 53, 64. Communications with BDO (Singh Request 115 and Goldenberg Request 120) during 2018 bear on what CaaStle's auditor was told in the year whose financial results Hunsicker falsified, including what other CaaStle insiders were in positions to know about the circumstances of BDO's resignation. AC ¶ 54. Communications with Granite (Singh Request 116 and Goldenberg Request 121) will show what Defendants told Granite before it raised questions about the forged audit and was bought out. Doc. 143-7 ¶ 46; Doc. 143 at 3. Communications with Callon and Ichigo (Singh Request 117 and Goldenberg Request 122) will show what CaaStle's longtime "independent" director knew as the fraud began. AC ¶¶ 39, 93. And communications with Hennessy (Singh Request 118 and Goldenberg Request 123), who joined the board in 2018 and later claimed his term had retroactively ended in April 2021, bear on what the board was told and on the credibility of that claim. AC ¶ 194; Doc. 143 at 3.

This evidence goes to the continuity of the RICO scheme and to Singh's and Goldenberg's knowledge of the fraud, both of which P180 must prove. AC ¶¶ 319, 354–55. Defendants have identified no burden, and their counsel has confirmed that the materials were preserved. P180's motion as to these Requests is therefore not moot, and Defendants should produce responsive documents from January 1, 2018.

⁂

Accordingly, except as to Singh Request 45, the letter motion is not moot. P180 respectfully requests that the Court order Singh and Goldenberg to produce, within 14 days, documents responsive to the Requests described above from January 1, 2018. P180 would welcome a discovery conference should the Court find it helpful.

Respectfully submitted,

/s/ Joseph M. Sanderson

Joseph M. Sanderson

cc: Counsel of Record (via ECF)